**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:26-cv-21106

PRESIDENT DONALD J. TRUMP, TRUMP PAYROLL
CORP., 401 MEZZ VENTURE, LLC, 401 NORTH
WABASH VENTURE, LLC, THC MIAMI
RESTAURANT HOSPITALITY, LLC, TRUMP
BRIARCLIFF MANOR DEVELOPMENT, LLC,
TRUMP CHICAGO RETAIL, LLC, TRUMP MIAMI
RESORT MANAGEMENT, LLC, TRUMP NATIONAL
GOLF CLUB COLTS NECK, LLC, and TRUMP
NATIONAL GOLF CLUB, LLC,

      Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A. and JAMES DIMON,

      Defendants.

## NOTICE OF REMOVAL

Defendants JPMorgan Chase Bank, N.A. ("JPMorgan") and James Dimon (together, "Defendants") hereby remove this action from the Eleventh Judicial Circuit of Florida in and for Miami-Dade County to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

### INTRODUCTION

Plaintiffs bring this action against JPMorgan and its CEO, but the sole claim asserted against the CEO is barred as a matter of law. The very statute Plaintiffs invoke expressly exempts federally regulated bank officers acting in their official capacities, which is all that is alleged here against JPMorgan's CEO. Moreover, the conduct and injuries alleged cannot support a claim under the statute. Finally, Plaintiffs' threadbare allegations do not allege sufficient facts to plead a claim. Because Plaintiffs have no possibility of success against JPMorgan's CEO, his inclusion in this suit cannot defeat federal jurisdiction, and this action properly belongs in federal court.

President Donald J. Trump and several related companies (all part of what the Complaint refers to as the "Trump Organization") allege that JPMorgan closed their accounts and placed "some or all" of Plaintiffs on a "blacklist," which JPMorgan supposedly "published" to other, unnamed banks.  Compl. at 4 (attached hereto as Exhibit A).  Plaintiffs plead a single count against JPMorgan's CEO—the sole non-diverse[1] defendant—under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), alleging he directed JPMorgan to put Plaintiffs on this "blacklist."  But that statute does not apply to bank officers who are directly regulated by federal banking agencies, or to any officers who act on behalf of a bank in their official capacity, as Plaintiffs allege here.  What's more, the actions Plaintiffs accuse JPMorgan's CEO of—and the harms they allege they suffered as a result—fall squarely outside the scope of that statute.  No claim exists.  Plaintiffs' joinder of a non-diverse defendant who cannot possibly be held liable therefore must be disregarded.

Plaintiffs further fail to plead the basic facts necessary to establish their "blacklist" claim. It is unclear what Plaintiffs mean by this term.  They do not explain what this "blacklist" entails, when it was created, to whom it was supposedly circulated, or any other detail describing it.  Nor is it plausible that JPMorgan could create such a list consistent with the complex federal regulatory scheme to which it is subject.  But to the extent JPMorgan and Mr. Dimon understand these vague, conclusory allegations, they deny them—they are aware of no such list.  If and when Plaintiffs explain what they mean by this "blacklist," JPMorgan will respond accordingly.[2]

---

[1] "Non-diverse" refers only to a party's state citizenship for purposes of federal diversity jurisdiction.

[2] The Complaint asserts two claims against JPMorgan: trade libel based on the same "blacklist" alleged against the CEO, and breach of an implied covenant based on account closures nearly five years ago.  The trade libel claim is factually baseless, as described above, and suffers from several threshold legal flaws.  The account-closure theory collapses under its own weight. Plaintiffs allege JPMorgan closed accounts for ideological reasons, yet several Plaintiffs

But even if such a "blacklist" existed, there still would be no conceivable claim against Mr. Dimon under FDUTPA.  Plaintiffs' joinder of a non-diverse defendant who cannot possibly be held liable is fraudulent.  Since there is complete diversity between the Plaintiffs and JPMorgan, the only other Defendant, this Court has subject matter jurisdiction under 28 U.S.C. § 1332 to consider this matter and, ultimately, to (i) transfer the matter to another District, or (ii) dismiss the remainder of Plaintiffs' claims, which lack any basis in law or fact.[3]

Accordingly, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and with full reservation of all defenses, Defendants give notice of the removal of this action.

### BASIS FOR REMOVAL

1.      Under the federal removal statute, a defendant's right to remove extends to most cases over which a federal court would have original jurisdiction.  *See* 28 U.S.C. § 1441(a).

2.      Here, the basis of removal is this Court's diversity jurisdiction.  Federal courts have original jurisdiction over cases between completely diverse parties where the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  Plaintiffs expressly allege in their Complaint that the amount in controversy here exceeds "$750,000."  Compl. ¶ 13.

3.      Other than JPMorgan's CEO, the parties are completely diverse, because no Plaintiff is a citizen of Ohio, where JPMorgan has its main office pursuant to its articles of

---

subsequently opened new accounts with the bank.  Plaintiffs also agreed by contract that JPMorgan could close their accounts for any reason.  JPMorgan will seek dismissal of these claims when appropriate.  For now, this Notice of Removal addresses only the threshold issue: that a federal court is the proper forum for this action.

[3] As Defendants will demonstrate in a forthcoming motion to transfer, Plaintiffs also violated the express terms of their agreements with JPMorgan by filing this suit in Florida state court, rather than in New York, because the agreements all contain mandatory forum-selection clauses requiring that all suits relating to the parties' banking relationship be heard in New York courts.  For that reason, this case should be transferred to the U.S. District Court for the Southern District of New York.

association. *See* 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); Paragraphs 32–44, *infra*.

4. As set forth below, Plaintiffs have "fraudulently joined" JPMorgan's CEO by naming him in their Complaint without any possibility that their claim against him could succeed. The Court should therefore ignore Mr. Dimon's citizenship and exercise subject-matter jurisdiction over this case because of the complete diversity between the remaining parties. *See Otoh v. Fed. Nat'l Mortg. Ass'n*, 2025 WL 915028, at *3 (11th Cir. Mar. 26, 2025) ("When a plaintiff names a non-diverse defendant solely to defeat federal diversity jurisdiction, the district court must ignore the non-diverse defendant and deny any motion to remand the case to state court based on the presence of the 'fraudulently joined' party.").

## I. Plaintiffs Have Fraudulently Joined JPMorgan's CEO

5. The sole claim against JPMorgan's CEO alleges a violation of FDUTPA. This claim is barred by the statute's plain text. This statute has an express safe-harbor provision that exempts "any person or activity regulated under laws administered by: … [b]anks, credit unions, and savings and loan associations regulated by federal agencies." Fla. Stat. § 501.212(4)(c). Because JPMorgan's CEO is directly regulated by federal banking agencies, he is an exempt "person" under FDUTPA. *See, e.g.*, *In the Matter of John Stumpf*, Dkt. AA-EC-2019-83, No. 2020-004, https://www.occ.gov/static/enforcement-actions/ea2020-004.pdf (Office of the Comptroller of the Currency ("OCC") enforcement action against former bank CEO based on the bank's sales practices). Even if he was not exempt as a regulated person, the safe harbor's application to JPMorgan would still foreclose Plaintiffs' attempt to end-run that protection by seeking to impose liability on JPMorgan's CEO for his official acts as part of the bank. Further, wholly apart from the plain text of the statutory exclusion, Plaintiffs' claim fails to allege conduct or damages within FDUTPA's scope. And finally, Plaintiffs do not plead the basic facts necessary

to establish a FDUTPA claim.  Because there is "no reasonable possibility that Plaintiffs can establish a cause of action against" JPMorgan's CEO, this Court should rule that the joinder was fraudulent and ignore it for purposes of determining its jurisdiction over this matter.  *Legg v. Wyeth*, 428 F.3d 1317, 1324 (11th Cir. 2005).

> **A.       FDUTPA's plain text bars Plaintiffs' claim against JPMorgan's CEO.**

6.       FDUTPA's national banking safe harbor excludes JPMorgan's CEO from liability under the statute in two distinct ways.

7.       ***First***, FDUTPA directly excludes from liability "any person … regulated by federal agencies" that administer banking laws.  Fla. Stat. § 501.212(4)(c).  Mr. Dimon is the CEO of JPMorgan.  *See* Compl. at 2.  JPMorgan is a federally regulated National Association chartered under the National Bank Act.  *See* 12 U.S.C. § 21; *see also* OCC, *National Banks Active As of 12/31/2025*, at 6, https://www2.occ.gov/topics/charters-and-licensing/financial-institution-lists/national-by-name.pdf (listing JPMorgan Chase Bank, N.A. as a national bank).  As the CEO of a national bank, Mr. Dimon is squarely within the scope of this exclusion.  *Cf. Florida v. Beach Blvd Automotive, Inc.*, 139 So. 3d 380, 388 (Fla. 1st DCA 2014) (excluding officer of car dealership from FDUTPA scope based on "any person" language in parallel safe harbor for insurance industry).

8.       Bank CEOs like JPMorgan's are closely and comprehensively regulated by the federal banking agencies.  For example, "any *director*, *officer*, employee, or controlling stockholder … of, or agent for, an insured depository institution" is broadly subject to the same body of banking regulation as banks themselves as an "institution-affiliated party" ("IAP").  12 U.S.C. § 1813(u)(1) (emphasis added).  The OCC, the chief prudential regulator of national banks, has explained that it "uses enforcement actions against an [IAP] to deter, encourage correction of, or prevent violations, unsafe or unsound practices, or breaches of fiduciary duty.  Enforcement

actions against IAPs reinforce the accountability of individuals for their conduct regarding the affairs of a bank." *OCC Announces Enforcement Actions for January 2026*, https://www.occ.treas.gov/news-issuances/news-releases/2026/nr-occ-2026-3.html.

9.      To that end, federal banking law provides a wide range of remedies that the OCC and other federal banking agencies can invoke to regulate IAPs, whether in addition to or independent of remedies sought against banks.  An agency can, for example, initiate cease-and-desist proceedings against any IAP that "is engaging or has engaged … in an unsafe or unsound practice in conducting the business of" the bank, or that "is about to violate, a law, rule, or regulation, or any condition imposed in writing by a Federal banking agency …."  12 U.S.C. § 1818(b).  An agency can also seek civil penalties against IAPs for such violations, *see id.* § 1818(i), or even remove IAPs from office or from the banking industry entirely, *id.* § 1818(e). Thus, in a recent case, the OCC imposed a $17.5 million civil penalty and an industry-wide bar on the former CEO of a prominent national bank arising from that bank's sales practices.  *See In the Matter of John Stumpf*, Dkt. AA-EC-2019-83, No. 2020-004, https://www.occ.gov/static/enforcement-actions/ea2020-004.pdf.[4]

10.      In short, FDUTPA's statutory safe harbor excludes JPMorgan's CEO from FDUTPA liability for the simple reason that he is "already subject to extensive federal administrative controls."  *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 336 n.11 (1963) (discussing the parallel banking exclusion contained in the Federal Trade Commission Act ("FTC Act"), after which FDUTPA is patterned).

---

[4] In addition to being broadly regulated as IAPs, bank officers like JPMorgan's CEO are also subject to regulation under specific banking laws and regulations. *See, e.g.*, 31 U.S.C. § 5321(a)(1) (imposing civil penalties against bank officers for violations of the Bank Secrecy Act).

11.     **Second**, separate and apart from the CEO's exclusion as a regulated "person" under the FDUTPA safe harbor, he is also excluded by virtue of the safe harbor's application to JPMorgan as a federally regulated national bank.  Plaintiffs cannot end run JPMorgan's exemption from FDUTPA by naming the most-senior officer of the company—allegedly acting in his official capacity and within the scope of his employment—in place of the company itself.

12.     Federally regulated banks like JPMorgan are expressly exempted from FDUTPA. *See* Fla. Stat. § 501.212(4)(c); *see also Bankers Tr. Co. v. Basciano*, 960 So. 2d 773, 779 (Fla. 5th DCA 2007) ("FDUTPA clearly excludes banks from its grasp.")[5]; *In re Kachkar*, 769 F. App'x 673, 682 (11th Cir. 2019) ("Because [Bank of America, N.A.] is a federally regulated bank, the Act does not apply to it.").[6]

13.     Plaintiffs know they cannot assert a FDUTPA claim against JPMorgan itself—they plead no such cause of action against the bank.  By naming the CEO, they thus attempt to do indirectly what they cannot do directly.[7]  Were plaintiffs permitted to swap out a bank for its CEO like this, FDUTPA's banking safe harbor would be a nullity.  The Complaint acknowledges that the alleged conduct complained of is simply JPMorgan's conduct: "Defendant Dimon … directed, authorized, and instructed *JPMC*" to publish the "blacklist."  Compl. ¶ 96 (emphasis added).

---

[5] Federal courts are "bound to adhere to decisions of the state's intermediate appellate courts" in the absence of evidence that the state's highest court would come out differently.  *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1021 (11th Cir. 2014).

[6] The Florida legislature recently modified FDUTPA's safe harbor by allowing Florida State Attorneys or the Department of Legal Affairs to proceed against banks for certain violations. *See* House Bill 989 (2024), codified at Fla Stat. § 655.0323(7); *see also* Fla. Stat. § 501.203(2). But that provision by its terms precludes private enforcement for such violations, confirming the lack of any private right of action against banks under FDUTPA.

[7] The Complaint does not disguise that this is what Plaintiffs are doing, at one point even alleging that both "Defendants"—not just JPMorgan's CEO—"engaged in an unfair and deceptive trade practice by directing the publication of the names of Plaintiffs."  Compl. at 4.

Indeed, as JPMorgan's CEO, Mr. Dimon's official actions *are* the bank's actions. *See In re Kapila*, 762 F. App'x 991, 994 (11th Cir. 2019) ("[W]rongdoing by a corporate officer is imputed to the company so long as the officer acts within the scope of his employment."); *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 302–03 (Del. Ch. 2015) ("A basic tenet of corporate law … is that the knowledge and actions of the corporation's officers and directors, acting within the scope of their authority, are imputed to the corporation itself."). And those actions fall outside the scope of FDUTPA, whether the named defendant is the CEO or the bank itself.

14.     The application of JPMorgan's exemption to its CEO is confirmed by the black-letter rule that a FDUTPA claim alleging corporate wrongdoing cannot proceed against an individual unless and until liability is established against the corporation. *See KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008) ("[A]n individual may be liable for corporate practices … *once corporate liability is established*." (emphasis added)).[8] Because FDUTPA liability was not (and could not be) pleaded against JPMorgan, this principle likewise forecloses individual liability against its CEO. *See id.*

15.     In sum, Plaintiffs cannot possibly establish FDUTPA liability against JPMorgan's CEO for two independent reasons based on the plain language of the Act. "[A]pplying reason and common sense," Plaintiffs' assertion of this facially barred claim has "no reasonable possibility"

---

[8] Florida adopted this principle from the FTC Act context. *See KC Leisure*, 972 So. 2d at 1073 (relying on the analogy to the FTC Act for this proposition); *see also* Fla. Stat. § 501.204(2) ("It is the intent of the Legislature that, in construing [FDUTPA's requirements], due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to" the FTC Act). Under the FTC Act, the settled rule has long been that "[i]ndividuals can be held liable for corporate practices that violate the FTCA …, but only if the FTC has first established the corporation's liability." *FTC v. Partners in Health Care Ass'n*, 189 F. Supp. 3d 1356, 1364 (S.D. Fla. 2016) (citation omitted); *see also FTC v. Vacation Prop. Servs.*, 2012 WL 1854251, at *2 (M.D. Fla. May 21, 2012) (same) (citing *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989)).

of success.  *Legg*, 428 F.3d at 1324, 1325 n.5.  Mr. Dimon was fraudulently joined and his citizenship must be ignored for purposes of ascertaining the Court's diversity jurisdiction.

> **B.**     **Plaintiffs' allegations are facially beyond the scope of FDUTPA.**

16.     The Complaint reveals further reasons why Plaintiffs' claim against JPMorgan's CEO has no possibility of success:  It does not allege either conduct or injuries that fall within FDUTPA's scope.  These fundamental failures confirm that JPMorgan's CEO has been fraudulently joined.

17.     ***First***, Plaintiffs' allegations do not accuse Mr. Dimon of participating in any act of "trade or commerce" under the statute.  FDUTPA is a consumer-protection statute that provides a remedy when a business deceives or misleads in the course of advertising, soliciting, providing, offering, or distributing *its* goods, services, or things of value to consumers.  *See* Fla. Stat. § 501.203(8); *see also id.* § 501.202 (emphasizing FDUTPA's focus on consumer protection).  Put simply, "FDUTPA … exist[s] to protect a purchaser against the seller" in cases of fraud or other unfair tactics related to the sale of goods or services.  *White v. Ferco Motors Corp.*, 260 So. 3d 388, 391 (Fla. 3d DCA 2018); *see, e.g., id.* at 390 (FDUTPA claim against used-car dealer based on disabled check-engine light); *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1280 (11th Cir. 2011) (FDUTPA claim against food manufacturer based on allegedly false and misleading claims about the health benefits of its product); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 972 (Fla. 1st DCA 2000) (FDUTPA claim against cell-phone seller based on alleged misrepresentations about the capabilities of its phones).

18.     Consistent with FDUTPA's consumer-protection focus, when "the allegedly violative action is the publication of information," the communication qualifies as "trade or commerce" only if it falls within the category of "commercial speech."  *Bongino v. Daily Beast*

*Co., LLC*, 477 F. Supp. 3d 1310, 1321 (S.D. Fla. 2020).[9]  The "core notion of commercial speech" is "propos[ing] a commercial transaction."  *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017); *see also Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980).  Thus, when an entity shares information with a third party outside the context of a proposed or actual commercial transaction, that communication is not actionable under FDUTPA.  *See AMG Trade & Distrib., LLC v. Nissan N. Am., Inc.*, 813 F. App'x 403, 408 (11th Cir. 2020) (holding that voluntarily sharing information with a third party is not an "act in 'trade or commerce'") (citation omitted).  FDUTPA does not create a cause of action for alleged statements by a businessperson to another entity that may result in that third party harming the plaintiff, no matter how negative those statements may be.

19.     Here, Plaintiffs nowhere allege that JPMorgan deceived them about *its* products or services, so FDUTPA plainly does not apply.  Plaintiffs allege instead that the blacklist is an information-sharing tool that banks use to communicate to each other the identities of customers who "have engaged in malfeasant acts in connection with their financial practices."  Compl. ¶ 88. But Plaintiffs do not allege that JPMorgan used the "blacklist" to deceive or defraud Plaintiffs regarding *JPMorgan's services*, as would be required to bring these allegations within FDUTPA's orbit.  According to Plaintiffs, the alleged blacklist does not propose any commercial transaction; indeed, there is no indication that it has *any* connection to an advertisement, offering, or similar communication made in trade or commerce.  It therefore falls outside FDUTPA's ambit.  *See, e.g.*, *AMG Trade & Distrib., LLC*, 813 F. App'x at 408 (allegedly false statement to customs officials

---

[9] Florida courts routinely rely on federal decisions interpreting FDUTPA.  *See, e.g.*, *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 168 (Fla. 4th DCA 2015) ("Since state court decisions regarding FDUTPA claims are rare, it is instructive to look at the decisions of the United States District Court analyzing FDUTPA claims." (citation omitted)).

that a shipment of auto parts was inauthentic was not conduct in trade or commerce); *Law Off. of David J. Stern, P.A. v. Florida*, 83 So. 3d 847, 850 (Fla. 4th DCA 2011) (allegedly deceptive conduct in the processing of foreclosure cases was not conduct in trade or commerce); *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1374–76 (S.D. Fla. 2010) (allegedly fraudulent demand letter was not conduct in trade or commerce).

20.     ***Second***, Plaintiffs' claim fails for another independent reason: the Complaint does not even attempt to allege "actual damages," as required to establish a cause of action under FDUTPA. *See Marrache v. Bacardi U.S.A., Inc*., 17 F.4th 1084, 1101 (11th Cir. 2021) ("FDUTPA requires an aggrieved person to suffer actual damages"). In this context, the term "actual damages" specifically refers to "'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984) (citation omitted). This follows from the purpose of FDUTPA: the Act is designed to remedy harms related to the provision of products and services, so it is unsurprising that the legislature limited recovery to damages arising *from* those products and services.

21.     Notably, "[a]ctual damages, as pertaining to FDUTPA, does not include 'actual consequential' damages." *Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d 992, 994 (Fla. 4th DCA 2004). Reputational harm and indirect financial harms are core examples of "consequential," rather than "actual," harms. *See Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017) ("'[H]arm in the manner of competitive harm, diverted or lost sales, and harm to the goodwill and reputation' are consequential damages." (citation omitted)); *Sub-Zero, Inc. v. Schuster*, 2018 WL 8369106, at *4 (S.D. Fla. Sept. 4, 2018) ("Lost

profits or harm to a Plaintiff's reputation are not 'actual damages.'").  As such, Plaintiffs cannot recover for alleged reputational or indirect financial injuries.

22.     Plaintiffs do not—and cannot—allege "actual" damages here.  Even taking their spurious "blacklisting" allegations as stated, they do not claim any reduction in value of a product or service offered by JPMorgan (much less by its CEO).  Plaintiffs instead are claiming textbook consequential damages:

> [P]ublishing the names of President Trump, the other Plaintiffs, the Trump Organization and its affiliated entities, and/or the Trump family on the blacklist would discourage, and did discourage, other federally regulated banks in the United States, all of which can access this blacklist, from dealing with President Trump, the other Plaintiffs, the Trump Organization and its affiliated entities, and/or the Trump family.  *Consequently*, Plaintiffs have suffered and continue to suffer overwhelming financial and reputational harm.

Compl. ¶¶ 97–98 (emphasis added).  For this harm, they claim an absurd "$5,000,000,000.00 in damages," which they entirely fail to connect to any conception of market value of any services Plaintiffs received from Mr. Dimon, as would be required to establish a FDUTPA claim.  *See Rollins*, 454 So. 2d at 585.

23.     By complaining that JPMorgan's CEO allegedly communicated with a third party in a way that caused them only consequential harms, Plaintiffs have alleged conduct and damages that fall outside of FDUTPA's scope.  This claim has "no reasonable possibility" of success.  For this reason, too, the Court should conclude that Mr. Dimon was fraudulently joined.  *Legg*, 428 F.3d at 1324.

### C.     Plaintiffs do not and cannot plead the basic facts of their FDUTPA claim.

24.     Even if FDUTPA authorized liability against the CEO of a federally regulated bank acting in his official capacity (it doesn't), and even if Plaintiffs had alleged both conduct and injuries covered by the statute (they didn't), their sole claim against JPMorgan's CEO would *still*

have no reasonable possibility of success because Plaintiffs fail to allege several basic facts necessary to have even a possibility of establishing a FDUTPA claim against JPMorgan's CEO. Indeed, Plaintiffs fail to allege even the most basic facts concerning the so-called "blacklist," including when it was created, which Plaintiffs appear on it, which banks could access it, and the like.  Nor could they, because there never was any "blacklist."  To be sure, Plaintiffs' insufficient allegations make it difficult to decipher what they are claiming happened.  If Plaintiffs ever provide more detail, Defendants will be able to deny such claims with even greater specificity.  Until then, all Defendants can do is deny awareness that any list fitting this description exists.

25.     Federal courts can evaluate allegations of fact in assessing the reasonable possibility of success of a plaintiff's claim for a fraudulent-joinder analysis, and, when doing so, look to the pleading standards of the jurisdiction from which the case has been removed.  *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th Cir. 2011).

26.     Florida is a fact pleading jurisdiction, where Plaintiffs must "state their pleadings with sufficient particularity for a defense to be prepared."  *Horowitz v. Laske*, 855 So. 2d 169, 172–73 (Fla. 5th DCA 2003).  Moreover, because Plaintiffs' FDUTPA claim sounds in fraud by alleging that "publication of [Plaintiffs'] names on th[e] blacklist is a falsehood[,]" Compl. ¶ 57, their claim is subject to the heightened pleading standard of Florida Rule of Civil Procedure 1.120(b).  *Cf. Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1292 (11th Cir. 2025) (FDUTPA claims sounding in fraud are subject to Federal Civil Rule 9(b)'s parallel heightened pleading standard).  Under this Rule, "[t]he factual basis for a claim of fraud must be pled with particularity and must specifically identify misrepresentations or omissions of fact, as well as time, place or manner in which they were made."  *Cedars Healthcare Grp., Ltd. v. Mehta*, 16 So. 3d 914, 917 (Fla. 3d DCA 2009).

27.     Plaintiffs do not come close to satisfying this standard.  To start, while Plaintiffs assert that they "recently learned" of their supposed publication on the purported "blacklist," Compl. ¶ 52, the Complaint lacks any of the requisite allegations of *when* Plaintiffs allegedly learned this information; *from whom* they learned it; *when* the blacklist was purportedly published; *what* the blacklist entails; *which banks* accessed it; or even *which Plaintiffs* were placed on it. Without these details, Plaintiffs' deficient allegations cannot survive.  *See, e.g., Ground & Pipe Techs., LLC v. Firstliner Techs., Inc.*, 2005 WL 8163041, at *3 (N.D. Fla. Oct. 5, 2005) ("Firstliner does not sufficiently identify when, where, or to whom any defamatory statement was made. … As alleged, the libel and slander claim is vague and does not provide Ground & Pipe with fair notice.").

28.     Plaintiffs also do not allege causation with anything close to the required particularity.  *See Pop*, 145 F.4th at 1291 (holding that, to succeed on a FDUTPA claim, a plaintiff must prove (1) "a deceptive or unfair trade practice;" (2) "causation;" and (3) "actual damages"). Instead, Plaintiffs allege in conclusory fashion, "on information and belief," that their being put on a purported "blacklist" by JPMorgan "induced other federally regulated banks in the United States … to not carry on business relationships with [Plaintiffs]."  Compl. ¶ 58.  But they do not answer the most fundamental question that this allegation raises: *Which banks were "induce[d] … not to carry on business relationships" with Plaintiffs?*  The answer to that question is entirely within Plaintiffs' knowledge.  But, because they do not provide even the slightest hint of an answer, their pleading on its face fails to establish a FDUTPA cause of action.  *See Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012) ("[C]ausation must be direct, rather than remote or speculative.").

29.     Plaintiffs' failure to carry their pleading burden stems from the fact that their allegations lack any basis in reality.  Their claim rests entirely on the conclusory assertion that a "blacklist" exists and was circulated among financial institutions.  But this assertion, standing alone, cannot create even a possibility of stating a claim—the threshold for fraudulent joinder—because it ignores the regulatory reality in which banks operate.  Banks are among the most heavily regulated institutions in the United States, subject to extensive federal and state oversight governing virtually every aspect of their operations, including information-sharing practices. Unlike a corporation, which may pursue any lawful activity approved by the corporation's board, a national bank may pursue only the business of banking and a narrow set of activities incidental to banking.  12 U.S.C. § 24 (Seventh).  If there were a mechanism for banks to share a list identifying malfeasant individuals—as Plaintiffs allege—that mechanism would have to be authorized, required, or at minimum addressed by federal statute, regulation, or regulatory guidance, and it would be known and ascertainable.  But no such authority exists—and no such law or rule is cited by Plaintiffs—because there is no such list.

30.     On the contrary, the federal banking laws specifically *restrict* the sharing of customer information by banks and other financial institutions with each other or with other third parties.  For example, Section 502 of the Gramm-Leach-Bliley Act generally prohibits banks from sharing nonpublic personal information of consumers with nonaffiliated third parties, such as other banks.  OCC guidance applicable to national banks further clarifies that:

> (a)     "There are special rules regarding lists.  Publicly available information would be treated as nonpublic if it were included on a list of consumers derived from nonpublic personal information.  For example, a list of the names and addresses of a financial institution's depositors would be

nonpublic personal information even though the names and addresses might be published in local telephone directories, because the list is derived from the fact that a person has a deposit account with an institution, which is not publicly available information."  OCC, Comptroller's Handbook: Privacy of Consumer Financial Information, at 4, *available at* https://www.occ.gov/publications-and-resources/publications/comptrollers-handbook/files/privacy-consumer-financial-info/pub-ch-privacy.pdf.

31.     If Plaintiffs provide further details on the so-called "blacklist," Defendants will rebut them specifically.  Regardless, the Complaint is woefully inadequate under applicable pleading standards and, as a result, Plaintiffs' FDUTPA claim against JPMorgan's CEO has "no reasonable possibility" to succeed.  *Legg*, 428 F.3d at 1324.  This is yet another basis to conclude that Mr. Dimon was fraudulently joined to defeat this Court's diversity jurisdiction.

## II.     The Court Has Diversity Jurisdiction Over The Properly Named Parties

32.     Defendants have removed this action based on diversity of citizenship under 28 U.S.C. §§ 1332 and 1441.  There is complete diversity among the non-fraudulently-joined parties, because JPMorgan is a citizen of Ohio and no Plaintiff is a citizen of Ohio.

33.     JPMorgan is a citizen of Ohio.  JPMorgan is a national banking association, and its articles of association set forth Ohio as the location of its main office.  *See* 28 U.S.C. § 1348; *Wachovia*, 546 U.S. at 307 ("[W]e hold that a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located.").[10]

---

[10] The Complaint alleges that JPMorgan's "principal place of business" is New York, Compl. ¶ 11, but that has no bearing on JPMorgan's citizenship for purposes of diversity jurisdiction.  JPMorgan's main office, as listed in its articles of association, is in Ohio.  Therefore, it is a citizen of only Ohio. *See Arthur v. JPMorgan Chase Bank, NA*, 569 F. App'x 669, 673 (11th Cir. 2014) (JPMorgan a citizen of Ohio, with no mention of any other state); *see also Am. Senior Servs. of CA, Inc. v. Wells Fargo Bank, N.A.*, 2015 WL 12915729, at *1–3 (M.D. Fla. Nov. 23,

34.     Plaintiff Donald J. Trump is an individual and a citizen of Florida.  *See* Compl. ¶ 1.

35.     Plaintiff Trump Payroll Corp. is a citizen of New York and Florida.  Plaintiff Trump Payroll Corp. is incorporated in New York and its principal place of business is in Florida.

36.     Plaintiff 401 Mezz Venture, LLC is a citizen of Florida.   Plaintiff 401 Mezz Venture, LLC is a limited liability company whose members are Trump Chicago Managing Member LLC; Trump Chicago Member LLC; and TIHT Chicago Member Acquisition LLC.

(a)     Trump Chicago Managing Member LLC is a limited liability company whose sole member is DJT Holdings LLC.  DJT Holdings LLC is a limited liability company whose members are The Donald J. Trump Revocable Trust dated April 7, 2014 and DJT Holdings Managed Member LLC.  DJT Holdings Managed Member LLC is a limited liability company whose sole member is The Donald J. Trump Revocable Trust dated April 7, 2014.  The sole trustee of The Donald J. Trump Revocable Trust dated April 7, 2014 is Donald J. Trump, Jr.  Donald J. Trump, Jr. is an individual who is a citizen of Florida.

(b)     Trump Chicago Member LLC is a limited liability company whose sole member is DJT Holdings LLC.  DJT Holdings LLC is a limited liability company whose members are The Donald J. Trump Revocable Trust dated April 7, 2014 and DJT Holdings Managed Member LLC.  DJT Holdings Managed Member LLC is a limited liability company whose sole member is The Donald J. Trump Revocable Trust dated April 7, 2014.  The sole

---

2015) (surveying post-*Wachovia* circuit cases and holding that a national bank's citizenship is only the state in which it has its main office (citing *Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 711 (9th Cir. 2014); *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 705 (8th Cir. 2011))).

trustee of The Donald J. Trump Revocable Trust dated April 7, 2014 is Donald J. Trump, Jr.  Donald J. Trump, Jr. is an individual who is a citizen of Florida.

(c)  TIHT Chicago Member Acquisition LLC is a limited liability company whose sole member is DJT Holdings LLC.  DJT Holdings LLC is a limited liability company whose members are The Donald J. Trump Revocable Trust dated April 7, 2014 and DJT Holdings Managed Member LLC.  DJT Holdings Managed Member LLC is a limited liability company whose sole member is The Donald J. Trump Revocable Trust dated April 7, 2014.  The sole trustee of The Donald J. Trump Revocable Trust dated April 7, 2014 is Donald J. Trump, Jr.  Donald J. Trump, Jr. is an individual who is a citizen of Florida.

(d)  Accordingly, Plaintiff 401 Mezz Venture, LLC is a citizen of Florida.

37.  Plaintiff 401 North Wabash Venture, LLC is a citizen of Florida.  Plaintiff 401 North Wabash Venture, LLC is a limited liability company whose sole member is 401 Mezz Venture LLC.  Accordingly, for the reasons stated in Paragraph 36(a)–(d), Plaintiff 401 North Wabash Venture, LLC is a citizen of Florida.

38.  Plaintiff THC Miami Restaurant Hospitality, LLC is a citizen of Delaware and Florida.  Plaintiff THC Miami Restaurant Hospitality, LLC is a limited liability company whose members are THC Miami Restaurant Hospitality Member Corp. and DJT Holdings LLC.

(a)  THC Miami Restaurant Hospitality Member Corp. is incorporated in Delaware and has its principal place of business in Florida.

(b)  DJT Holdings LLC is a limited liability company whose members are The

Donald J. Trump Revocable Trust dated April 7, 2014 and DJT Holdings Managed Member LLC.  DJT Holdings Managed Member LLC is a limited liability company whose sole member is The Donald J. Trump Revocable Trust dated April 7, 2014.  The sole trustee of The Donald J. Trump Revocable Trust dated April 7, 2014 is Donald J. Trump, Jr.  Donald J. Trump, Jr. is an individual who is a citizen of Florida.

(c)    Accordingly, Plaintiff THC Miami Restaurant Hospitality, LLC is a citizen of Delaware and Florida.

39.    Plaintiff Trump Briarcliff Manor Development, LLC is a citizen of New York and Florida.  Plaintiff Trump Briarcliff Manor Development, LLC is a limited liability company whose members are Briarcliff Properties Inc. and DJT Holdings LLC.

(a)    Briarcliff Properties Inc. is incorporated in New York and has its principal place of business in Florida.

(b)    DJT Holdings LLC is a limited liability company whose members are The Donald J. Trump Revocable Trust dated April 7, 2014 and DJT Holdings Managed Member LLC.  DJT Holdings Managed Member LLC is a limited liability company whose sole member is The Donald J. Trump Revocable Trust dated April 7, 2014.  The sole trustee of The Donald J. Trump Revocable Trust dated April 7, 2014 is Donald J. Trump, Jr.  Donald J. Trump, Jr. is an individual who is a citizen of Florida.

(c)    Accordingly, Plaintiff Trump Briarcliff Manor Development, LLC is a citizen of New York and Florida.

40.     Plaintiff Trump Chicago Retail, LLC is a citizen of Florida.  Plaintiff Trump Chicago Retail, LLC is a limited liability company whose sole member is 401 Mezz Venture LLC. Accordingly, for the reasons articulated in Paragraphs 36(a)–(d), Plaintiff Trump Chicago Retail, LLC is a citizen of Florida.

41.     Plaintiff Trump Miami Resort Management, LLC is a citizen of Delaware and Florida.  Plaintiff Trump Miami Resort Management, LLC is a limited liability company whose members are Trump Miami Resort Management Member Corp. and DJT Holdings LLC.

(a)     Trump Miami Resort Management Member Corp. is incorporated in Delaware and has its principal place of business in Florida.

(b)     DJT Holdings LLC is a limited liability company whose members are The Donald J. Trump Revocable Trust dated April 7, 2014 and DJT Holdings Managed Member LLC.  DJT Holdings Managed Member LLC is a limited liability company whose sole member is The Donald J. Trump Revocable Trust dated April 7, 2014.  The sole trustee of The Donald J. Trump Revocable Trust dated April 7, 2014 is Donald J. Trump, Jr.  Donald J. Trump, Jr. is an individual who is a citizen of Florida.

(c)     Accordingly, Plaintiff Trump Miami Resort Management, LLC is a citizen of Delaware and Florida.

42.     Plaintiff Trump National Golf Club Colts Neck, LLC is citizen of Delaware, New York, and Florida.  Plaintiff Trump National Golf Club Colts Neck, LLC is a limited liability company whose members are Trump National Golf Club Colts Neck Member Corp. and DJT Holdings LLC.

    (a)     Trump National Golf Club Colts Neck Member Corp. is incorporated in Delaware and has its principal place of business in New York.

    (b)     DJT Holdings LLC is a limited liability company whose members are The Donald J. Trump Revocable Trust dated April 7, 2014 and DJT Holdings Managed Member LLC.  DJT Holdings Managed Member LLC is a limited liability company whose sole member is The Donald J. Trump Revocable Trust dated April 7, 2014.  The sole trustee of The Donald J. Trump Revocable Trust dated April 7, 2014 is Donald J. Trump, Jr.  Donald J. Trump, Jr. is an individual who is a citizen of Florida.

    (c)     Accordingly, Plaintiff Trump National Golf Club Colts Neck, LLC is a citizen of Delaware, New York, and Florida.

43.     Plaintiff Trump National Golf Club, LLC is a citizen of Delaware and Florida. Plaintiff Trump National Golf Club, LLC is a limited liability company whose members are Trump National Golf Club Member Corp. and DJT Holdings LLC.

    (a)     Trump National Golf Club Member Corp. is incorporated in Delaware and has its principal place of business in Florida.

    (b)     DJT Holdings LLC is a limited liability company whose members are The Donald J. Trump Revocable Trust dated April 7, 2014 and DJT Holdings Managed Member LLC.  DJT Holdings Managed Member LLC is a limited liability company whose sole member is The Donald J. Trump Revocable Trust dated April 7, 2014.  The sole trustee of The Donald J. Trump Revocable Trust dated April 7, 2014 is Donald J. Trump, Jr.  Donald J. Trump, Jr. is an individual who is a citizen of Florida.

(c)     Accordingly, Plaintiff Trump National Golf Club, LLC is a citizen of Delaware and Florida.

44.     Accordingly, because no plaintiff is a citizen of Ohio, there is complete diversity of citizenship between Plaintiffs and Defendant JPMorgan.

45.     Plaintiffs' four-count Complaint against JPMorgan and its CEO represents that "the amount in controversy exceeds the sum or value of $750,000.00, exclusive of interest, costs, and attorneys' fees." Compl. ¶ 13.  Plaintiffs also seek "an award of at least $5,000,000,000" against JPMorgan on their trade libel claim, and $5,000,000,000 on their FDUTPA claim against Mr. Dimon. *Id.* ¶¶ 92, 98.

46.     The amount in controversy in this action therefore exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

47.     Accordingly, this Court has jurisdiction over this action because there is complete diversity of citizenship between Plaintiffs and Defendant JPMorgan, and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

## III.    Defendants' Notice Complies with 28 U.S.C. §§ 1441 and 1446

48.     On January 22, 2026, Plaintiffs initiated the above-captioned action in the Eleventh Judicial Circuit of Florida in and for Miami-Dade County.  A copy of the Complaint and all subsequent pleadings to date are attached as Exhibit A.  *See also Donald J. Trump, et al. v. JPMorgan Chase Bank, N.A., et al.*, No. 2026-001356-CA-01 (Fla. 11th Cir. Ct.).

49.     Defendant JPMorgan was served through its registered agent on January 29, 2026, and Defendant Dimon accepted service of the Complaint on January 26, 2026.  Both Defendants first became aware of the Complaint when it was emailed to JPMorgan's counsel on January 22, 2026.

50.     This Notice is timely filed because it was filed "within 30 days after the receipt by the defendant[s], through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b).

51.     The United States District Court for the Southern District of Florida, Miami Division, is "the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

52.     Promptly after filing this Notice, Defendants will provide written notice of its filing to counsel for Plaintiffs and will transmit a copy of this Notice to the Clerk of the Eleventh Judicial Circuit of Florida in and for Miami-Dade County, as required by 28 U.S.C. § 1446(d).

53.     By removing this action, Defendants do not admit any of the allegations in Plaintiffs' Complaint.  Defendants do not waive, and expressly preserve, all available defenses, including with respect to personal jurisdiction and venue, and hereby provisionally assert such defenses to the extent necessary to preserve them.

54.     WHEREFORE, Defendants JPMorgan Chase Bank, N.A. and James Dimon provide notice that this action now pending before the Eleventh Judicial Circuit of Florida in and for Miami-Dade County, No. 2026-001356-CA-01, is hereby removed to the United States District Court for the Southern District of Florida.

Date: February 19, 2026

Respectfully submitted,

*/s/ Eliot Pedrosa*

Eliot Pedrosa
Fla. Bar No. 182443
Kelly A. Carrero
Fla. Bar No. 1072663
JONES DAY
600 Brickell Ave, Suite 3300
Miami, FL 33131
Telephone: (305) 714-9700
Facsimile: (305) 713-9799
Email: epedrosa@jonesday.com
Email: kacarrero@jonesday.com

Noel J. Francisco (*pro hac vice* forthcoming)
Charlotte H. Taylor (*pro hac vice* forthcoming)
JONES DAY
51 Louisiana Ave, NW
Washington, DC 20001
Telephone: (202) 879-3939
Email: njfrancisco@jonesday.com
Email: ctaylor@jonesday.com

Jayant W. Tambe (*pro hac vice* forthcoming)
Amanda L. Dollinger (*pro hac vice* forthcoming)
JONES DAY
250 Vesey St
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: jtambe@jonesday.com
Email: adollinger@jonesday.com

Derek E. León
Fla. Bar No. 625507
LEÓN COSGROVE JIMÉNEZ, LLP
255 Alhambra Cir, 8th Floor
Miami, FL 33134
Telephone: (305) 740-1975
Facsimile: (305) 351-4059
Email: dleon@leoncosgrove.com

*Attorneys for Defendants*
*JPMorgan Chase Bank, N.A. and James Dimon*

## CERTIFICATE OF SERVICE

On February 19, 2026, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.  On the same date, a copy of the foregoing document has been furnished to the following parties via U.S. Mail, postage prepaid, and electronic mail:

Alejandro Brito
Ian Michael Corp
BRITO, PLLC
2121 Ponce de Leon Boulevard, Suite 650
Coral Gables, FL 33134
abrito@britopllc.com
apiriou@britopllc.com
icorp@britopllc.com
csottile@britopllc.com


/s/ *Eliot Pedrosa*
Eliot Pedrosa, Esq.

*Attorney for Defendants*
*JPMorgan Chase Bank, N.A. and James Dimon*