**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:26-cv-21106-KMW

PRESIDENT DONALD J. TRUMP, TRUMP PAYROLL
CORP., 401 MEZZ VENTURE, LLC, 401 NORTH
WABASH VENTURE, LLC, THC MIAMI
RESTAURANT HOSPITALITY, LLC, TRUMP
BRIARCLIFF MANOR DEVELOPMENT, LLC,
TRUMP CHICAGO RETAIL, LLC, TRUMP MIAMI
RESORT MANAGEMENT, LLC, TRUMP NATIONAL
GOLF CLUB COLTS NECK, LLC, and TRUMP
NATIONAL GOLF CLUB, LLC,

     Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A. and JAMES DIMON,

     Defendants.

---

**DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(A)**
**AND INCORPORATED MEMORANDUM OF LAW**

JONES DAY
600 Brickell Ave, Suite 3300
Miami, Florida 33131
Telephone: (305) 714-9700
Facsimile: (305) 713-9799

*Counsel for Defendants (additional appearances below)*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 7

I.      This Case Should Be Transferred to S.D.N.Y. Because of the Forum-Selection
        Clauses to Which All Ten Plaintiffs Agreed.................................................................. 7

II.     The Section 1404(a) Factors Independently Warrant Transfer....................................... 11

        A.      The public-interest factors favor transfer to New York....................................... 11

        B.      The private-interest factors favor transfer to New York....................................... 13

CONCLUSION.................................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Page**

CASES

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
571 U.S. 49 (2013) .................................................................................... passim

*Burgess v. Sam's E., Inc.*,
2022 WL 3136986 (S.D. Fla. May 17, 2022) ........................................................3

*Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp.*,
508 F. Supp. 2d 1186 (S.D. Fla. 2007) .................................................................14

*Daoud Inv. Holdings, Inc. v. Cole*,
2015 WL 12743767 (S.D. Fla. Oct. 30, 2015)......................................................15

*Flexiteek Americas, Inc. v. United Plastics Corp.*,
2012 WL 13005973 (S.D. Fla. Aug. 3, 2012).........................................................9

*Food Marketing Consultants, Inc. v. Sesame Workshop*,
2010 WL 1571206 (S.D. Fla. Mar. 26, 2010) .......................................................12

*Gent Row, LLC v. Truist Bank*,
2024 WL 808029 (S.D. Fla. Jan. 16, 2024) ............................................................8

*Go 770 Mgmt. LLC v. Mt. Hawley Ins. Co.*,
2024 WL 4581259 (S.D. Fla. Oct. 25, 2024).....................................................12, 13

*Gold Crown Resort Mktg. Inc. v. Phillpotts*,
272 So. 3d 789 (Fla. 5th DCA 2019) ......................................................................9

*Gordon v. Sandals Resorts Int'l, Ltd.*,
418 F. Supp. 3d 1132 (S.D. Fla. 2019) ............................................................11, 12

*Jackson v. Shakespeare Found., Inc.*,
108 So. 3d 587 (Fla. 2013)......................................................................................9

*Krenkel v. Kerzner Int'l Hotels Ltd.*,
579 F.3d 1279 (11th Cir. 2009) ...............................................................................8

*Larsen v. Citibank FSB*,
871 F.3d 1295 (11th Cir. 2017) ...............................................................................7

*McArthur v. Kerzner Int'l Bah., Ltd.*,
607 F. App'x 845 (11th Cir. 2015) ..................................................................................7

*Moghaddam v. Dunkin' Donuts, Inc.*,
2002 WL 1940724 (S.D. Fla. Aug. 13, 2002)................................................................14

*New Life Ventures, Inc. v. Locke Lorde LLP*,
2019 WL 2193508 (S.D. Fla. Apr. 24, 2019) ..................................................................3

*New York v. Trump*,
No. 2024-01134 (N.Y. App. Div. 1st Dep't) ...............................................................15

*New York v. Trump*,
No. 2024-05379 (N.Y. App. Div. 1st Dep't) ...............................................................15

*Osgood v. Disc. Auto Parts, LLC*,
981 F. Supp. 2d 1259 (S.D. Fla. 2013) ...................................................................11, 13

*Phillips v. Churchill Cap. Corp. IV*,
2021 WL 11628687 (N.D. Ala. Dec. 1, 2021)...............................................................15

*Radical Invs. Ltd. v. Good Vibrations Ent. LLC*,
2022 WL 2188278 (S.D. Fla. Apr. 25, 2022) ..................................................................3

*Riley v. Donatelli*,
2017 WL 3316479 (M.D. Fla. Aug. 3, 2017) ...............................................................13

*Slater v. Energy Servs. Grp. Int'l, Inc.*,
634 F.3d 1326 (11th Cir. 2011) .................................................................................8, 9

*Stewart Org., Inc. v. Ricoh Corp.*,
810 F.2d 1066 (11th Cir. 1987) ...............................................................................9, 10

*Stiles v. Bankers Healthcare Grp., Inc.*,
637 F. App'x 556 (11th Cir. 2016) .................................................................................7

*Storey Mountain, LLC v. George*,
357 So. 3d 709 (Fla. 4th DCA 2023) ..............................................................................8

*Storm Damage Sols., LLC v. RLI Ins. Co.*,
2023 WL 8004314 (S.D. Fla. Nov. 17, 2023)................................................................12

*Trump v. Facebook, Inc.*,
No. 21-cv-22440, Dkt. No. 108 (S.D. Fla. Nov. 19, 2021)..............................................2

*Trump v. Twitter, Inc.*,
    2021 WL 8202673 (S.D. Fla. Oct. 26, 2021)............................................................................2

*Trump v. YouTube, LLC*,
    2021 WL 8398892 (S.D. Fla. Oct. 6, 2021)..............................................................................3

**STATUTES**

28 U.S.C.
    § 1404(a) ....................................................................................................................... passim

Defendants JPMorgan Chase Bank, N.A. ("JPMorgan") and James Dimon (together, "Defendants") respectfully move to transfer this action to the Southern District of New York under 28 U.S.C. § 1404(a) and submit this memorandum of law in support of their motion.

## INTRODUCTION

All ten Plaintiffs claim breach of account agreements they had with JPMorgan. And all of these Plaintiffs' account agreements have forum-selection clauses that require their claims—which relate to the banking services they received from JPMorgan—to be filed in New York. The governing law is clear that the forum-selection clauses to which Plaintiffs agreed are enforceable and require transfer. As the Supreme Court has explained, "§ 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59–60 (2013) (citation modified). The case therefore must be transferred unless Plaintiffs can carry "the burden of showing that public-interest factors *overwhelmingly disfavor* a transfer." *Id.* at 67 (emphasis added). Here, however, the public interest *favors* transfer. New York law governs the claims of all but two Plaintiffs, and those two Plaintiffs' claims are governed by Ohio law; Florida law governs none of the claims. And New York is where the parties' relationship was centered. Under *Atlantic Marine*, this case must be transferred to New York.

The overwhelming connections this dispute has to New York reinforce this result. None of Plaintiffs' accounts were held at JPMorgan branches located in Florida. Instead, Plaintiffs all held accounts at New York branches of JPMorgan. President Trump himself provided a New York address for his JPMorgan personal account. The point of contact for the corporate Plaintiffs' accounts was a Trump Organization employee in New York. And the witnesses relevant to this dispute are in New York, where the JPMorgan bankers responsible for managing the accounts were located. Indeed, the only individual specifically identified in Plaintiffs' initial disclosures as

having information about this dispute on the Plaintiffs' side—President Trump himself—currently holds office in Washington, D.C., not Florida. And while Defendants vigorously dispute the allegations in the Complaint, those alleged activities (if they had occurred at all) would have taken place in New York. Plaintiffs' decision to ignore their forum-selection agreement to litigate in New York, especially given these connections to New York and the suit's lack of any meaningful connection to Florida, is a naked attempt to deprive JPMorgan of the convenience of litigating in the parties' agreed-upon forum.

The factors supporting resolving this dispute in New York are so compelling that, even if the dispositive forum-selection clauses did not exist, transfer would still be warranted under § 1404(a). In addition to the above, it will plainly be convenient for all parties to litigate in New York. President Trump maintains a residence in, and has substantial ties to, New York. The corporate Plaintiffs are controlled by a New York company. And key JPMorgan employees relevant to Plaintiffs' allegations are based in New York. President Trump cannot reasonably object to litigating a dispute in New York involving a personal bank account located there and commercial bank accounts controlled by his family's New York company and administered by New York-based agents.

To be clear, while the centrality of New York underscores why this suit should be transferred, the parties' agreed-to forum-selection clauses are controlling here—as the Supreme Court and courts in this District have time and again made clear. Enforcing the parties' forum-selection clauses in this case would be consistent with several other decisions transferring lawsuits filed by President Trump in this District to the places he previously agreed to litigate them. *See Trump v. Facebook, Inc.*, No. 21-cv-22440, Dkt. No. 108 (S.D. Fla. Nov. 19, 2021) (transferring from S.D. Fla. to N.D. Cal. based on forum-selection clause); *Trump v. Twitter, Inc.*, 2021 WL

8202673, at *9 (S.D. Fla. Oct. 26, 2021) (same); *Trump v. YouTube, LLC*, 2021 WL 8398892, at *3 (S.D. Fla. Oct. 6, 2021) (same).[1]

## BACKGROUND

As of January 2021, President Trump and the corporate Plaintiffs each maintained one or more deposit accounts with JPMorgan branches in New York.  All of the corporate Plaintiffs were then and are now affiliated with the Trump Organization and controlled by the Trump family.  The JPMorgan bankers who managed these accounts and managed JPMorgan's relationship with the Trump Organization were located in New York.  And the primary Trump Organization contact with whom JPMorgan corresponded about the accounts was also located in New York, where the Trump Organization is headquartered and maintains its principal place of business.  Declaration of Dan Wilkening ("Decl.") ¶ 23 (attached hereto as Exhibit A).  No Plaintiff held an account at a JPMorgan branch in Florida.

President Trump has been a client of JPMorgan or predecessor entities since at least 1986.  *Id*. ¶ 24.  In 2017, his personal deposit account was transferred from JPMorgan's Commercial Bank to its Private Bank.  *Id.* ¶ 29.  At that time, President Trump signed a Private Bank "Personal Account Application," in which he acknowledged the terms governing his account and agreed to be bound by them.  *Id.*

---

[1] Because Plaintiffs fraudulently joined Mr. Dimon as a defendant in this action in an attempt to defeat diversity jurisdiction, Defendants request that the Court dismiss Mr. Dimon before transferring the case.  *See, e.g.*, *Burgess v. Sam's E., Inc.*, 2022 WL 3136986, at *7 (S.D. Fla. May 17, 2022) (order dismissing fraudulently joined defendant).  In the alternative, however, Mr. Dimon requests that this Court transfer the claims asserted against him to New York alongside the claims against JPMorgan.  *See New Life Ventures, Inc. v. Locke Lorde LLP*, 2019 WL 2193508, at *2–*3 (S.D. Fla. Apr. 24, 2019) (holding that courts may decide whether to transfer or remand in any order).  Although Mr. Dimon is not a signatory to the forum-selection clauses at issue in this motion, transfer of the entire suit would be appropriate because the "non-contracting" defendant has "no resistance or legal objection to transfer of the full action."  *Radical Invs. Ltd. v. Good Vibrations Ent. LLC*, 2022 WL 2188278, at *3 (S.D. Fla. Apr. 25, 2022).

Similarly, when each corporate Plaintiff opened its accounts, each Plaintiff (or its authorized signer) received and executed a signature card. *Id.* ¶ 9.  The signature card incorporated and referred to a set of account terms, and, by signing the cards, the corporate Plaintiffs agreed to be bound by those terms. *Id.*  All ten Plaintiffs' agreement to the account terms was a material part of JPMorgan's consideration for providing banking services to the Plaintiffs, without which it would not have done so.

The terms that governed Plaintiffs' accounts during the events at issue in this lawsuit are set out in the accompanying Declaration.  *See id.* ¶¶ 11–19, 26; *see also id.* ¶ 31 (table listing forum-selection clauses).  And the pertinent forum-selection clauses are set forth below.  Plaintiffs' accounts, because they were opened at various times and across multiple lines of business, were governed by seven sets of account terms with four different forum-selection clauses.  But the upshot for purposes of this motion is straightforward:  Each forum-selection clause points to New York as the forum with exclusive jurisdiction to resolve disputes related to Plaintiffs' accounts.

The account held by Plaintiff **Donald J. Trump** was governed by JPMorgan's Combined Terms and Conditions (effective February 7, 2021), which contain the following forum-selection clause:

> If you file any lawsuit or other legal proceeding against us that is connected in any way to your Accounts or services, you must do so in an appropriate court in the state and county where you opened the account.  If you relocate your Account to another branch, you must file any lawsuit or proceeding in the state and county where that branch is located.  In addition, if we file any lawsuit or legal proceeding that is connected in any way to your Accounts or services, you consent to jurisdiction and venue in an appropriate court in the location described in this paragraph.

Decl. ¶ 26(i).

The accounts held by Plaintiffs **401 North Wabash Venture, LLC, Trump National Golf Club Colts Neck, LLC,** and **Trump National Golf Club, LLC**, were governed by

V1.8_06_29_18 of JPMorgan's Global Account Terms addendum, which contains the following forum-selection clause:

> Each of the customer and Bank irrevocably and unconditionally submits to the exclusive jurisdiction and venue of any State or Federal court sitting in the City of New York, New York over any action, suit, proceeding, claim or controversy arising out of or relating to the Account Terms which includes this Addendum.

Decl. ¶ 12(b).

The accounts held by Plaintiffs **401 Mezz Venture, LLC** and **Trump Briarcliff Manor Development, LLC** were governed by two versions of JPMorgan's Terms and Conditions for Business Accounts and Services, both of which contain the following forum-selection clause:

> Any action against the Bank arising from or relating to your accounts or services provided to you by the Bank must be brought by you in state or (where there is subject matter jurisdiction) federal court located in the State of New York, County of New York, except that any action arising from or relating to an account opened and maintained by the Bank in another state or jurisdiction must be brought by you in a proper court located in that state or jurisdiction.  In addition, you consent to the jurisdiction and venue of the state and federal courts located within the State of New York, County of New York for the adjudication of all claims made by the Bank against you arising from or relating to your account or the services provided by us.

Decl. ¶ 17(g); *see id.* ¶ 18(g).[2]

The accounts held by Plaintiffs **THC Miami Restaurant Hospitality, LLC, Trump Chicago Retail, LLC**, **Trump Miami Resort Management, LLC,** and **Trump Payroll Corp.** were governed by three versions of JPMorgan's Global Account Terms, each of which contains the following forum-selection clause:

> In relation to each Account, the courts of the country or state in which the branch of the Bank at which the relevant Account is held shall have exclusive jurisdiction to settle any disputes that arise out of or are connected

---

[2] The clause applicable to Trump Briarcliff Manor Development, LLC substitutes "Chase" for "the Bank," but is otherwise identically worded to the clause quoted above.

> with the Account Terms, the relevant Account Documentation and/or the relevant Account.

Decl. ¶¶ 13(f), 15(f), 19(d).

All of the JPMorgan accounts opened by Plaintiffs Donald J. Trump, THC Miami Restaurant Hospitality, LLC, Trump Chicago Retail, LLC, Trump Miami Resort Management, LLC, and Trump Payroll Corp. were held and maintained in New York. The location of these accounts is reflected in their ACH routing numbers and bank pricing region codes stored in JPMorgan's systems, both of which reflect a state-specific identifier for New York state. Decl. ¶¶ 20, 27. When President Trump's personal account was transferred from JPMorgan's Commercial Bank to its Private Bank in 2017, his "Personal Account Application" designated an address in New York as his "primary residence address and contact information." *Id.* ¶ 29. The JPMorgan bankers responsible for all Plaintiffs' accounts were located in New York, and the primary Trump Organization contacts for the accounts were based in New York. *Id.* ¶¶ 28, 30.

Plaintiffs allege that the accounts at issue were closed on April 19, 2021. Complaint ¶ 45, ECF No. 1-2 (hereinafter "Compl."). Plaintiffs filed this action in Florida state court nearly five years later, in January 2026. Plaintiffs allege that JPMorgan breached the parties' agreements by closing Plaintiffs' accounts and also assert vague, sparse allegations that JPMorgan published them to a "blacklist" of malfeasant banking customers. Compl. ¶¶ 52, 57. Plaintiffs attached to their Complaint a copy of JPMorgan's Deposit Account Agreement for customers of JPMorgan's Retail Bank. Compl. Ex. A. Because none of the Plaintiffs were customers of JPMorgan's Retail Bank, the terms in that agreement did not apply to any of Plaintiffs' accounts. Decl. ¶ 34.

Defendants removed the action to this Court on February 19, 2026, and now move to transfer it to the Southern District of New York.

**ARGUMENT**

The Court should transfer this case to the Southern District of New York. All ten Plaintiffs agreed that lawsuits regarding their accounts must be brought in New York. And there are no "extraordinary circumstances" justifying Plaintiffs' disregard of those agreements. To the contrary, the private and public interest factors under 28 U.S.C. § 1404(a) uniformly favor transfer—even if there were no forum-selection clauses in Plaintiffs' account agreements. This Court should enforce the forum-selection clauses to which the parties agreed, under which Plaintiffs' suit must be transferred to New York.

**I.      This Case Should Be Transferred to S.D.N.Y. Because of the Forum-Selection Clauses to Which All Ten Plaintiffs Agreed**

"[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 63 (citation modified). "[T]he party seeking to avoid the forum selection clause bears the burden of showing exceptional circumstances, predicated on public interest considerations[,] to justify disturbing the forum selection clause." *McArthur v. Kerzner Int'l Bah., Ltd.*, 607 F. App'x 845, 847 (11th Cir. 2015) (citing *Atlantic Marine*, 571 U.S. at 67). "'Only under extraordinary circumstances unrelated to the convenience of the parties' should a court decline to enforce a forum-selection clause." *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016) (quoting *Atlantic Marine*, 571 U.S. at 62).

Each Plaintiff in this suit, when opening accounts with JPMorgan, executed a signature card acknowledging and agreeing to a set of account terms. Decl. ¶ 9. As many courts have recognized, that conduct manifested assent to JPMorgan's terms and created an enforceable contract. *See, e.g.*, *Larsen v. Citibank FSB*, 871 F.3d 1295, 1307 (11th Cir. 2017) (finding customer's execution of "Signature Card … establish[ed] that [the customer] consented" to terms

"incorporated by reference therein"); *Storey Mountain, LLC v. George*, 357 So. 3d 709, 715 (Fla. 4th DCA 2023) (finding "written integrated document incorporated by reference into a signature card" formed valid, binding contract between bank and customer); *Gent Row, LLC v. Truist Bank*, 2024 WL 808029, at *1 (S.D. Fla. Jan. 16, 2024) (finding valid, binding contract where "Signature Card incorporated by reference … additional terms and conditions governing the Account").

For all ten Plaintiffs, the applicable account terms include forum-selection clauses providing for disputes to be resolved in New York, as set out above. *See* Decl. ¶¶ 11–19, 26. Those clauses are valid and enforceable. As the Eleventh Circuit has held, "[f]orum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591 (1991)). Specifically, a forum-selection clause is valid unless: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.* Plaintiffs cannot carry their burden to make any of those showings here. Indeed, despite attaching the wrong terms to their complaint, Plaintiffs acknowledge that they entered into agreements with JPMorgan that "governed the parties' relationship." Compl. ¶ 110. Plaintiffs voluntarily agreed to JPMorgan's terms, and enforcing the parties' agreement would not impair Plaintiffs' ability to obtain judicial resolution of their claims.

Moreover, all of the applicable forum-selection clauses are mandatory. "[A] mandatory clause dictates an *exclusive* forum for litigation," while a "permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere." *Slater v. Energy Servs. Grp.*

*Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (emphasis added) (citation modified).  In addition to the word "exclusive," a forum-selection clause providing that "litigation must or shall be initiated in a specific forum … is mandatory."  *Flexiteek Americas, Inc. v. United Plastics Corp.*, 2012 WL 13005973, at *2 (S.D. Fla. Aug. 3, 2012) (citation modified); *see also Gold Crown Resort Mktg. Inc. v. Phillpotts*, 272 So. 3d 789, 792 (Fla. 5th DCA 2019) ("A forum selection clause is mandatory if it uses words such as 'must,' 'exclusive,' or 'shall.'").  Each forum-selection clause in the agreements governing Plaintiffs' accounts uses the mandatory words "must," "exclusive," or "shall" in describing the parties' obligation to sue in the specified forum.  *See* Decl. ¶¶ 12(b), 13(f), 15(f), 17(g), 18(g), 19(d), 26(i).  As a result, the parties' agreement "require[d]" suits to be filed in the specified forum.  *See Slater*, 634 F.3d at 1330.

The parties' mandatory forum-selection clauses also encompass the claims in this lawsuit. When interpreting forum-selection clauses, the Court must apply "the plain meaning of [the] contract's language."  *Id.*  As the Eleventh Circuit has explained, a clause applicable to disputes "relating to or arising from" an agreement covers "all claims arising 'directly or indirectly' from the relationship evidenced by the contract."  *Id.* at 1331 (citation omitted); *see also Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) ("The addition of the words 'relating to' broadens the scope" of the provision "to include those claims that are described as having a 'significant relationship' to the contract—regardless of whether the claim is founded in tort or contract law." (citation omitted)).  Similarly, where a forum-selection clause applies to disputes "arising under or in connection with" an agreement between the parties, that clause also encompasses "all causes of action arising directly or indirectly from the business relationship evidenced by the contract."  *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987).

Here, the forum-selection agreements for all ten Plaintiffs encompass disputes "relating to," "connected with," or "connected in any way to" their accounts and terms.  Decl. ¶¶ 12(b), 13(f), 15(f), 17(g), 18(g), 19(d), 26(i).  The claims asserted by all Plaintiffs therefore fall within the scope of their agreed-to forum-selection clauses.  The breach-of-implied-covenant claim, on its face, directly invokes the contractual relationship between Plaintiffs and JPMorgan, as does the parallel declaratory judgment claim.  And the trade libel claim relates to the "relationship evidenced by the contract," *Stewart Org.*, 810 F.2d at 1070, because the alleged "blacklist" concerns whether Plaintiffs' accounts complied with "applicable banking rules and regulations," Compl. ¶ 57.

Finally, the forum-selection clauses all provide for New York as the parties' chosen forum. For the Plaintiffs whose forum-selection clauses point to the jurisdiction where the relevant account is "opened," "held," or "located," that jurisdiction is New York, as those Plaintiffs' accounts were opened, held, or located in New York.  Decl. ¶¶ 20, 27, 29.  And the remaining forum-selection clauses point directly to New York.  Thus, all of the Plaintiffs' claims must be brought in the State of New York.

Because Plaintiffs' claims are subject to valid and mandatory forum-selection clauses pointing to New York, those claims must be transferred unless Plaintiffs, "as the part[ies] defying the forum-selection clause," carry "the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Atlantic Marine*, 571 U.S. at 63.  To carry that burden, Plaintiffs must show that "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."  *Id.* at 52.  Here, Plaintiffs cannot come close to meeting that burden. *See infra* Part II.A.  This Court should therefore enforce the parties' agreements and transfer the case to the Southern District of New York.

## II.     The Section 1404(a) Factors Independently Warrant Transfer

This action must be transferred to enforce the parties' agreement to litigate in New York, unless Plaintiffs can show that "public-interest factors overwhelmingly disfavor a transfer." *Atlantic Marine*, 571 U.S. at 67.  But those factors do not disfavor transfer at all.  Rather, they support transfer because the parties' relationship was centered in New York and, per the choice-of-law agreements in the parties' contracts, New York law applies to most of Plaintiffs' claims.

This result would hold even in the absence of any forum-selection clauses.  In that case, the Court would weigh the same public-interest factors, along with private-interest factors that are not relevant when a forum-selection clause exists, such as the convenience of parties and witnesses—which also strongly favor transferring this action to New York.  *See Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263–64 (S.D. Fla. 2013) (explaining that in the absence of a forum-selection clause, "courts focus on a number of potential factors including: (1) the convenience of the witnesses; (2) the location of documents and other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the ability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances").

### A.     The public-interest factors favor transfer to New York.

When evaluating the public interest on a motion to transfer under § 1404(a), the "factors to be considered include: 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; and the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law.'"  *Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132, 1142 (S.D. Fla. 2019) (quoting *Piper Aircraft*

*Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (citation modified)).  These factors uniformly favor

transfer to New York.  And, at a bare minimum, they do not "overwhelmingly disfavor a transfer,"

as Plaintiffs must show to overcome the parties' forum-selection agreements.  *Atlantic Marine*,

571 U.S. at 67.

To begin with, under the applicable account terms, New York law governs most of the

Plaintiffs' claims, while Florida law governs *none* of them.[3]  The interests of justice thus favor

resolving this case in New York, before a court familiar with New York law.  *See, e.g.*, *Go 770*

*Mgmt. LLC v. Mt. Hawley Ins. Co.*, 2024 WL 4581259, at *6 (S.D. Fla. Oct. 25, 2024) ("Since

New York law governs this dispute, it is more appropriate for a federal court in New York to hear

the case as it will be more familiar with the applicable New York law than a federal court sitting

in Florida."); *Storm Damage Sols., LLC v. RLI Ins. Co.*, 2023 WL 8004314, at *8 (S.D. Fla. Nov.

17, 2023) ("[O]ne of the three public interest factors—familiarity of the forum with the law that

will govern the case—weighs in favor of transfer considering … that New York law will govern

any disputes arising under the contract."); *Food Marketing Consultants, Inc. v. Sesame Workshop*,

2010 WL 1571206, at *10 (S.D. Fla. Mar. 26, 2010) (explaining that "the interests of justice also

favor New York as the most appropriate forum" because "New York law governs the parties'

contractual relationship").

Second, none of the conduct at issue in this suit occurred in Florida.  *See Gordon*, 418 F.

Supp. 3d at 1142.  The core allegations at issue concern JPMorgan's alleged closure of New York

accounts managed by Trump Organization employees located in New York.   None of those

accounts were held in Florida.  The Complaint's other claim—that JPMorgan added their names

---

[3] Eight of the governing agreements prescribe that New York law will govern disputes between the parties; the other two select Ohio law.  Decl. ¶¶ 12(a); 14(a); 16(a); 17(f); 18(f); 19(c); 26(b).

to some sort of "blacklist"—does not allege that the supposed "blacklisting" of Plaintiffs took place in Florida.  And while those allegations are so sparse as to leave JPMorgan without any idea what Plaintiffs are talking about, JPMorgan is not aware of any such list and certainly would not have engaged in this alleged conduct in Florida, where—again—none of the accounts or primary contacts were located.  Because "the actions giving rise to this lawsuit occurred in New York" and the "only connection to the State of Florida alleged" is that some Plaintiffs are "citizen[s] of Florida," Plaintiffs' choice of forum is entitled to minimal weight.  *Riley v. Donatelli*, 2017 WL 3316479, at *2 (M.D. Fla. Aug. 3, 2017); *see Osgood*, 981 F. Supp. 2d at 1267 ("[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.").

Any remaining public-interest considerations similarly counsel in favor of transfer.  "Because New York … provide[s] for litigation of a breach of contract claim and potentially offers redress for such a claim, the Southern District of New York is an adequate alternative forum."  *Go 770 Mgmt.*, 2024 WL 4581259, at *6.  And New York courts would have personal jurisdiction over Defendants and jurisdiction to resolve this action.  In sum, the public-interest considerations under § 1404(a) support transferring this case to the Southern District of New York.  At a minimum, they do not "overwhelmingly disfavor" transfer, which is all that is required to enforce the forum-selection clauses to which Plaintiffs agreed.  *Atlantic Marine*, 571 U.S. at 67.

### B.     The private-interest factors favor transfer to New York.

By agreeing to forum-selection clauses, Plaintiffs "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Id.* at 64.  The private-interest factors, however, would favor New York even if the forum-selection agreements did not apply here.  When evaluating private interests, courts consider the "relative ease of access to sources of proof; availability of compulsory process

for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; … and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 62 n.6 (quoting *Piper Aircraft Co.*, 454 U.S. at 241 n.6).

Here, all or nearly all of the witnesses and evidence relevant to Plaintiffs' claims are in New York, where the accounts at issue were held and where both JPMorgan and the Trump Organization are present and conduct substantial business. The bankers responsible for Plaintiffs' accounts and for JPMorgan's relationships with Plaintiffs are located in New York, and the Trump Organization contact responsible for the accounts was based in New York. Decl. ¶¶ 22–23, 28, 30. This factor alone weighs heavily in favor of transfer. As courts in this District have recognized, "[t]he convenience of witnesses" is a "primary, if not the most important, factor in passing on a motion to transfer under § 1404(a)." *Moghaddam v. Dunkin' Donuts, Inc.*, 2002 WL 1940724, at *3 (S.D. Fla. Aug. 13, 2002).

Plaintiffs do not have a significant countervailing interest in litigating this case in Florida. First of all, the corporate Plaintiffs are controlled by and affiliated with the Trump Organization, which has long been headquartered in and has had its principal place of business in New York. All of the corporate Plaintiffs are organized or incorporated in either Delaware or New York. Compl. ¶¶ 2–10. The majority of the corporate Plaintiffs self-evidently concern business ventures located in New York or States other than Florida. *See, e.g.*, Compl. ¶¶ 2, 6 (listing Trump Payroll Corp. and Trump Briarcliff Manor Development, LLC as incorporated or organized under New York law with their principal places of business in New York); Compl. ¶ 4 (naming 401 North Wabash Venture, LLC, which refers to the Trump International Hotel & Tower in Chicago, located at 401 N Wabash Ave). Because most of the Plaintiffs have chosen a forum that is not their home forum, their choice is afforded only "minimal" deference in the transfer analysis. *See, e.g.*,

*Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) ("[W]here a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper.").

Nor does President Trump have a particularized interest in litigating his personal-account claims in Florida. His personal account was held in New York, and the documentation and business records for that account are located in New York. Decl. ¶¶ 27–28. When his personal account was transferred to JPMorgan's Private Bank in 2017, President Trump designated an address in New York as his primary residence and contact. *Id.* ¶ 29. He also continues to maintain a residence in New York; his current office in Washington, D.C. is closer to the agreed-upon forum of New York than it is to Florida; and he retains substantial ownership interests in the Trump Organization, which is based in New York. Moreover, "because [President Trump] is currently engaged in litigation in [New York], transfer would not be so inconvenient … as to be unjust." *Daoud Inv. Holdings, Inc. v. Cole*, 2015 WL 12743767, at *2 (S.D. Fla. Oct. 30, 2015) (transferring suit to state where no party resided but where one plaintiff was engaged in litigation).[4]

In sum, given that both individual litigants named in this suit have residences in New York, and the major corporate entities involved are based there, New York is plainly the most sensible and convenient forum for this litigation. *Cf. Phillips v. Churchill Cap. Corp. IV*, 2021 WL 11628687, at *2 (N.D. Ala. Dec. 1, 2021) ("Under the circumstances, transfer to a forum where both corporate defendants currently are headquartered and where two individual parties reside is far more convenient than litigating in this forum."). Every relevant factor under § 1404(a) points

---

[4] *See, e.g.*, *New York v. Trump*, No. 2024-05379 (N.Y. App. Div. 1st Dep't); *New York v. Trump*, No. 2024-01134 (N.Y. App. Div. 1st Dep't).

decisively toward transfer, including choice of law, location of the alleged conduct, convenience of witnesses, and convenience of the parties.  As a result, this case would belong in New York even under a discretionary § 1404(a) analysis.  Thus, under the controlling forum-selection clauses that Plaintiffs chose to ignore or based on application of the discretionary § 1404(a) factors to this New York-focused litigation, this action should be transferred to New York.

## CONCLUSION

The Court should transfer this case to the Southern District of New York.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for the movants has conferred with counsel for Plaintiffs and that Plaintiffs oppose the relief sought herein.

Date: February 20, 2026

Derek E. León
Fla. Bar No. 625507
LEÓN COSGROVE JIMÉNEZ, LLP
255 Alhambra Cir, 8th Floor
Miami, FL 33134
Telephone: (305) 740-1975
Facsimile: (305) 351-4059
Email: dleon@leoncosgrove.com

Respectfully submitted,

*/s/ Eliot Pedrosa*
Eliot Pedrosa
Fla. Bar No. 182443
Kelly A. Carrero
Fla. Bar No. 1072663
JONES DAY
600 Brickell Ave, Suite 3300
Miami, FL 33131
Telephone: (305) 714-9700
Facsimile: (305) 713-9799
Email: epedrosa@jonesday.com
Email: kacarrero@jonesday.com

Noel J. Francisco (*pro hac vice* pending)
Charlotte H. Taylor (*pro hac vice* pending)
JONES DAY
51 Louisiana Ave, NW
Washington, DC 20001
Telephone: (202) 879-3939
Email: njfrancisco@jonesday.com
Email: ctaylor@jonesday.com

Jayant W. Tambe (*pro hac vice* pending)
Amanda L. Dollinger (*pro hac vice* pending)
JONES DAY
250 Vesey St
New York, NY 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: jtambe@jonesday.com
Email: adollinger@jonesday.com

*Attorneys for Defendants*
*JPMorgan Chase Bank, N.A. and James Dimon*

17

**<u>CERTIFICATE OF SERVICE</u>**

On February 20, 2026, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

/s/ *Eliot Pedrosa*
Eliot Pedrosa

*Attorney for Defendants*
*JPMorgan Chase Bank, N.A. and James Dimon*