# Exhibit A to the Defendants' Motion to Transfer Under 28 U.S.C. § 1404(a)

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Civil Action No. 1:26-cv-21106-KMW

PRESIDENT DONALD J. TRUMP, TRUMP PAYROLL
CORP., 401 MEZZ VENTURE LLC, 401 NORTH
WABASH VENTURE, LLC, THC MIAMI
RESTAURANT HOSPITALITY, LLC, TRUMP
BRIARCLIFF MANOR DEVELOPMENT, LLC, TRUMP
CHICAGO RETAIL, LLC, TRUMP MIAMI RESORT
MANAGEMENT, LLC, TRUMP NATIONAL GOLF
CLUB COLTS NECK, LLC, and TRUMP NATIONAL
GOLF CLUB, LLC,

        Plaintiffs,

    v.

JPMORGAN CHASE BANK, N.A., and JAMES DIMON,

        Defendants.

## <u>DECLARATION OF DAN WILKENING</u>

I, Dan Wilkening, declare and state as follows:

1.      I am currently the Chief Administrative Officer for Global Banking and head of Global Services at JPMorgan Chase Bank, N.A. ("JPMorgan"). From 2010 to 2024, I was the Chief Administrative Officer and Head of Global Services for Commercial Banking. From 2006 to 2010, I led the Commercial Bank Service Organization. I commenced employment with American National Bank in 1988, which is a predecessor entity to JPMorgan, and have significant experience in operations, loans, treasury services, customer service, and client onboarding, as well as risk management. The information set forth in this Declaration is based on my personal knowledge and knowledge derived from my review of JPMorgan's records and systems that house information pertaining to accounts held with JPMorgan's Commercial Bank ("CB") and Private Bank ("PB").

1

2.     My duties at JPMorgan include overseeing the CB Global Services group, which comprises client and banker support teams, including for client onboarding and service, client fraud prevention, business resiliency and integration, and client and deal support, as well as involvement in oversight over wholesale lending services, wholesale "know your customer" operations, and Global Banking controls.  I have overseen teams responsible for client onboarding and service within Global Banking, and formerly the Commercial Bank, since 2006.

3.     I make this Declaration in support of JPMorgan and James Dimon's Motion to Transfer Under 28 U.S.C. § 1404(a).

4.     I have reviewed the Complaint filed in the above-captioned action.  The Complaint broadly alleges that Plaintiffs' accounts with JPMorgan were unlawfully closed due to political discrimination and that Plaintiffs were unlawfully placed on a "blacklist."

**A.     Overview of Plaintiffs' Accounts At JPMorgan**

5.     In February 2021, JPMorgan informed Plaintiffs that certain accounts maintained with JPMorgan's CB and PB would be closed.  Attached hereto as **Attachment 1** are true and correct copies of the letters dated February 19, 2021 sent by JPMorgan to Plaintiffs identifying that certain accounts would be closed on April 19, 2021 (the "Account Closure Letters").  Following that correspondence and over the months that followed, JPMorgan worked with Plaintiffs to move funds kept in the accounts to alternative financial institutions and to close the following accounts:

| Plaintiff | Last 4 Digits of Account Number |
|---|---|
| 401 MEZZ VENTURE LLC | ███ |
| 401 NORTH WABASH VENTURE LLC | ███ |
| 401 NORTH WABASH VENTURE LLC | ███ |
| 401 NORTH WABASH VENTURE LLC | ███ |
| 401 NORTH WABASH VENTURE LLC | ███ |
| 401 NORTH WABASH VENTURE LLC | ███ |

| | | |
|---|---|---|
| 401 NORTH WABASH VENTURE LLC | | ■ |
| 401 NORTH WABASH VENTURE LLC | | ■ |
| THC MIAMI RESTAURANT HOSPITALITY LLC | | ■ |
| THC MIAMI RESTAURANT HOSPITALITY LLC | | ■ |
| TRUMP BRIARCLIFF MANOR DEVELOPMENT LLC | | ■ |
| TRUMP CHICAGO RETAIL LLC | | ■ |
| TRUMP CHICAGO RETAIL LLC | | ■ |
| TRUMP CHICAGO RETAIL LLC | | ■ |
| TRUMP MIAMI RESORT MANAGEMENT LLC | | ■ |
| TRUMP MIAMI RESORT MANAGEMENT LLC | | ■ |
| TRUMP MIAMI RESORT MANAGEMENT LLC | | ■ |
| TRUMP MIAMI RESORT MANAGEMENT LLC | | ■ |
| TRUMP MIAMI RESORT MANAGEMENT LLC | | ■ |
| TRUMP MIAMI RESORT MANAGEMENT LLC | | ■ |
| TRUMP MIAMI RESORT MANAGEMENT LLC | | ■ |
| TRUMP MIAMI RESORT MANAGEMENT LLC | | ■ |
| TRUMP NATIONAL GOLF CLUB COLTS NECK LLC | | ■ |
| TRUMP NATIONAL GOLF CLUB COLTS NECK LLC | | ■ |
| TRUMP NATIONAL GOLF CLUB COLTS NECK LLC | | ■ |
| TRUMP NATIONAL GOLF CLUB LLC | | ■ |
| TRUMP NATIONAL GOLF CLUB LLC | | ■ |
| TRUMP NATIONAL GOLF CLUB LLC | | ■ |
| TRUMP PAYROLL CORP. | | ■ |
| DONALD J. TRUMP | | ■ |

6.      The Account Closure Letters referenced a number of other accounts that would be closed that were not owned or controlled by the Plaintiffs and are therefore not the subject of this litigation.  The Account Closure Letters also referenced certain accounts that the bank indicated would be closed, but ultimately were never closed, which are likewise not the subject of this litigation.

7.      As of February 2021, Plaintiffs Trump Payroll Corp.; 401 Mezz Venture, LLC; 401 North Wabash Venture, LLC; THC Miami Restaurant Hospitality, LLC; Trump Briarcliff Manor Development, LLC; Trump Chicago Retail, LLC; Trump Miami Resort Management, LLC; Trump National Golf Club Colts Neck, LLC; and Trump National Golf Club, LLC (collectively, the "corporate Plaintiffs") were clients of and held accounts with JPMorgan's CB.

3

8.     As of February 2021, Plaintiff Donald J. Trump was a client of and held accounts with JPMorgan's PB.

9.     At the time of account opening, and at other times subsequent to account opening, Plaintiffs (or their authorized signers) signed signature cards acknowledging the terms governing their accounts and relationships with JPMorgan and agreeing to be bound by those terms as amended from time to time.

**B.     The Corporate Plaintiffs' Relationships With JPMorgan**

10.     Attached hereto as **Attachments 2–10** are true and correct copies of the Account Terms and Addenda that governed the relationships between JPMorgan and the corporate Plaintiffs at the time their accounts were closed in 2021:

  a. Attachment 2:  Global Account Terms V1.5_09_16_17 (for Plaintiffs 401 North Wabash Venture, LLC, Trump National Golf Club Colts Neck, LLC, Trump National Golf Club, LLC).

  b. Attachment 3:  Addendum to Account Terms, United States of America V1.8_06_29_18 (for Plaintiffs 401 North Wabash Venture, LLC, Trump National Golf Club Colts Neck, LLC, Trump National Golf Club, LLC).

  c. Attachment 4:  Global Account Terms V1.3_05_24_13 (for Plaintiffs THC Miami Restaurant Hospitality, LLC and Trump Chicago Retail, LLC).

  d. Attachment 5:  Addendum to Account Terms | United States of America V1.3_06_27_13 (for Plaintiffs THC Miami Restaurant Hospitality, LLC and Trump Chicago Retail, LLC).

  e. Attachment 6:  Global Account Terms V1.2_04_16_12 (for Plaintiff Trump Miami Resort Management, LLC)

  f. Attachment 7: Addendum to Account Terms | United States V1.2_04_16_12 (for Plaintiff Trump Miami Resort Management, LLC)

  g. Attachment 8:  Terms and Conditions for Business Accounts and Services (for Plaintiff 401 Mezz Venture, LLC)

  h. Attachment 9:  Terms and Conditions for Business Accounts and Services (effective September 3, 1996) (for Plaintiff Trump Briarcliff Manor Development, LLC)

i.      Attachment 10:  Global Account Terms V.1.1_0306_(0106) (for Plaintiff Trump Payroll Corp.)

11.     The Account Terms governing JPMorgan's relationship with Plaintiffs 401 North Wabash Venture, LLC; Trump National Golf Club Colts Neck, LLC; and Trump National Golf Club, LLC at the time their accounts were closed in 2021, attached as **Attachment 2**, contain the following pertinent terms:

a.      "The Bank, its agents, employees, officers and directors shall not, in any event, be liable for indirect, special, consequential or punitive loss or damage of any kind (including lost profits, loss of business or loss of goodwill)[.]"  (Global Account Terms ("GAT") § 11.1.)

b.      "Unless otherwise agreed, either the Bank or the Customer may close an Account or terminate a Service by giving the other party not less than thirty (30) calendar days' prior written notice of intent to close or terminate. Notwithstanding the foregoing, either party may terminate an Account or a Service upon written notice to the other party in the event of:  (i) a breach of the Account Terms, Account Documentation or Service Terms by the other party; (ii) the other party's inability to meet its debts as they become due, receivership, administration, liquidation, or voluntary or involuntary bankruptcy; or the institution of any proceeding therefor, any assignment for the benefit of the other party's creditors, or anything analogous to the foregoing in any applicable jurisdiction, or a determination in good faith by the terminating party that the financial or business condition of the other party has become impaired; (iii) a determination by the terminating party, in its sole opinion, that termination is necessary or required by applicable legal, tax or regulatory requirements, or as a result of a court or regulatory agency order or proceeding; or (iv) a good faith belief by the terminating party that the other party is engaged in activities that are inconsistent with the terminating party's policies."  (GAT § 14)

c.      "The customer and the Bank hereby irrevocably waive all right to, and will not seek, trial by jury in any action, proceeding or counterclaim, of whatever type or nature, arising out of these Account Terms, the Account Documentation or the relationship established hereby."  (GAT § 16.2)

d.      "Any claim in connection with any Account or Service, unless a shorter period of time is expressly provided, must be brought against the Bank within two (2) years of the occurrence of the event giving rise to the claim, except as prohibited by applicable law."  (GAT § 16.2)

e.      "The Account Terms may be amended or supplemented on notice to the Customer, including by terms contained in any Service Terms or Account

5

Documentation.  The Service Terms may be amended or supplemented on notice to the customer."  (GAT § 17.6.)

    f.    "By signing an Account signature card, Account application or similar document or by using or continuing to use any of the Accounts or Services, the Customer agrees to the Account Terms, the Account Documentation, Service Terms and any amendments or supplements, as applicable."  (GAT § 17.6.)

12.    The U.S. Addendum that amends or supplements the Account Terms governing JPMorgan's relationship with Plaintiffs 401 North Wabash Venture, LLC; Trump National Golf Club Colts Neck, LLC; and Trump National Golf Club, LLC at the time their accounts were closed in 2021, attached as **Attachment 3**, contains the following pertinent terms:

    a.    "Except as otherwise agreed in writing by the Bank and the Customer, the rights and obligations of the Customer and the Bank in respect of each Account maintained in the U.S. shall be governed by and construed in accordance with the laws of the State of New York (without regard to its conflict of laws rules)."  (Addendum § 16.1.)

    b.    "Each of the Customer and the Bank irrevocably and unconditionally submits to the exclusive jurisdiction and venue of any State or Federal court sitting in the City of New York, New York over any action, suit, proceeding, claim or controversy arising out of or relating to the Account Terms which includes this Addendum."  (Addendum § 16.1.)

13.    The Account Terms governing JPMorgan's relationship with Plaintiffs THC Miami Restaurant Hospitality, LLC and Trump Chicago Retail, LLC at the time their accounts were closed in 2021, attached as **Attachment 4**, contain the following pertinent terms:

    a.    "The Account Terms may be supplemented or amended by existing or future agreements, terms, conditions and notices, including, but not limited to any terms contained in an account application, country addendum, signature card or similar document for an Account or arrangements regarding specific types of Accounts or services ("Services") offered by the Bank, as described herein or which by their terms ("Service Terms") are subject to the Account Terms.  By signing the signature card, account application or similar document or by using or continuing to use any of the Accounts or Services, the Customer agrees to the Account Terms and such supplements, amendments, agreements, terms, conditions, notices or Service Terms, as applicable."  (Introduction.)

b.    "The Bank, its agents, employees, officers and directors shall not, in any event, be liable for indirect, special, consequential or punitive loss or damage of any kind (including, but not limited to lost profits), whether or not foreseeable, even if the Bank, its agents, employees, officers or directors have been advised of the likelihood of such loss or damage, and regardless of whether the claim for loss or damage is made in negligence, gross negligence, for breach of contract or otherwise[.]"  (GAT § 11.1.)

c.    "Unless otherwise agreed, either the Bank or the Customer may close an Account or terminate a Service by giving the other party not less than thirty (30) calendar days' prior written notice of intent to close or terminate. Notwithstanding the foregoing, either party may terminate an Account or a Service upon written notice to the other party in the event of:  (i) a breach of the Account Terms or Service Terms by the other party; (ii) the other party's inability to meet its debts as they become due, receivership, administration, liquidation, or voluntary or involuntary bankruptcy; or the institution of any proceeding therefor, any assignment for the benefit of the other party's creditors, or anything analogous to the foregoing in any applicable jurisdiction, or a determination in good faith by the terminating party that the financial or business condition of the other party has become impaired; (iii) a determination by the terminating party, in its sole opinion, that termination is necessary or required by law or regulation, or as a result of a court or regulatory agency order or proceeding; or (iv) a good faith belief by the terminating party that the other party is engaged in activities that are inconsistent with the terminating party's policies."  (GAT § 14.)

d.    "The Customer and the Bank hereby irrevocably waive all right to, and will not seek, trial by jury in any action, proceeding or counterclaim, of whatever type or nature, arising out of these Account Terms or the relationship established hereby."  (GAT § 16.2.)

e.    "Any claim in connection with Accounts which are the subject of these Account Terms or any Services, unless a shorter period of time is expressly provided, must be brought against the Bank within two (2) years of the occurrence of the cause of action, except as prohibited by applicable law." (GAT § 16.2.)

f.    "In relation to each Account, the courts of the country or state in which the branch of the Bank at which the relevant Account is held shall have exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the relevant Account Documentation and/or the relevant Account."  (GAT § 16.3)

g.    "The Bank may change or update these Account Terms or impose other restrictions on the Accounts or Services, as the Bank deems necessary in the course of its business, at any time, by the sending of notice by means of ordinary mail or through electronic channels."  (GAT § 17.6.)

14.     The U.S. Addendum that amends or supplements the Account Terms governing JPMorgan's relationship with Plaintiffs THC Miami Restaurant Hospitality, LLC and Trump Chicago Retail, LLC at the time their accounts were closed in 2021, attached as **Attachment 5**, contains the following pertinent term:

      a.     "Subject to the UCC as modified by the Rules & Regulations, which shall control, and unless otherwise specifically provided in any Service Terms, the Account Terms, the Account Documentation, Service Terms and the rights and obligations of the Customer and the Bank in respect of each Customer Account maintained in the U.S. shall be governed by and construed in accordance with the laws of the State of New York, (without regard to its conflict of laws rules), incorporating general commercial bank practices applicable lo the type of Account and Services provided to the Customer."  (Addendum § 16.1.)

15.     The Account Terms governing JPMorgan's relationship with Plaintiff Trump Miami Resort Management, LLC at the time its accounts were closed in 2021, attached as **Attachment 6**, contain the following pertinent terms:

      a.     "The Account Terms may be supplemented or amended by existing or future agreements, terms and conditions, and notices, including, but not limited to any terms contained in an account application, country addendum, signature card or similar document for an Account or arrangements regarding specific types of Accounts or services ("Services") offered by the Bank, as described herein or which by their terms ("Service Terms") are subject to the Account Terms.  By signing the signature card, account application or similar document or by using or continuing to use any of the Accounts or Services, the Customer agrees to the Account Terms and such supplements, amendments, agreements, terms and conditions, notices or Service Terms, as applicable."  (Introduction.)

      b.     "The Bank, its agents, employees, officers and directors shall not, in any event, be liable for indirect, special, consequential or punitive loss or damage of any kind (including, but not limited to lost profits), whether or not foreseeable, even if the Bank, its agents, employees, officers or directors have been advised of the likelihood of such loss or damage, and regardless of whether the claim for loss or damage is made in negligence, gross negligence, for breach of contract otherwise[.]"  (GAT § 11.1.)

      c.     "Unless otherwise agreed, either the Bank or the Customer may close an Account or terminate a Service by giving the other party not less than thirty (30) calendar days' prior written notice of intent to close or terminate.

Notwithstanding the foregoing, either party may terminate an Account or a Service upon written notice lo the other party in the event of: (i) a breach of the Account Terms or Service Terms by the other party; (ii) the other party's inability to meet its debts as they become due, receivership, administration, liquidation, or voluntary or involuntary bankruptcy; or the institution of any proceeding therefor, any assignment for the benefit of the other party's creditors, or anything analogous to the foregoing in any applicable jurisdiction, or a determination in good faith by the terminating party that the financial or business condition of the other party has become impaired; (iii) a determination by the terminating party, in its sole opinion, that termination is necessary or required by law or regulation, or as a result of a court or regulatory agency order or proceeding; or (iv) a good faith belief by the terminating party that the other party is engaged in activities that are inconsistent with the terminating party's policies." (GAT § 14.)

d.   "The Customer and the Bank hereby irrevocably waive all right to, and will not seek, trial by jury in any action, proceeding or counterclaim, of whatever type or nature, arising out of these Account Terms or the relationship established hereby." (GAT § 16.2.)

e.   "Any claim in connection with Accounts which are the subject of these Account Terms, unless a shorter period of time is expressly provided, must be brought against the Bank within two (2) years of the occurrence of the cause of action, except as prohibited by applicable law." (GAT § 16.2.)

f.   "In relation to each Account, the courts of the country or state in which the branch of the Bank at which the relevant Account is held shall have exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the relevant Account Documentation and/or the relevant Account." (GAT § 16.3.)

g.   "The Bank may change or update these Account Terms or impose other restrictions on the Accounts or Services, as the Bank deems necessary in the course of its business, at any time, by the sending of notice by means of ordinary mail or through electronic channels." (GAT § 17.6.)

16.   The U.S. Addendum that amends or supplements the Account Terms governing JPMorgan's relationship with Plaintiff Trump Miami Resort Management, LLC at the time its accounts were closed in 2021, attached as **Attachment 7**, contains the following pertinent term:

a.   "With respect to Accounts maintained in the United States, the Account Terms, the Account Documentation and the rights and obligations of the Customer and the Bank in respect of each Account also shall be governed by and construed in accordance with the laws of the State of Ohio, United States (without regard to its conflict of laws rules). Unless otherwise

9

specified in the Service Terms, the rights and obligations of the Customer and the Bank under any Service Terms shall be governed by and construed in accordance with the laws of the State of Ohio, United States (without regard to its conflict of laws rules)." (Addendum § 16.1.)

17.     The Account Terms governing JPMorgan's relationship with Plaintiff 401 Mezz Venture, LLC at the time its account was closed in 2021, attached as **Attachment 8**, contain the following pertinent terms:

a.      "By signing an account application or signature cards, or by using or continuing to use these accounts and services, you agree to any amendments to these Terms and Conditions, whether or not you actually receive a copy of the superseding Terms and Conditions or the amendments." (Introduction.)

b.      "You agree that the Bank shall not be liable for indirect, special, or consequential damages regardless of the form of action and even if the Bank has been advised of the possibility of such damages." (p. 20, ¶ 11.)

c.      "You or the Bank may close any of your accounts at any time; provided, however, certain conditions for time deposits and savings accounts may apply. . . . The Bank may terminate any service at any time without notice." (p. 21, ¶ 13.)

d.      "Any claim which you may have against the Bank arising from accounts or services which are the subject of these Terms and Conditions, unless a shorter period of time is expressly provided, must be brought against the Bank within two (2) years of the incurrence of the cause of action." (p. 22, ¶ 15)

e.      "The Bank may change any portion of these Terms and Conditions or impose other restrictions on your accounts or services, as the Bank deems necessary in the course of its business, at any time by the posting of notice at the branch at which your accounts are maintained or by the sending of notice by means of ordinary mail." (p. 22, ¶ 17.)

f.      "Any disputes arising from or related to your accounts with us or services provided to you by us shall be governed by the laws of the State of New York (without reference to the conflict of law rules thereof), except that any disputes arising from or related to an account opened and maintained in a state or jurisdiction other than New York shall be governed by the laws of that state or jurisdiction (without reference to the conflict of laws rules thereof)." (p. 23, ¶ 20.)

g.  "Any action against the Bank arising from or relating to your accounts or services provided to you by the Bank must be brought by you in state or (where there is subject matter jurisdiction) federal court located in the State of New York, County of New York, except that any action arising from or relating to an account opened and maintained by the Bank in another state or jurisdiction must be brought by you in a proper court located in that state or jurisdiction.  In addition, you consent to the jurisdiction and venue of the state and federal courts located within the State of New York, County of New York for the adjudication of all claims made by the Bank against you arising from or relating to your account or the services provided by us." (p. 24, ¶ 22.)

18.   The Account Terms governing JPMorgan's relationship with Plaintiff Trump Briarcliff Manor Development, LLC at the time its account was closed in 2021, attached as **Attachment 9**, contain the following pertinent terms:

a.  "You agree that:  i) Chase shall not be liable for any damages unless such damages are the direct result of Chase's gross negligence or willful misconduct; and ii) Chase shall not be liable for indirect, special, or consequential damages regardless of the form of action and even if Chase has been advised of the possibility of such damages."  (p. 11, ¶ 11.)

b.  "You or Chase may close any of your accounts at any time; provided, however, certain conditions for time deposits and savings accounts may apply.  Upon one of your accounts being closed, you shall receive any finally collected and available balance in the account at the time the account is closed.  Chase may return unpaid any items presented on your account after it is closed."  (p. 12 ¶ 13.)

c.  "Any claim which you may have against Chase arising from accounts or services which are the subject of these Terms and Conditions, unless a shorter period of time is expressly provided, must be brought against Chase within two (2) years of the incurrence of the cause of action."  (p. 13, ¶ 15.)

d.  "Both you and Chase hereby irrevocably waive all right to trial by jury in any action, proceeding or counterclaim, of whatever type or nature, including actions sounding in contract or tort or based upon a statutory violation, arising out of these terms and conditions, or the relationship established hereby."  (p. 13, ¶ 14.)

e.  "Chase may change these Terms and Conditions or impose other restrictions on  your accounts or services, as Chase deems necessary in the course of its business, at any time by the posting of notice at the branch at which your accounts are maintained or by the sending of notice by means of ordinary mail."  (p. 13, ¶ 17.)

f.   "Any disputes arising from or related to your accounts with Chase or services provided to you by Chase shall be governed by the laws of the state of New York (without reference to the conflict of law rules thereof), except that any disputes arising from or related to an account opened and maintained in a state or jurisdiction other than New York shall be governed by the laws of that state or jurisdiction (without reference to the conflict of laws rules thereof)."  (p. 14, ¶ 20.)

g.   "Any action against Chase arising from or relating to your accounts or services provided to you by Chase must be brought by you in state or (where there is subject matter jurisdiction) federal court located in the State of New York, County of New York, except that any action arising from or relating to an account opened and maintained by Chase in another state or jurisdiction must be brought by you in a proper court located in that state or jurisdiction.  In addition, you consent to the jurisdiction and venue of the state and federal courts located within the State of New York, County of New York for the adjudication of all claims made by Chase against you arising from or relating to your account or the services provided by Chase."  (p. 15, ¶ 21.)

19.   The Account Terms governing JPMorgan's relationship with Plaintiff Trump Payroll Corp. at the time its account was closed in 2021, attached as **Attachment 10**, contain the following pertinent terms:

a.   "By signing the signature card, account application or similar document or by using or continuing to use any of the Accounts or Services, the Customer agrees to the Account Terms and such supplements, amendments. agreements, terms and conditions, notices or Service Terms, as applicable." (Introduction.)

b.   "The Bank, its agents, employees, officers and directors shall not, in any event, be liable for indirect, special, consequential or punitive loss or damage of any kind (including, but not limited to lost profits), whether or not foreseeable, even if the Bank, its agents, employees, officers or directors have been advised of the likelihood of such loss or damage, and regardless of whether the claim for loss or damage is made in negligence, gross negligence, for breach of contract or otherwise; provided, however, that the foregoing shall not apply to the extent such loss or damage is caused by fraud on the part of the Bank, its agents, employees. officers or directors." (GAT § 11.1.)

c.   "[T]he Account Terms, the Account Documentation and the rights and obligations of the Customer and the Bank in respect of each Account also shall be governed by and construed in accordance with the laws of the State of Ohio, United States (without regard to its conflicts of law rules).  Unless

otherwise specified in the Service Terms, the rights and obligations of the Customer and the Bank under any Service Terms shall be governed by and construed in accordance with the laws of the State of Ohio, United States (without regard to its conflicts of law rules)."  (GAT § 16.1.)

d.  "In relation to each Account, the courts of the country or state in which the branch of the Bank at which the relevant Account is held shall have exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the relevant Account Documentation and/or the relevant Account."  (GAT § 16.3.)

e.  "Unless otherwise agreed, either the Bank or the Customer may close an Account or terminate a Service by giving the other party not less than thirty (30) days' prior written notice of intent to close or terminate. Notwithstanding the foregoing, either party may terminate an Account or a Service upon written notice to the other party in the event of:  (i) a material breach of the Account Terms or Service Terms by the other party; (ii) the other party's inability to meet its debts as they become due, receivership, administration, liquidation, or voluntary or involuntary bankruptcy; or the institution of any proceeding therefor, any assignment for the benefit of the other party's creditors, or anything analogous to the foregoing in any applicable jurisdiction, or a determination in good faith by the terminating party that the financial condition of the other party has become materially impaired; or (iii) a determination by the terminating party, in its sole opinion, that termination is necessary or required by law or regulation, or as a result of a court or regulatory agency order or proceeding."  (GAT § 14).

f.  "The Customer and the Bank hereby irrevocably waive all right to, and will not seek, trial by jury in any action, proceeding or counterclaim, of whatever type or nature, arising out of these Account Terms or the relationship established hereby."  (GAT § 16.2)

g.  "Any claim in connection with Accounts which are the subject of these Account Terms, unless a shorter period of time is expressly provided, must be brought against the Bank within two (2) years of the incurrence of the cause of action, except as prohibited by applicable law."  (GAT § 16.2)

h.  "The Bank, with respect to Account operations and processes, may change these Account Terms or impose other restrictions on the Customer's Accounts or the Services, as the Bank deems necessary in the course of its business, at any time, by the sending of notice by means of ordinary mail or through electronic channels."  (GAT § 17.6.)

20.   All JPMorgan accounts held by Plaintiffs THC Miami Restaurant Hospitality, LLC;

Trump Chicago Retail, LLC; Trump Miami Resort Management, LLC; 401 Mezz Venture, LLC;

Trump Briarcliff Manor Development, LLC; Trump National Golf Club Colts Neck, LLC; Trump National Golf Club, LLC; and Trump Payroll Corp. that were closed in 2021 were held and maintained at JPMorgan branches located in the borough of Manhattan, New York County, State of New York, in the United States, at the time they were closed in 2021 and at all times before they were closed.  The location of these accounts is reflected in their ACH routing numbers and bank pricing region codes stored in JPMorgan's systems, both of which reflect a state-specific identifier for New York state.

21.    For Plaintiff 401 North Wabash Venture, LLC, six of its seven accounts that were closed in 2021 were held and maintained at JPMorgan branches located in the borough of Manhattan, New York County, State of New York, in the United States, at the time they were closed in 2021 and at all times before they were closed.  The location of these accounts is reflected in their ACH routing numbers and bank pricing region codes stored in JPMorgan's systems, both of which reflect a state-specific identifier for New York state.  The seventh account was held and maintained at a JPMorgan branch in Chicago, Illinois.

22.    JPMorgan's relationship with the accounts held by the corporate Plaintiffs, including the one account indicated in JPMorgan's systems as being held at a branch in Chicago, Illinois, were managed by employees located in JPMorgan's branches located in the borough of Manhattan, New York County, State of New York, in the United States, and thus, the documentation and business records for these JPMorgan accounts were created and maintained in the borough of Manhattan.

23.    For each relevant JPMorgan account held by the corporate Plaintiffs, JPMorgan's primary point of contact was Jeffrey McConney, former Controller for the Trump Organization,

headquartered at Trump Tower, 725 Fifth Avenue, New York, State of New York, in the United States.

**C.      Plaintiff Donald J. Trump's Relationship With JPMorgan**

24.      Plaintiff Donald J. Trump had been a client of JPMorgan and/or its predecessor entities since at least 1986.  At the time his account was closed, Plaintiff Donald J. Trump's accounts were governed by the Combined Terms and Conditions (effective February 7, 2021).

25.      Attached hereto as **Attachment 11** is a true and correct copy of the Combined Terms and Conditions (effective February 7, 2021) that governed the relationship between JPMorgan and Plaintiff Donald J. Trump at the time his account was closed in 2021.

26.      The Combined Terms and Conditions attached as **Attachment 11** contain the following pertinent terms:

    a.      "Either of us may terminate this Agreement or some or all of the products, features and services provided at any time upon notice to the other."  (p. 5, ¶ 17.)

    b.      "Except as otherwise provided, or insofar as preempted by federal law, this Agreement shall be governed by the law of the State of New York without giving effect to its choice of law or conflict of laws provisions (other than Section 5-1401 of the New York General Obligations Law).  Deposit accounts shall be governed by the law of the place where each deposit account is located." (p. 6, ¶ 22.)

    c.      "[W]e and you knowingly, voluntarily and irrevocably waive all right to trial by jury in any action, proceeding or counterclaim, of whatever type or nature, including, but not limited to, actions in contract or tort, arising out of this Agreement or the relationship established by this Agreement."  (p. 6, ¶ 24.)

    d.      "This Agreement and our fees and charges may be amended, and we may modify any aspect of an Account, at any time, by notifying you."  (p. 7, ¶ 29.)

    e.      "Either you or the Bank may close your Account at any time with or without cause."  (p. 32.)

f.     "We may change the terms of this Agreement, including any fees or features of your Account, at any time, by notifying you.  If any change would adversely affect you, we will notify you at least 30 calendar days prior to the effective date of the change[.]"  (p. 32.)

g.     "By maintaining your Account after the effective date of any change, you agree to be bound by the changes."  (p. 32.)

h.     "You agree that we shall not be liable for any indirect, special or consequential damages regardless of the form of action and even if we have been advised of the possibility of such damages."  (p. 32.)

i.     "If you file any lawsuit or other legal proceeding against us that is connected in any way to your Accounts or services, you must do so in an appropriate court in the state and county where you opened the account.  If you relocate your Account to another branch, you must file any lawsuit or proceeding in the state and county where that branch is located.  In addition, if we file any lawsuit or legal proceeding that is connected in any way to your Accounts or services, you consent to jurisdiction and venue in an appropriate court in the location described in this paragraph.  If either party chooses to have disputes determined under the section entitled Arbitration, that section rather than this section governs the process and location of the arbitration proceedings."  (p. 32.)

27.     The JPMorgan account held by Plaintiff Donald J. Trump was held at a JPMorgan branch located in the borough of Manhattan, New York County, State of New York, in the United States, at the time it was closed in 2021.  The location of this account is reflected in its ACH routing number and bank pricing region code stored in JPMorgan's systems, both of which reflect a state-specific identifier for New York state.

28.     Plaintiff Donald J. Trump's JPMorgan account was managed by employees located in JPMorgan's branches located in New York City, and thus, the documentation and business records for these JPMorgan accounts were created and maintained in New York.

29.     When Plaintiff Donald J. Trump's account was transferred from the CB to the PB in May 2017, Plaintiff Donald J. Trump designated an address in New York, New York as his primary residence address and contact information.  In advance of that transfer, Plaintiff Donald J.

Trump signed a PB "Personal Account Application," acknowledging the terms governing his account and agreeing to be bound by those terms.

30.     The Trump Organization employees with whom JPMorgan employees communicated about Plaintiff Donald J. Trump's account were also located in New York, where the Trump Organization is headquartered.

**D.     All Plaintiffs Agreed To Exclusive Jurisdiction In New York**

31.     As shown below, all Plaintiffs agreed to exclusive jurisdiction in New York.  Three Plaintiffs agreed expressly to exclusive jurisdiction in "any State or Federal court sitting in the City of New York, New York."  The seven remaining Plaintiffs agreed to exclusive jurisdiction in New York because their contracts vest exclusive jurisdiction in the courts of the state in which the account was opened (one Plaintiff), or the state in which the JPMorgan branch holding their accounts is located (six Plaintiffs) and, as described above, their accounts are, and have always been, held and maintained in New York.

| Plaintiff | Contractual Language on Jurisdiction |
|---|---|
| 401 North Wabash Venture LLC<br><br>Trump National Golf Club Colts Neck, LLC<br><br>Trump National Golf Club, LLC | "Each of the customer and Bank irrevocably and unconditionally submits to the exclusive jurisdiction and venue of any State or Federal court sitting in the City of New York, New York over any action, suit, proceeding, claim or controversy arising out of or relating to the Account Terms which includes this Addendum." Attach. 3 § 16.1. |
| THC Miami Restaurant Hospitality, LLC<br><br>Trump Chicago Retail, LLC<br><br>Trump Miami Resort Management, LLC<br><br>Trump Payroll Corp. | "In relation to each Account, the courts of the country or state in which the branch of the Bank at which the relevant Account is held shall have exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the relevant Account Documentation and/or the relevant Account." Attach. 4 § 16.3; Attach. 6 § 16.3; Attach. 10 § 16.3. |
| 401 Mezz Venture, LLC<br><br>Trump Briarcliff Manor Development, LLC | "Any action against the Bank arising from or relating to your accounts or services provided to you by the Bank must be brought by you in state or (where there is subject matter jurisdiction) federal court located in the State of New York, County of New York, except that any action arising from or relating to an account opened and maintained by the Bank in another state or jurisdiction must be brought by you in a proper court located in that state or jurisdiction." Attach. 8 at 24, ¶ 22; Attach. 9 at 15, ¶ 21. |
| Donald J. Trump | "If you file any lawsuit or other legal proceeding against us that is connected in any way to your Accounts or services, you must do so in an appropriate court in the state and county where you opened the account." Attach. 11 at 32. |

**E.      Plaintiffs' Exhibit A Did Not Govern Their Relationships With JPMorgan In 2021**

32.      I have reviewed the document attached to Plaintiffs' Complaint as Exhibit A, which the Complaint terms a "Deposit Account Agreement."  Compl. ¶ 101.

33.      Plaintiffs allege that this document "governed the parties' relationship."  *Id.* ¶ 101.

34.     The agreement Plaintiffs attached to the Complaint as Exhibit A is provided only to *retail* customers of JPMorgan's consumer bank.  None of the Plaintiffs were retail customers of JPMorgan in or around the time their accounts were closed in 2021.  The agreement Plaintiffs attached to the Complaint is dated November 16, 2025.  The accounts described in paragraph 5 of this Declaration and subject of this litigation were closed in 2021.  Thus, the agreement Plaintiffs attached to the Complaint as Exhibit A is not a form of agreement that applied to any accounts that belonged to Plaintiffs at the time their accounts were closed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 17, 2026

Minneapolis, Minnesota

Dan Wilkening