# Attachment 2 to the Declaration of Dan Wilkening

# ACCOUNT TERMS

V1.5_09_16_17

## INTRODUCTION

This document, as amended or supplemented by account addenda for each country in which the Accounts are held, (collectively, the "Account Terms") contains the general terms, conditions and disclosures for the Accounts and Services selected by the Customer and constitutes an agreement between the Bank and the Customer and supersedes all previous drafts, discussions and negotiations, whether oral or written, between them in connection with the opening of Accounts and receipt of Services. References to "the Bank" shall mean JPMorgan Chase Bank, N.A., and any of its affiliates. References to the "Customer" shall mean the entity to which the Bank, as an independent contractor, provides Accounts and Services, including any entity that is bound by a Subsidiary Election Agreement (not applicable in all jurisdictions), as may be amended from time to time. All accounts subject to the Account Terms are, regardless of their location, referred to as "Accounts". The Account Terms may be supplemented or amended as set forth in Section 17.6 (*Amendments; Supplement; Waivers*) herein. References to "Services" shall mean services offered by the Bank and subject to the Account Terms and any applicable Service Terms. References to "Service Terms" shall mean any terms and conditions regarding specific types of Accounts or Services that are subject to the Account Terms. In addition to the Account Terms and Service Terms, the Accounts are subject to other Account-related documentation, including signature cards and application forms (the "Account Documentation").

The Customer shall not transfer any of its rights and obligations in an Account or with respect to a Service, or create any form of security interest over such rights and obligations in an Account, without the prior written consent of the Bank. Failure to obtain the Bank's prior written consent constitutes a breach of these Account Terms by the Customer and may result in immediate closure of Accounts or termination of Services.

The Account Terms, Account Documentation and Service Terms may vary applicable law to the maximum extent permitted under any such law. Any provision of applicable law that cannot be varied shall supersede any conflicting term of the Account Terms, Account Documentation or Service Terms.

## 1. Authorized Persons.

1.1 **Authorized Persons.** The Bank is authorized to rely upon any document that identifies a person authorized to act on behalf of the Customer ("Authorized Person") with respect to the Accounts and Services, until the authority for such Authorized Person is withdrawn by the Customer upon written notice to the Bank, and the Bank has had a reasonable opportunity to act on such notice. The Customer will provide a specimen signature for each Authorized Person in the manner requested by the Bank.

1.2 **Authorizations.** Each Authorized Person is independent of the Bank, and, subject to any written limitation provided by the Customer and received and accepted by the Bank, is authorized on behalf of the Customer to: open, operate and close Accounts; overdraw Accounts as permitted by the Bank; appoint and remove Authorized Persons; execute or otherwise agree to any form of agreement relating to the Accounts or Services, including Account Documentation; execute guarantees, indemnities or other undertakings to the Bank in relation to guarantees, letters of credit or other financial transactions, or in relation to missing documents; draw, accept, endorse or discount checks, drafts, bills of exchange, notes and other financial instruments ("Items"); receive materials related to security procedures; and give instructions ("Instructions"), including requests and payment orders, by means other than the signing of an Item, with respect to any Account transaction. Without limitation, such Instructions may direct: (i) the payment, transfer or withdrawal of funds; (ii) the disposition of money, credits, items or property at any time held by the Bank for account of the Customer; (iii) the provision of access as described in Section 1.4 (*Third Party Access*) and Section 2.1 (*Third Party Instructions*) below; or (iv) any other transaction of the Customer with the Bank.

1.3 **Facsimile Signatures.** If the Customer provides the Bank with facsimile signature specimens, or if the Customer issues Items with a facsimile signature on one or more occasions, the Bank is authorized to pay Items signed by facsimile signature (including computer generated signatures) if the actual or purported facsimile signature, regardless of how or by whom affixed, resembles the specimens filed with the Bank by the Customer, or resembles a specimen facsimile signature otherwise employed for the Customer's benefit.

1.4 **Third Party Access.** The Customer may request that the Bank permit a third party to have access to an Account by submitting an access request in a form acceptable to the Bank (an "Access Request", and the third party designated in such form will be referred to as a "Third Party"). Each Third Party is authorized by the Customer to issue Instructions to the Bank in relation to an Account, including to initiate payments and transfers against an Account, and to access and receive balance and transaction information (including account statements, information reporting and transaction advices) by any method of communication, including the Bank's electronic channels, facsimile transmission, in writing, by telephone and SWIFT, and the Bank is authorized to act on such Instructions and provide such access as described in this Section and Section 2.1 (*Third Party Instructions*) below. Subject to the Third Party's completion of documentation required by the Bank, the Bank is authorized to act upon any Instructions issued in the name of any authorized person of the Third Party who has been nominated by the Third Party in a form acceptable to the Bank, and such authorized person shall be deemed an Authorized Person with respect to the provisions of these Account Terms relating to the use of the Accounts and the giving of Instructions with respect to the Accounts. The Customer may revoke an Access Request at any time by giving the Bank written notice of such revocation; such revocation shall be effective when the Bank has received such notice and has had a reasonable opportunity to act upon it.

## 2. Instructions; Security Procedures.

2.1 **Security Procedures Generally.** When issuing Instructions, the Customer is required to follow the Bank's security procedures as communicated to the Customer by the Bank from time to time, including the procedures set forth herein, and shall be bound by such security procedures for use of the Service. Upon receipt of an Instruction, the Bank will use the security procedures to verify that the Instruction is effective as that of the Customer. A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, call back procedures or similar security devices. It is understood that the purpose of the security procedure is to verify the authenticity of, and not to detect errors in,

Instructions. The Customer shall safeguard the security procedure and make it available only to persons that it has authorized. Any Instruction, the authenticity of which has been verified through such security procedure, shall be effective as that of the Customer, whether or not authorized. An authenticated SWIFT or host-to-host (secure communications channel for data transfer) message issued to the Bank in the name of the Customer shall be deemed to have been given by an Authorized Person. For SWIFT, the security procedure shall be the authentication procedures established by SWIFT.

**Security Procedure for Verbal or Written Instructions.** Unless the Customer and the Bank have agreed in writing to an alternate security procedure, the Bank may verify the authenticity of verbal or written (including those transmitted by facsimile) funds transfer Instructions by telephonic call-back to an Authorized Person. The Customer agrees that this security procedure is commercially reasonable for such Instructions.

**Third Party Instructions.** The security procedures applicable to Instructions from any Third Party shall be those security procedures established by the Bank with the Third Party. Any Instruction that the Bank receives from the Third Party, the authenticity of which has been verified through such security procedure, shall be effective as that of the Customer, whether or not authorized, and shall be deemed an Instruction given on behalf of the Customer for all purposes of these Account Terms. The Bank is authorized to act upon any Instructions received via any of the SWIFT BIC codes specified in an Access Request whether or not such SWIFT BIC codes are associated with the Customer or the Third Party.

2.2 **Confirmations.** If the Customer, other than with respect to security procedures, chooses to confirm an Instruction, any confirmation must be clearly marked as a confirmation, and, if there is any discrepancy between an Instruction and a confirmation, the terms of the Instruction shall prevail. Subject to Section 2.1 (*Security Procedure for Verbal or Written Instructions*), the Bank may, at its option, confirm or clarify any request or Instruction using any means, even if a security procedure appears to have been followed. If the Bank is not satisfied with any confirmation or clarification, it may decline to honor the Instruction.

## 3. Deposits.

3.1 **Processing Incoming Items.** All Items deposited or cashed are received for collection only, and are received subject to final payment. The Bank may agree with other banks and clearing houses to vary procedures regarding the collection or return of Items, and deadlines to the extent permitted by applicable law or practice. The Bank chooses the method of collecting Items and may use other banks in the process. The Bank will present Items in accordance with the custom and practice of the jurisdictions in which the Items are handled for collection. The Bank is not responsible for actions or omissions of other banks, nor for the loss or destruction of any Item in the possession of other banks or in transit. The Customer shall use reasonable efforts to assist the Bank in locating or obtaining replacements of Items lost while in the Bank's possession.

3.2 **Availability of Funds; Credits Not Received.** Credits and deposits to an Account will be available in accordance with the Bank's availability policy and applicable law. If the Bank credits an Account: (i) in contemplation of receiving funds for the Customer's credit and those funds are not actually received by the Bank; or (ii) in reliance on a transaction which is subsequently returned, reversed, set aside or revoked, or if the Bank does not receive funds for the Customer's credit for value on the date advised by or on behalf of the Customer, or if final settlement is not received by the Bank for any reason, then the Bank shall be entitled to debit any Account of the Customer with the amount previously credited and/or with any other charges incurred, even if doing so creates or increases an overdraft.

3.3 **Collection Basis Processing.** If an Item is processed by the Bank on a collection basis, the Bank may defer credit to the relevant Account until it has received final, non-reversible, payment in accordance with applicable law and market practice.

## 4. Payment of Items.

4.1 **Processing Outgoing Items.** The Bank is authorized to pay any Item drawn on the Account, in accordance with the Bank's usual procedures, including any Item that purports to be a substitute check. The Bank is authorized to debit the Account on which the Item is drawn on the day the Item is presented, certified or accepted, or at such earlier time when the Bank receives notice by electronic or other means that an Item drawn on an Account has been deposited for collection. The Bank may determine Account balances in order to decide whether to dishonor an Item for insufficient funds at any time between receiving such presentment or notice and the time of the return of the Item, and need make no more than one such determination.

4.2 **No Inquiry.** The Bank is authorized to pay all Items presented to it or cashed at the Bank, regardless of amount and without inquiry as to the circumstances of issue, negotiation or endorsement or as to the disposition of proceeds, even if drawn, endorsed or payable to cash, bearer or the order of the signer or any Authorized Person or to a lender in payment of the signer's or Authorized Person's obligations.

4.3 **Limitations.** The Customer shall immediately notify the Bank if it becomes aware that any Items (whether completed or blank) are lost or stolen. The Customer shall not allow any third party to issue Items against or otherwise use the Accounts unless specifically agreed to in writing by the Bank. The Customer shall not issue Items that are post-dated, and the Bank shall not be liable for any damages caused by premature payment or certification of a post-dated Item. Further, the Customer shall not put any condition, restriction or legend on any Item, and the Bank is not required to comply with any such condition, restriction or legend.

4.4 **Electronic Processing; Specifications.** The Bank may process any Item by electronic means. All Items issued by the Customer against any Account must comply with industry standards and the Bank's check specifications and image standards, published from time to time. The Bank shall not be liable for damages or losses due to any delay or failure in procuring, collecting or paying Items not conforming to such specifications or standards, except to the extent such losses or damages are the direct result of the Bank's gross negligence or willful misconduct.

## 5. Funds Transfer Instructions.

5.1 **Processing Funds Transfer Instructions.** The Customer may issue funds transfer Instructions against Accounts, subject to the Bank's acceptance. Funds transfer Instructions will be received, processed and transmitted only on the Bank's funds transfer business days, and within the Bank's established cut-off hours on such days. Communications requesting cancellation or amendment of funds transfer Instructions must be clearly marked as such and received at a time and in a manner affording the Bank a reasonable opportunity to act on the communication. The Customer may reverse, amend, cancel or revoke any Instructions only with the consent of the Bank and, if applicable, the beneficiary's bank. The Bank will debit the Account for the amount of each funds transfer Instruction accepted by the Bank, and the Customer authorizes the Bank to debit the Account for, or deduct from the amount of the funds transfer, all associated fees, including debit and credit processing charges. In processing a funds transfer, other banks may deduct fees from the funds transfer. No restrictions upon the acceptance of funds transfer Instructions by the Bank or upon the Accounts that the Bank may debit shall be binding unless agreed to by the Bank in writing. The Bank shall not be required to inquire into the circumstances of any transaction.

5.2 **Acting on Instructions.** Notwithstanding any Instructions by the Customer to the contrary, the Bank reserves the right to use any funds transfer system and any intermediary bank in the execution of any funds transfer Instruction and may otherwise use any means of executing the funds transfer Instruction that the Bank deems reasonable in the circumstances.

5.3 **Inconsistent Name and Number.** The Bank and other financial institutions, including the beneficiary's bank, may rely upon the identifying number of the beneficiary, the beneficiary's bank or any intermediary bank included in a funds transfer Instruction, even if it identifies a person different from the beneficiary, the beneficiary's bank or intermediary bank identified by name.

5.4 **Foreign Exchange.** If the Bank accepts a funds transfer Instruction issued in the Customer's name for payment in a currency (the "Non-Account Currency") other than the currency of the Account (the "Account Currency"), the Bank is authorized to enter into a foreign exchange transaction to sell to the Customer the amount of Non-Account Currency required to complete the funds transfer and debit the Account for the purchase price of the Non-Account Currency. If the Bank accepts a funds transfer Instruction for payment to the Account in a Non-Account Currency, the Bank is authorized to purchase the Non-Account Currency from the Customer and to credit the purchase price to the Customer's Account in lieu of the Non-Account Currency. The purchase price for the foregoing transactions shall be at a rate and spread as the Bank determines in its discretion and may differ from rates at which comparable transactions are entered into with other customers or the range of foreign exchange rates at which the Bank otherwise enters into foreign exchange transactions on the relevant date. Further, (i) the Bank may execute such foreign exchange transactions in such manner as the Bank determines in its sole discretion; and (ii) the Bank may manage the associated risks of the Bank's own position in the market in a manner it deems appropriate without regard to the impact of such activities on the Customer. The Bank may also earn a profit which may be imbedded in the applicable rate and/or spread. Any such foreign exchange transaction will be between the Bank and the Customer as principals, and the Bank will not be acting as agent or fiduciary for the Customer.

**Foreign Exchange Cancellations, Reversals and Buybacks.** Notwithstanding any prior action or course of dealing, subject to applicable law, the Bank has no obligation to cancel, reverse or otherwise buy back foreign currencies purchased by the Customer under a Service and the Bank makes no commitment to buy back currencies. The Customer acknowledges that it may not be able to sell back certain foreign currencies once purchased.

5.5 **Cancellation of Foreign Exchange Drafts.** Subject to applicable law, the Bank may cancel any draft issued by the Bank on behalf of the Customer in a Non-Account Currency if the draft is not presented for payment within one hundred eighty (180) calendar days after the date of issuance, and the Customer authorizes the Bank to recredit the Customer's Account with an equivalent amount of Account Currency at a foreign exchange rate and spread, and at such date and time, as the Bank determines in its discretion. Following such cancellation, the Customer shall be responsible for all claims that may be asserted against the Bank in respect of the draft.

## 6. Interest; Fees; Taxes.

6.1 **Interest.** The Bank may pay interest on balances in interest-bearing Accounts at rates determined by the Bank, subject to any withholding or deduction for tax as required by applicable law, including without limitation the Foreign Account Tax Compliance Act ("FATCA") and is authorized to perform any other function (including debiting, blocking or suspending the Accounts) as required by applicable law or practice of any relevant government, regulatory, judicial or tax authority or in accordance with the Bank's usual business practice. The Bank may deduct from the Accounts charges for early withdrawals, which may include a deduction from principal (if permitted or required by law). To the extent market interest rates are negative, the rate applied by the Bank to interest-bearing Accounts may be negative, in which case the Customer may be required to make a negative rate payment, which the Bank shall also be entitled to collect by debiting the Account.

6.2 **Fees and Taxes.**

(a) The Bank may impose and the Customer will pay fees for Accounts and Services provided by the Bank, including transaction, maintenance, balance-deficiency, and service fees and other charges (collectively "Fees"). The Bank may debit any Account for Fees and/or Taxes, even if such debit creates or increases an overdraft of the Account. References to "Taxes" shall mean any taxes (including value added taxes, sales taxes and similar taxes), levies, imposts, deductions, charges, stamp, transaction and other duties and withholdings (together with any related interest, penalties, fines, and expenses) in connection with the Fees, Accounts or Services (including payments or receipts to an Account) except if such Taxes are imposed on the overall net income of the Bank.

(b) All payments (including Fees and interest on overdrafts) from the Customer to the Bank pursuant to the Account Terms, the Service Terms and any Account Documentation shall be in full, without set-off or counterclaim, and free of any withholding or deduction (collectively, a

"Deduction") related to any tax or other claim, unless a Deduction is required by applicable law. If any Deduction is required by applicable law in respect of any payment due to the Bank, the Customer shall:

(i) ensure that the Deduction is made;

(ii) pay the amount of the Deduction as required by applicable law;

(iii) increase the payment in respect of which the Deduction is required so that the net amount received by the Bank after the Deduction shall be equal to the amount which the Bank would have been entitled to receive in the absence of any requirement to make any Deduction; and

(iv) deliver to the Bank, within thirty (30) days after it has made payment to the applicable authority, a certified copy of the original receipt issued by the authority, evidencing the payment to the authority of all amounts required to be deducted.

(c) All Fees are exclusive of Taxes. In addition to any Fees or other amounts due and except to the extent the Bank is otherwise compensated for such Taxes under this Section 6, the Customer will pay or reimburse the Bank for any Taxes which the Bank is required to account for to any tax authority under any applicable law and, where required by applicable law, the Customer shall account for any Taxes directly to the applicable tax authority.

6.3 **Documentation and Information.** The Customer will provide the Bank with such documentation and information as the Bank may require in connection with taxation, and warrants that such information is true and correct in every respect and shall immediately notify the Bank if any information requires updating or correction.

## 7. Account Statements.

The Bank will issue Account statements, confirmations, or advices ("Account Statements") at the frequency and in the manner advised to the Customer from time to time. The Customer is responsible for ensuring that an Authorized Person promptly examines each Account Statement and any accompanying Items that are made available to it by the Bank, and reporting any irregularities to the Bank in writing, including any claim of unauthorized funds transfer activity. The Bank shall not be responsible for the Customer's reliance on balance, transaction or related information that is subsequently updated or corrected or for the accuracy or timeliness of information supplied by any third party to the Bank. Internet Account Statements or electronic Account Statements, if applicable, shall be deemed by the Customer and the Bank to be available to the Customer when the Account Statements are posted on the internet and the Bank sends an electronic mail notification of availability to the Customer, or when the Bank sends the electronic Account Statement to the Customer. For purposes of determining when an Item is sent to the Customer, an image of an Item or information identifying the Item (i.e. Item number, amount and date of payment) is a sufficient substitute for the actual Item.

## 8. Overdrafts.

8.1 **Overdrafts.** The Bank may debit an Account even if the debit may cause or increase an overdraft. Unless otherwise agreed in writing, the Bank is under no obligation to permit any overdraft or to continue to permit overdrafts after having permitted an overdraft or to provide notice of any refusal to permit an overdraft, in each case notwithstanding any prior action or course of dealing. Any overdraft shall be immediately due and payable by the Customer to the Bank, unless otherwise agreed in writing. If the Bank permits an overdraft, the Bank is authorized to charge interest on the amount of the overdraft as long as the overdraft is outstanding, at a rate determined by the Bank, up to the maximum rate permitted by law at the time of the overdraft or at the specific rate agreed in writing between the Customer and the Bank. Subject to applicable law, interest shall accrue on any negative balance in an Account notwithstanding closure of the Account and/or termination of these Account Terms. If the Bank pays an Item that causes or increases an overdraft, the Bank may deduct applicable Fees and expenses from the Account without notice.

8.2 **Order of Payment.** When Items and other debits to the Account are presented to the Bank for payment on the same day and there are insufficient available funds in the Account to pay all of these transactions, the Bank may choose the order in which it pays transactions, including the largest transaction first or any other order determined by the Bank, in its sole discretion.

## 9. Set Off.

The Bank may at any time, without prejudice to any other rights which it may have, and without prior notice or demand for payment, combine, consolidate or merge all or any of the Accounts of the Customer or may retain, apply or set off any money, deposits or balances held in, or standing to the credit of, any Account in any currency towards payment of any amount owing by the Customer to the Bank or any of its affiliates. The Bank shall be entitled to accelerate the maturity of any time deposit or fixed term deposit. For the purposes of this Section the Bank may effect currency conversions at such times or rates as it may think reasonable and may effect such transfers between any Accounts as it considers necessary. The Customer grants to the Bank a lien and security interest in any Accounts of the Customer at the Bank, in order to secure any and all obligations and liabilities of the Customer to the Bank or any of its affiliates.

## 10. Agents; Information.

10.1 **Confidential Information.** The Bank agrees to take customary and reasonable measures to maintain the confidentiality of Customer confidential information. The Customer authorizes the Bank and its affiliates, and their respective agents, employees, officers and directors to disclose Account opening documentation, information with respect to any Account or Service, any banking transaction, and the Customer itself, including Customer confidential information, in order to provide the services under the Account Terms, Account Documentation and Service Terms, for

compliance with legal, tax and regulatory requirements, including without limitation FATCA, and for the Bank's operational purposes, risk management and compliance with internal policies: (i) to unaffiliated third parties, including the transmission of information to other banks and clearing houses and through channels and networks operated by third parties, and to agents of the Bank; (ii) to a proposed assignee of the rights of the Bank; (iii) to branches and affiliates of the Bank; (iv) to the auditors, legal advisers and consultants of the Bank, its branches and affiliates; (v) to the auditors of the Customer; (vi) to the Bank's or its affiliates' or the Customer's examiners or other regulators, including tax authorities, law enforcement agencies, courts of competent jurisdiction or other official bodies, anywhere in the world; and (vii) pursuant to subpoena or other court process, or to establish, exercise or defend the legal rights, or satisfy the legal obligations, of the Bank and its affiliates.

10.2   **Agents.**  The Bank may retain agents to perform data processing, collection and other services in connection with the Accounts and Services.

10.3   **Offshoring.** Subject to applicable laws, including without limitation FATCA, processing of Customer confidential information may be performed by any Bank affiliate, including affiliates, branches and units located in any country in which we conduct business or have a service provider. The Customer authorizes the Bank to transfer Customer Information to such affiliates, branches and units at such locations as the Bank deems appropriate.

10.4   **Consents.** The Customer represents and warrants that prior to submitting to the Bank information about natural persons related to the Customer (including Authorized Persons, users of the Bank's electronic access systems, officers and directors, employees, beneficial owners, and customers and persons on whose behalf the Customer is receiving or transmitting funds, issuing items or maintaining an Account), the Customer shall have obtained such consents as may be required by applicable law or agreement, for the Bank to process and use the information for purposes of providing the Services.

## 11. Liability Limitation; Force Majeure.

11.1   **Liability.**  The Bank, its agents, employees, officers and directors, shall not be liable for any damage, loss, expense or liability of any nature which the Customer may suffer or incur, except to the extent of direct losses or expenses resulting from the gross negligence or willful misconduct of the Bank, its agents, employees, officers or directors. The Bank, its agents, employees, officers and directors shall not, in any event, be liable for indirect, special, consequential or punitive loss or damage of any kind (including lost profits, loss of business or loss of goodwill), in each case, whether or not foreseeable, even if the Bank, its agents, employees, officers or directors have been advised of the likelihood of such loss or damage, and regardless of whether the claim for loss or damage is made in negligence, gross negligence, for breach of contract or otherwise; provided, however, that the foregoing shall not apply to the extent such loss or damage is caused by fraud on the part of the Bank, its agents, employees, officers or directors. Customer shall promptly provide the Bank with a notice of any claims it receives regarding a Service.

11.2   **Force Majeure.**  Neither the Bank nor the Customer shall be liable for any loss or damage, expense or liability of any nature to the other for its failure to perform or delay in the performance of its obligations resulting from an act of God, act of governmental or other authority, de jure or de facto, legal constraint, civil or labour disturbance, fraud or forgery (other than on the part of the other party or its employees), war, terrorism, catastrophe, fire, flood or electrical, computer, mechanical or telecommunications failure or malfunction, including inability to obtain or interruption of communications facilities, or failure of any agent or correspondent, or unavailability or failure of or the effect of rules or operations of a payment or funds transfer system, including non-availability of appropriate foreign exchange or foreign currency, or any cause beyond its reasonable control.

## 12. Indemnity.

The Customer indemnifies and holds the Bank, and its agents, employees, officers and directors, harmless from and against any and all claims, damages, demands, judgments, liabilities, losses, costs and expenses (including attorneys' fees) (collectively, "Losses") arising out of or resulting from: (i) the Bank's acceptance or execution of any request, direction or transaction in connection with any Account or any Service provided to the Customer, including Items and Instructions; or (ii) the Bank's payment of any taxes, interest or penalty otherwise due from the Customer paid on the Customer's behalf, or for which the Bank has no responsibility under the Account Terms, the Service Terms or any Account Documentation. Notwithstanding the foregoing, the Bank shall not be indemnified for any Losses to the extent resulting directly from its own gross negligence, willful misconduct or fraud.

## 13. Notices.

All Account Statements and notices may be sent to the Customer by ordinary mail, courier, facsimile transmission, electronic transmission (including SWIFT communication and emails), through internet sites, or by such other means as the Customer and the Bank may agree upon from time to time, at the address of the Customer provided to the Bank. Unless otherwise arranged, all notices to the Bank must be sent to the Bank officer or service representative managing the Account or to any other address notified by the Bank to the Customer in writing from time to time, and must be sent by ordinary mail, by courier, by facsimile transmission, by electronic transmission or by such other means as the Customer and the Bank agree upon from time to time. The Bank shall have a reasonable time to act on any notices received.

## 14. Termination.

Unless otherwise agreed, either the Bank or the Customer may close an Account or terminate a Service by giving the other party not less than thirty (30) calendar days' prior written notice of intent to close or terminate. Notwithstanding the foregoing, either party may terminate an Account or a Service upon written notice to the other party in the event of: (i) a breach of the Account Terms, Account Documentation or Service Terms by the other party; (ii) the other party's inability to meet its debts as they become due, receivership, administration, liquidation, or voluntary or

involuntary bankruptcy; or the institution of any proceeding therefor, any assignment for the benefit of the other party's creditors, or anything analogous to the foregoing in any applicable jurisdiction, or a determination in good faith by the terminating party that the financial or business condition of the other party has become impaired; (iii) a determination by the terminating party, in its sole opinion, that termination is necessary or required by applicable legal, tax or regulatory requirements, or as a result of a court or regulatory agency order or proceeding; or (iv) a good faith belief by the terminating party that the other party is engaged in activities that are inconsistent with the terminating party's policies. The Bank shall have a reasonable opportunity to act upon any termination request. The Bank shall not be precluded from completing a request or Instruction received by it prior to a termination request based on receipt of such termination request. Notwithstanding anything to the contrary in any Service Terms, upon the closing of an Account, all Services linked to such Account are simultaneously terminated (unless otherwise specifically agreed to by the parties) and the Bank's obligations in respect of such Account or Services will terminate. However, any such closing or termination shall not affect the Customer's liabilities to the Bank arising prior to, or on, such closing or termination, all of which shall continue in full force and effect. In the absence of Instructions from the Customer, the Bank may transfer balances to an unclaimed moneys account, or issue a cashier's check, sending it to the address of the Customer provided to the Bank.

## 15. Account Disclosures.

15.1 **Rejection of Funds.** The Bank may return or refuse to accept all or any part of a deposit or credit to an Account, at any time, and will not be liable to the Customer for doing so, even if such action causes outstanding Items to be dishonored and returned, or payment orders to be rejected.

15.2 **Withdrawal.** The Bank may refuse to allow withdrawals from Accounts in certain circumstances, including where: (i) there appears to be a dispute relating to an Account, including disputes regarding the persons authorized to issue Instructions; (ii) legal process affecting the Account is received by the Bank, including a levy, restraining notice or, order of a court or other competent authority; (iii) the Account is being used as collateral to secure indebtedness to the Bank or its affiliates; (iv) documentation requested by the Bank has not been presented; or (v) the Customer fails to pay its indebtedness to the Bank or its affiliates on time.

15.3 **Payable Branch; Deposits Outside of the U.S.** Any amount standing to the credit of any Account with the Bank is payable exclusively at a branch in the country at which the Account is held; however, payment may be suspended from time to time in order to comply with any applicable law, governmental decree or similar order, in any jurisdiction, for the time period affecting the Bank, its officers, employees, affiliates, subsidiaries, agents or correspondents. The Customer acknowledges that deposits held in a branch of the Bank located outside the United States are not payable in the United States and: (i) are not insured by the Federal Deposit Insurance Corporation or any other United States governmental agency; (ii) are subject to cross-border risks; and (iii) have a lesser preference as compared to deposits held in the United States in the event of a liquidation of the Bank.

15.4 **Commissions and Rebates.** In connection with the provision of any Service by the Bank to the Customer, the Bank may from time to time receive commission, rebate or similar payments from other banks or third parties.

## 16. Governing Law.

16.1 **Governing Law.** The Account Terms, the relevant Account Documentation and the rights and obligations of the Customer and the Bank in respect of each Account shall be governed by and construed in accordance with the laws of the country in which the branch holding the relevant Account is located.

16.2 **Waiver of Jury Trial; Limitation of Claims.** The Customer and the Bank hereby irrevocably waive all right to, and will not seek, trial by jury in any action, proceeding or counterclaim, of whatever type or nature, arising out of these Account Terms, the Account Documentation or the relationship established hereby. Any claim in connection with any Account or Service, unless a shorter period of time is expressly provided, must be brought against the Bank within two (2) years of the occurrence of the event giving rise to the claim, except as prohibited by applicable law.

16.3 **Venue.** In relation to each Account, the courts of the country or state in which the branch of the Bank at which the Account is held shall have exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the Account Documentation and/or the Account and the Customer agrees to submit to the jurisdiction of such courts. This section is for the benefit of the Bank only and does not prevent the Bank from taking proceedings in the courts of any other country or state with jurisdiction including, to the extent allowed by law, concurrently in any number of countries or states.

## 17. Miscellaneous.

17.1 **Languages.** If the Account Terms, Account Documentation or Service Terms are translated into, or appear in a language other than English, the English language version shall control.

17.2 **Successors.** The term Bank in the Account Terms, the Service Terms and any Account Documentation shall include any successors of the Bank, including assignees or successors of JPMorgan Chase Bank, N.A. or its affiliates or any person who under the laws of its jurisdiction of incorporation or domicile, has assumed the rights and obligations of the Bank or its affiliates hereunder or to which the same has been transferred. The Bank may, at any time, assign or transfer all or any of its rights and obligations hereunder to an affiliate of JPMorgan Chase Bank, N.A..

17.3 **Order of Precedence.** Any terms of any supplement, amendment, agreement, Service Terms or notice that are inconsistent with a provision of the Account Terms or the Account Documentation shall supersede such provision of the Account Terms or the Account Documentation for

purposes of the particular Account or Service that is the subject thereof. The Account Terms and Account Documentation supersede and replace any other account conditions previously sent to the Customer.

17.4 **Interpretation.** Section and subsection headings are for convenience only and shall not affect the meaning of the Account Terms, the Service Terms and any Account Documentation. References to Schedules, Sections, Subsections and Clauses are to Schedules, Sections, Subsections and Clauses of the Account Terms, the Service Terms and any Account Documentation. Words in the singular import the plural and vice versa. If any provision of the Account Terms, the Service Terms and any Account Documentation shall be held to be illegal, invalid, or unenforceable the validity of the remaining portions of the Account Terms the Service Terms and any Account Documentation shall not be affected. The term "including" shall in all cases mean "including without limitation" unless otherwise indicated. The term "affiliates" shall mean with respect to any entity, an entity, whether directly or indirectly, that controls, is controlled by, or is under common control with that entity. The term "applicable laws" or similar terms shall mean any law, statute, order, decree, rule, injunction, license, consent, approval, agreement, guideline, circular or regulation of a government authority.

17.5 **Compliance; Transaction Screening.** The Customer shall comply with all applicable laws and the Bank's policies notified to the Customer. The Bank is required to act in accordance with Bank policies, the laws of various jurisdictions relating to the prevention of money laundering and the implementation of sanctions, including economic or financial sanctions or trade embargoes imposed, administered or enforced from time to time by the U.S. government, including those administered by the Office of Foreign Assets Control of the U.S. Department of the Treasury or the U.S. Department of State. The Bank is not obligated to execute payment orders or effect any other transaction where a party to the transaction is a person or entity with whom the Bank is prohibited from doing business by any law applicable to the Bank, or in any case where compliance would, in the Bank's opinion, conflict with applicable law or banking practice or its own policies and procedures. Where the Bank does not execute a payment order or effect a transaction for such reasons, the Bank may take any action required by any law applicable to the Bank including freezing or blocking funds. Transaction screening may result in delays in the posting of transactions and/or funds availability. The Bank may direct the Customer (a) to make changes to the activity in the Customer's Accounts, including to cease and desist from using the Accounts for particular types of transactions or for transactions involving particular parties from time to time, and (b) not to use the Accounts to send payments with certain characteristics. The Customer agrees to comply with such directions.

17.6 **Amendments; Supplements; Waivers.** The Account Terms may be amended or supplemented on notice to the Customer, including by terms contained in any Service Terms or Account Documentation. The Service Terms may be amended or supplemented on notice to the Customer. These amendments or supplements may impose restrictions on the Accounts and Services, as the Bank deems necessary in the course of its business, and will be effective on notice to the Customer or at such other time to be specified in the notice; provided that amendments or supplements that are required by law may be implemented immediately or as required by law. By signing an Account signature card, Account application or similar document or by using or continuing to use any of the Accounts or Services, the Customer agrees to the Account Terms, the Account Documentation, Service Terms and any amendments or supplements, as applicable. All amendments must be in writing

The Bank may waive any of provision of these Account Terms, the Account Documentation or the Service Terms, but such waiver shall apply only on that occasion. Such waiver shall not constitute a waiver of any other provision of the Account Terms, the Account Documentation or the Service Terms. Any such waiver shall not affect the Bank's right to enforce any of its rights with respect to other customers or to enforce any of its rights with respect to later transactions with Customer and is not sufficient to modify the terms and conditions of the Account Terms, the Account Documentation or the Service Terms. The rights and remedies in the Account Terms, the Service Terms and any Account Documentation are cumulative and are not exclusive of any other rights or remedies provided by applicable law.

17.7 **Waiver of Immunity.** To the extent that the Customer has or hereafter may acquire any immunity (including sovereign, crown or similar immunity) from jurisdiction of any court, suit or legal process (whether from service of notice, injunction, attachment, execution or enforcement of any judgment or otherwise), the Customer irrevocably waives and agrees not to claim such immunity as against the Bank or its affiliates.

17.8 **Internet Services; Notice of Claims.** The Customer agrees at its sole expense: (i) to advise each of its employees, officers, agents or other persons accessing any Service by or on behalf of Customer ("Users") of their obligations under the Account Terms, Account Documentation or under any Service Terms or ancillary Service material, including the obligation to refrain from using the Service via the Internet in the countries identified by the Bank; and (ii) to provide the Bank with all information reasonably necessary to setup and provide Services for the Customer, including advising the Bank of the countries from which Users will access any Service via the Internet.

17.9 **Recordings.** The Bank or the Customer, at its sole discretion, may make and retain recordings of telephone conversations between the Customer and the Bank.

17.10 **Instructions.** All Instructions, whether Items, payment orders or otherwise, are subject to applicable laws, and rules, policies, operations and practices of the applicable clearing or settlement systems or payment networks.

17.11 **Electronic Copies.** The Bank may retain copies (paper, electronic or otherwise) of any documents or Items relating to the Accounts and Services in a form preserving an image of any such documents or Items, including signatures, or a regular business record and discard the original documents or Items. The Customer hereby waives any objection to the use of such records in lieu of their paper equivalents for any purpose and in any forum, venue or jurisdiction, including objections arising from the Bank's role or acquiescence in the destruction of the originals.

17.12 **Intellectual Property.** All intellectual property rights in or relating to a Service, including any trademarks, service marks, logos, and trade names used in conjunction with a Service are the property of the Bank or its licensors and are protected by applicable copyright, patent, trademark and other intellectual property law. Except as provided herein, the Customer shall not reproduce, transmit, sell, display, distribute, establish any hyperlink to, provide access to, modify, or commercially exploit in whole or in part any part of a Service, without the prior written consent of the Bank.

17.13 **Know Your Customer.** To assist in the prevention of the funding of terrorism and money laundering activities, applicable law may require financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for the Customer: when the Customer opens an Account, the Bank may ask for the Customer's name, address, date of birth (for natural persons), and/or other information and documents that will allow the Bank to identify the Customer. The Bank may also request and obtain certain information from third parties regarding the Customer. For purposes of this provision, the Customer, to the extent required by applicable law, shall include any Authorized Person or signatory on an Account.

Information. To fulfill the Bank's "know your customer" responsibilities, the Bank will request information from the Customer from time to time, inter alia, regarding the Customer's organization, business, Third Parties and, to the extent applicable, Authorized Persons and beneficial owner(s) of the Customer, the Customer's customers, and their beneficial owners, including relevant natural or legal persons, and the Customer shall procure and furnish the same to the Bank in a timely manner. The Bank may also request further information and/or documentation in connection with the provision of the Services. Any information and/or documentation furnished by the Customer is the sole responsibility of the Customer and the Bank is entitled to rely on the information and/or documentation without making any verification whatsoever (except for the authentication under the security procedures, as applicable). The Customer represents and warrants that all such information and/or documentation is true, correct and not misleading and shall advise the Bank promptly of any changes and, except as prohibited by applicable law, the Customer agrees to provide complete responses to the Bank's requests within the timeframes specified. The Customer will notify the Bank in writing if any Accounts or monies it holds or places with the Bank are subject to restrictions or otherwise held or received by the Customer in a capacity other than previously disclosed to the Bank, including but not limited to monies being held for the benefit of third parties, whether as fiduciary or otherwise, monies subject to encumbrances, monies received as intermediary, processor or payment service provider, or arising from undisclosed business or similar sources. The Bank may, at its sole discretion and subject to such further conditions as it may impose, including, without limitation, execution of further documentation in form and manner acceptable to the Bank, permit the holding of such Accounts or deposits or receipt of funds. Unless prohibited by applicable law, the Customer agrees to promptly disclose to the Bank activity in the Customer's Accounts that is suspicious or violates applicable laws or sanctions.

If the Customer fails to provide or consent to the provision of any information required by this Section, the Bank may close any Account or suspend or discontinue providing any Service without further notice.

17.14 **Click-Thru.** The Bank may deliver, make available and/or make accessible terms and conditions applicable to Accounts and Services to the Customer via electronic means and channels (including by posting such terms on a Bank website). The Bank may request that an Authorized Person "click" its approval of such terms. Subject to applicable law, the Customer agrees that the act of "clicking" its approval (or any similar act which has the same effect) with respect to any such terms will be evidence of Customer's acceptance of the applicable terms and conditions, to the same extent, and with the same force and effect, as if Customer had manually executed a written version of such terms and conditions.

## 18. Interpleader; Reimbursement.

If the Bank determines that there is a dispute regarding the ownership of or entitlement to funds held by the Bank for the account of the Customer, the Bank may apply to an appropriate court for resolution of the dispute and may pay the funds into the court pending resolution. The Customer agrees to reimburse the Bank for any related expenses, including its attorneys' fees and costs incurred in connection with the resolution of such disputes or in connection with the Bank's response to, any legal process, including subpoenas, interrogatories and other written questions, garnishments, attachments, levies, writs, restraining notices, court orders, civil investigative demands, requests or demands from regulators or law enforcement, or summonses, complaints or petitions relating to an Account.

## 19. Provisional Recredit.

In connection with any dispute regarding an Account, the Bank may choose to credit the Account pending completion of the Bank's investigation of the dispute. If the Bank determines that the Customer is not entitled to such credit, then, the Bank may reverse the provisional recredit to the Account, even if that reversal results in an overdraft.