# Attachment 3 to the Declaration of Dan Wilkening

# ADDENDUM TO ACCOUNT TERMS
## United States of America

V1.8_06_29_18

Accounts maintained by the Customer with the Bank are subject to the Bank's Account Terms. This addendum ("Addendum") amends or supplements the Account Terms with respect to Accounts maintained in the United States of America ("U.S.") and to Services provided in connection with such U.S. Accounts, regardless of the location where Services are provided. Capitalized terms used in this Addendum, and not otherwise defined, have the meanings set forth in the Account Terms. By using any Account maintained in the U.S., the Customer acknowledges receipt of, and agrees to be bound by, the Account Terms which includes this Addendum, each as may be amended or supplemented from time to time.

**Section 2 of the Account Terms (Instructions; Security Procedures) is amended by adding the following provision:**

2.3   The Customer represents and warrants to the Bank that the Customer has not requested funds transfer security procedures other than those expressly agreed by the Customer and the Bank.

**Section 3 of the Account Terms (Deposits) is amended by adding the following provisions:**

3.4   <u>Verification; Adjustments</u>. Receipts issued by the Bank for deposits are based solely on the amounts stated in the deposit ticket. Credits for Items received for deposit or collection (whether or not accompanied by a deposit ticket) are subject to verification and the Bank's receipt of final payment of deposited Items. The Bank may make adjustments to the Account for any errors appearing on deposit tickets or occurring during processing or otherwise, but the Bank has no obligation to do so for *de minimis* discrepancies.

3.5   <u>Foreign Currency Items</u>. The Bank may handle Items drawn on a non-U.S. bank or Items payable in a foreign currency on a collection basis, not for deposit, even if the Bank has received the Items in a deposit. The Customer may not receive provisional credit for such Items or, if provisional credit has been given, the Bank may revoke it. Credit for Items payable in a foreign currency will be converted into U.S. dollars at a foreign exchange rate and spread, and at such date and time, as the Bank determines in its discretion.

3.6   <u>Endorsements</u>. Endorsement must be placed on the back of Items only in the area within 1.5 inches from the trailing edge of the Item. The trailing edge of the Item is defined as the left-hand edge of the check looking at it from the front. If the Customer is authorized in writing to endorse Items on the Bank's behalf, the Customer agrees to comply with the endorsement standards of the Bank.

3.7   <u>Encoding</u>. If the Customer encodes information on an Item, the Customer warrants to the Bank and to all other collecting and paying banks of that Item that it is properly encoded and the Customer will be liable for losses related to encoding errors, including any loss due to delay in processing caused by an encoding error.

3.8   <u>Return or Charge Back.</u> The Customer should not use carrier documents (Items placed inside envelopes) in either high-speed forward or return cash letters. The Bank may charge the Account for Items returned unpaid to the Bank or for claims based on asserted unauthorized signatures, endorsements or alterations.

3.9   <u>Collections</u>. The Customer agrees that the Bank may collect any Item deposited to Customer's Account by electronic means. The Bank has no duty to inspect such Item during the deposit and collection process.

3.10  <u>Variance.</u> The Bank may agree with other banks and clearing houses to vary procedures regarding the collection or return of Items, and to vary applicable deadlines, to the maximum extent permitted by applicable laws, and rules, policies, operations and practices of the applicable clearing or settlement systems or payment networks (collectively "Rules & Regulations").,

3.11  <u>Substitute Checks</u>. The Customer will not deposit any substitute checks (that are not returned Items) unless the Bank expressly agrees to accept such Items for deposit. In the absence of the Bank's express agreement, the Customer will be solely responsible for any loss or claim in connection with its use of substitute checks.

3.12  <u>Night Depository Deposits.</u> The Bank is not liable for any deposit made through the use of the Bank's night depositories until the Bank issues a written acknowledgement of the deposit. The Bank's count of the amount deposited in a night depository will be conclusive. The Customer is solely responsible for any loss that may be incurred before the Bank verifies the contents of the deposit.

3.13  <u>Remotely Created Checks</u>. If the Customer deposits a remotely created check ("RCC"), as such term is defined in Federal Reserve Regulation CC, the Customer warrants to the Bank, with respect to each RCC, that the person on whose account the RCC is drawn, authorized the issuance of such RCC in the amount and to the payee stated on the RCC. The Customer authorizes the Bank to debit the Customer's account for any claim or return based upon an unauthorized RCC and the Customer agrees to indemnify and hold the Bank harmless from and against any claims, liabilities, costs and expenses (including attorneys' fees) resulting directly or indirectly from any breach of the foregoing warranty.

3.14 <u>Electronically-Created Items</u>. The Customer should not deposit electronically-created items (ECIs) to its account, as such term is defined in Federal Reserve Regulation CC. ECIs are included in the definition of an Item. If the Customer does deposit an ECI, the Customer authorizes the Bank to debit the Customer's account for any claim, return or adjustment related to the ECI, and the Customer agrees to indemnify and hold the Bank harmless from and against any claims, liabilities, costs and expenses (including attorneys' fees) resulting directly or indirectly from the Customer's deposit of the ECI.

3.15 <u>ATM Cards</u>. The Bank may issue one or more automated teller machine ("ATM") cards ("Cards") and personal identification numbers ("PINs") to Customer's employees or agents for use in initiating certain Account transactions at Bank owned ATMs.  Unless otherwise agreed by Bank, Customer agrees that Cards will be used only at ATMs owned by the Bank and Customer shall be  liable for any transactions and fees resulting from the use of such Cards. The Customer agrees that the types of transactions offered through the use of any Card may be limited by the Bank, in its sole discretion. The Bank may cancel any Card at any time and for any reason, and will notify Customer of such cancellation. The Customer agrees to obtain possession of and return to the Bank or destroy all cancelled Cards. If the Customer believes a Card or PIN has been lost or stolen, the Customer shall immediately contact the Bank's ATM call center. All ATM transactions are subject to verification.  Any deposit transaction through an ATM that is not made on a business day or made after the Bank's designated cut-off time will be processed on the Bank's next business day.

3.16 <u>Internet Gambling</u>. The Customer agrees not to conduct any transactions through the Account that are directly or indirectly related to unlawful Internet gambling, including the acceptance or receipt of any funds or deposits in connection therewith. The term "unlawful Internet gambling," as used in this section, shall have its meaning set forth in 12 C.F.R.  Section 233.2(bb).

**Section 4 of the Account Terms (Payment of Items) is hereby amended by adding the following provisions:**

4.5 <u>Cashing Items</u>. The Bank may, in its discretion, cash Items drawn on an Account when presented by the holder.  If a holder who is not a deposit customer of the Bank presents an Item drawn on the Account for cash, the Bank may refuse to cash the Item, or may charge the holder a fee for cashing the Item.

4.6 <u>Signatures</u>. If the Customer establishes an Account which purports to: (i) require two or more signatures on Items drawn on the Account, or (ii) limits the amount for which an Item can be issued, the Customer acknowledges that any such requirements are solely for the Customer's own internal control purposes. The Customer agrees that, provided that the Bank follows its usual and customary procedures for processing and paying Items, the Bank will not be liable for paying any Item (a) lacking the required number of signatures, or (b) in an amount exceeding the applicable limit.

4.7 <u>Fraudulent Items</u>. The Bank provides Services to which the Customer may subscribe, such as Positive Pay and Reverse Positive Pay, which are reasonably designed to prevent payment of unauthorized or altered Items. Customer agrees that failure to use such Services will constitute Customer negligence contributing to the making of an unauthorized signature or the alteration of an Item, and the Customer will assume the risk that Items paid against its Account may be unauthorized or altered. In that event, the Customer will be precluded from asserting any claims against the Bank for paying any unauthorized, altered, counterfeit or other fraudulent Items  The Bank shall not be required to re-credit Customer's Account or otherwise have any liability for paying such Items to the extent such Services would likely have prevented such loss.

4.8 <u>Obscured Endorsements</u>. The Customer assumes responsibility for losses that the Customer or the Bank may incur as the result of processing delays caused by the Customer's: (i) issuance of an Item in such a manner that information, marks or bands on the back of the Item obscure endorsements; or (ii) placement of an endorsement on the back of the Item which obscures other endorsements.

4.9 <u>Negotiation Outside of U.S.</u> If an Item is transferred or negotiated outside of the U.S. and is subsequently sent to the Bank for deposit, collection or payment in the U.S., the Customer shall be deemed to make, to the Bank, the transfer and presentment warranties under the Rules & Regulations, as if such Item were negotiated or otherwise transferred in the U.S.

4.10 <u>Stop Payments</u>. A stop payment Instruction from the Customer will be effective with respect to an Item if: (i) the Bank has a reasonable opportunity to act on such Instruction prior to its payment or encashment, which shall be at least one (1) full Business Day following the Business Day on which the Bank received the Instruction; and (ii) the Instruction is in the form required by the Bank, the information is complete and is delivered to the location designated by the Bank.  For purposes of this Section, "Business Day" means a day on which the Bank is generally open for business in the jurisdiction where the Account is maintained. Stop payment Instructions, unless otherwise provided, will be valid for one (1) year and will automatically renew up to six (6) additional years unless the Bank receives Customer's revocation of a stop payment Instruction.  The Customer may request, through the Bank's call center or other authorized representative, a non-renewable stop payment, which will be effective for a 180-day period. The Bank shall not be liable for any Item properly paid or cashed prior to the effective time of a stop payment request. The Customer acknowledges that a stop payment instruction does not limit or vary its obligation to pay the subject Item and, notwithstanding a stop payment instruction, the Bank may properly pay such an item to a person entitled to enforce it.

4.11 **Standard of Care.** Any Item issued by the Customer drawn on its Account shall be deemed to be endorsed in the name of the payee if: the Item is endorsed or deposited into an account in a name that is substantially similar to that of the payee; the payee is a fictitious person; the Customer was wrongfully or erroneously induced to issue the Item payable to the stated payee; the deposit of the item was accomplished by an employee entrusted with responsibility for the Item or person working in concert with such an employee; or the Customer or payee failed to act with ordinary care with respect to the Item. The Bank shall not be liable for any loss caused by the alteration or unauthorized signature or endorsement on any Item issued by the Customer, unless the Customer establishes that the Bank failed to handle the Item with ordinary care, and that such failure substantially contributed to the loss. If the Bank's failure to act with ordinary care substantially contributed to the loss on the item, the loss shall be allocated between the Customer and the Bank based upon the extent to which their respective failures to exercise ordinary care contributed to the loss. The Bank may process any Item by electronic means and is not required to inspect the Item payed by automated payment processing.

**Section 5 of the Account Terms (Funds Transfer Instructions) is amended by adding the following provisions:**

5.6 **Funds Transfer by Check.** If the Customer, through the Bank's funds transfer services, requests that payment be made by check, the Customer authorizes the Bank to debit the Customer's Account on receipt of the Instruction and to issue a check as agent for the Customer in accordance with the Instruction. If the Customer requests the Bank to place a stop payment on the check before the check has been presented for payment, such request must be clearly identified as a stop payment request, including the reference number given for the transaction, and it must be received by the Bank at a time and in a manner designated by the Bank from time to time. If the check is not presented for payment within one hundred eighty (180) days after issuance, the Bank may place a stop payment on the check and transfer the funds back to the Account.

5.7 **Credit Entries Received Through Automated Clearing House (ACH) System.** Credit given by the Bank to the Customer for an ACH credit entry shall be provisional, until the Bank receives final payment. If the Bank does not receive final payment, the Bank may revoke the provisional credit and charge back the amount of the entry to the Account, or obtain a refund from the Customer, in which case the originator of the credit entry shall not be deemed to have paid the Customer the amount of such entry. The Bank shall not be obligated to notify the Customer of the receipt of a payment order or ACH entry for credit or debit to an Account.

5.8 **Same Day Amend and Cancel.** The Customer may subscribe to a service to enable same day amendment and cancellation of payment orders. All cancellation or amendment messages sent to the Bank shall be in the format specified by the Bank and must be received by the Bank no later than such time as may be established by the Bank upon notice to the Customer.

5.9 **Priority/Timed.** The Bank will determine the order in which it processes payment orders. If the Customer's payment order bears the codeword "PRIORITY" in such field as the Bank specifies, the Bank will use reasonable efforts to execute such payment order in advance of the Customer's standard payment orders. If the Customer's payment order bears the codeword "TIMED" in such field as the Bank specifies, the Bank will endeavor, but will have no obligation, to process the payment order by the time requested by the Customer within the payment order. For "TIMED" payment orders, funds in the Customer's Account are reserved by the Bank on the payment value date until processed. For the avoidance of doubt, all payment orders are subject to the Bank's acceptance, and the Bank will have no liability for failure to process payments by the time requested by the Customer.

5.10 **Real Time Payments.** Payments received through the Real Time Payment System operated by The Clearing House Payments Company LLC ("RTP System") will be processed pursuant to the RTP Operating Rules and any other applicable Rules & Regulations, to which the Customer agrees to be bound. If the Customer receives a payment through the RTP System on behalf of another person or entity, such other person or entity must be a resident of, or otherwise domiciled in the United States. In the further transmission of any such payments, the Customer agrees to comply with all applicable US laws and regulations, including, without limitation, those administered by the US Office of Foreign Assets Control.

5.11 **Messaging Standards.** To the extent there is any inconsistency between a fund transfer financial messaging standard and the governing law set forth in Section 16.1, the governing law set forth in Section 16.1 will govern.

**Section 7 of the Account Terms (Account Statements) is amended by adding the following provisions:**

7.2 **Images Sufficient.** The Customer acknowledges that Account Statements and images of paid Items are available to it and are sufficient to allow it to make all examinations and reports of Account activity including errors, as required in this Section. The Bank is not required to return paid or cancelled Items with the Account Statement.

7.3 **Obligation to Inspect.** The Customer must notify the Bank in writing, within a reasonable period of time not to exceed 60 calendar days of the date of an Account Statement, of (i) the failure to receive the Account Statement, or (ii) any errors, unauthorized payments, charges, alterations, discrepancies or irregularities reported on the Account Statement ("Errors"). The Customer must notify the Bank in writing of any unauthorized, improper, or missing endorsements within six (6) months after the date of the Account Statement on which the Item was reported to have been paid. The Customer must provide the Bank with all information necessary for the Bank to investigate any claim based upon an endorsement or Error, and must provide all supporting evidence that the Bank requests. Failure to comply with the time frames set forth above shall be deemed conclusive proof that the Customer failed to exercise reasonable care and promptness in examining Account Statements and paid Items or identifying Errors and that such failure may cause subsequent loss to the Bank. If the Customer fails to comply with the notice requirements set forth above, the Bank is not required to reimburse the Customer for the Customer's claimed loss and the Customer shall be barred from bringing any action against the Bank.

7.4 <u>Inactive Accounts</u>. If an Account has no activity other than charges assessed or interest credited by the Bank for a period of six (6) or more months, the Bank is not required to provide an Account statement until additional activity occurs in the Account. If an Account has no activity other than charges assessed or interest credited by the Bank for a period of twelve (12) or more months, the Customer may be unable to access the Account until the Customer contacts the Bank.

7.5 <u>Advice Services</u>. The Customer may subscribe to Bank services for the delivery of account-related information ("Advices") to a party designated by the Customer, including information relating to credits and debits to a Customer account, and the return or rejection of certain payments. Advices may be sent via SWIFT, electronic mail, facsimile transmission, ordinary mail, telephone, through internet sites, or as otherwise agreed by the parties. The Customer is responsible for maintaining the accuracy of the information that is required for delivery of Advices, including the address, telephone and/or facsimile number of the recipient and, if applicable, the messaging components and conditions that will trigger the transmission of the Advices.

**Section 15 of the Account Terms (Account Disclosures) is amended by adding the following provisions:**

15.5 <u>Withdrawal Limitations on Certain Account Types</u>. U.S. federal regulations limit the number of pre-authorized or automatic transfers or withdrawals or telephonic/electronic instructions (including check, draft, debit card or similar order payable to third parties) that can be made from a savings account (including a savings sub-account (as described below) and a money market deposit account) to a total of six (6) per calendar month or statement cycle or similar period. The Customer agrees to comply at all times with such restrictions. Exceeding these withdrawal limits may result in the Bank converting the savings account into a non-interest bearing demand deposit account, with any attendant changes in pricing and account terms and conditions. Further, the Bank is required by U.S. law to reserve the right to require at least seven (7) days' notice prior to a withdrawal from a savings account (including a savings sub-account) or an interest-bearing negotiable order of withdrawal account ("NOW Account").

15.6 <u>NOW Accounts</u>. The Customer, if eligible, may open a NOW Account. There is no limit on the number of withdrawals that the Customer may make from the demand deposit or NOW sub-account.

15.7 <u>Administrative Subaccounts</u>. The Bank is authorized, for regulatory reporting and internal accounting purposes, to divide an Account: (i) in the case of a demand deposit checking Account, into a non-interest bearing demand deposit sub-account and a non-interest bearing savings sub-account; (ii) in the case of a NOW Account, into an interest bearing NOW sub-account and an interest bearing savings sub-account, and, in both cases, to transfer funds on a daily basis between these sub-accounts in accordance with U.S. law at no cost to the Customer. The Bank will record the sub-accounts and any transfers between them on the Bank's books and records only. The sub-accounts and any transfers between them will not affect the Account number, balance requirement or use of the Account, except as described herein.

15.8 <u>Savings Subaccounts</u>. The Bank will establish a target balance for the Customer's demand deposit or NOW sub-account, which it may change at any time. To the extent funds in the demand deposit or NOW sub-account exceed the target balance, the excess will be transferred to the Customer's savings sub-account, unless the maximum number of transfers from the savings sub-account for that calendar month or statement cycle have already occurred. If withdrawals from the demand deposit or NOW sub-account exceed the available balance in the demand deposit or NOW sub-account, funds from the Customer's savings sub-account will be transferred to the demand deposit or NOW sub-account up to the entire balance of available funds in the savings sub-account to cover the shortfall and to replenish any target balance that the Bank has established for the demand deposit or NOW sub-account. If a sixth transfer is needed during a calendar month or statement cycle, it will be for the entire balance in the Customer's savings sub-account, and such funds will remain in the demand deposit or NOW sub-account for the remainder of the calendar month or statement cycle.

15.9 <u>Branch Designation</u>. The Bank, for its administrative purposes may designate a branch of the Bank as the branch of record of an Account which may be different from the branch at which the Account is opened. This designation requires no action on the part of the Customer and will not change the Bank's operations, Services or customer support.

15.10 <u>No Fiduciary Relationship</u>. Bank's relationship with Customer concerning the Accounts is that of a debtor and creditor. No fiduciary, quasi-fiduciary or other special relationship exists between Bank and Customer or any third parties regarding the Accounts.

**Section 16 of the Account Terms (Governing Law) is amended by replacing Section 16.1 with the following provision:**

16.1 Except as otherwise agreed in writing by the Bank and the Customer, the rights and obligations of the Customer and the Bank in respect of each Account maintained in the U.S. shall be governed by and construed in accordance with the laws of the State of New York (without regard to its conflict of laws rules). Each of the Customer and the Bank irrevocably and unconditionally submits to the exclusive jurisdiction and venue of any State or Federal court sitting in the City of New York, New York over any action, suit, proceeding, claim or controversy arising out of or relating to the Account Terms which includes this Addendum. The rights and remedies of the Bank under this Addendum, the Account Terms, the Account Documentation, the Service Terms, and any other agreement by the Customer in favor of the Bank are in addition to the rights and remedies of the Bank under applicable law (as provided above in this Section), are cumulative and may be exercised successively or concurrently, and are retained by the Bank.

**Section 16 of the Account Terms (Governing Law) is amended by adding the following provision:**

16.4   In the event the Bank is required to remit funds to any state as abandoned property, the Account may be charged for fees in remitting funds to that state. In addition, the Bank may charge fees in connection with its handling of dormant funds and accounts.

**Section 17 of the Account Terms (Miscellaneous) is amended by adding the following provisions:**

17.15   When the Customer provides the Bank any information requested by the Bank under its "Know Your Customer" or Anti-Money Laundering or other compliance polices pertaining to any natural or other persons, the Customer represents and warrants to the Bank that the Customer has obtained that person's consent that the Bank may make continued use of that person's information in order for the Bank to discharge any of its responsibilities in connection with "Know Your Customer" or Anti-Money Laundering, or other compliance purposes.

17.16   <u>Beneficial Ownership.</u> Customer agrees to adhere to the FinCEN Customer Due Diligence final rule which requires certain entities to provide and certify beneficial ownership information to the Bank at 10% and provide information on a controller when opening a new USD account. The Bank is required to collect and validate certain information (e.g. Name, Address, DOB, SSN or Passport # for non US individuals) for new accounts impacted by the rule. If an entity is exempt from rule, the Bank may require documentation to support the exemption.

17.17   <u>Payable Through Accounts</u>. If the Customer is a bank or financial institution and is not organized under the laws of the U.S., it shall not permit its customers to conduct banking transactions in the U.S. through the Customer's Account, and shall not provide its customers with check stock, drafts, wire transfer capabilities or any other means which would enable its customers to draw on the Customer's Account. These types of arrangements are typically called "payable through accounts" and are prohibited under these Account Terms. The Customer acknowledges that the sale of U.S. dollar checks or drafts to third parties is prohibited without the express written approval of the Bank.

17.18   <u>No Advice.</u>  The Customer acknowledges and agrees that the Bank has not provided and will not provide any investment, tax or accounting advice or recommendation in relation to the Accounts or any investments made under any Service.

17.19   <u>ERISA Status</u>. The Customer will notify the Bank in writing, reasonably in advance of the Account opening, if any Accounts or monies it holds or places with the Bank are subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), together with all the rules promulgated thereunder, or Section 4975 of the Internal Revenue Code, together with all the rules promulgated thereunder. The Bank may, in its sole discretion and subject to such further conditions as it may impose, including, without limitation, execution of further documentation in form and manner acceptable to the Bank, permit the holding of such Accounts or deposits or receipt of funds.

17.20   <u>Additional Representation for ERISA Benefit Plans</u>.
(i) If the Customer is or represents a "benefit plan," as defined in Section 3(42) of ERISA, and U.S. Department of Labor Regulations Section 2510.3-101, as modified by Section 3(42) of ERISA (together, the "Plan Asset Rules" and each such benefit plan investor, a "Benefit Plan"), or is acting on behalf of one or more Benefit Plans, the Customer represents and warrants that:

  (1)  the Bank has not or will not provide advice with respect to the services obtained by the Benefit Plan.

  (2)  the Benefit Plan fiduciary (the "Plan Fiduciary") is independent of the Bank, and is not an individual acting for his or her own Individual Retirement Account, and such Plan Fiduciary is either (a) a bank as defined in Section 202 of the Investment Advisers Act of 1940 (the "Advisers Act"), or similar institution that is regulated and supervised and subject to periodic examination by a State or Federal agency; (b) an insurance carrier which is qualified under the laws of more than one state to perform the services of managing, acquiring or disposing of assets of a Benefit Plan; (c) an investment adviser registered under the Advisers Act or, if not registered as an investment adviser under the Advisers Act by reason of paragraph (a)(1) of Section 203A of the Advisers Act, is registered as an investment adviser under the laws of the state in which it maintains its principal office and place of business; (d) a broker-dealer registered under the Securities Exchange Act of 1934, as amended; or (e) has, and will at all times have, total assets of at least U.S. $50,000,000 under its management or control;

  (3)  the Plan Fiduciary is capable of evaluating investment risks independently, both in general and with respect to the Accounts and Services;

  (4)  the Plan Fiduciary is a "fiduciary" with respect to the Benefit Plan within the meaning of Section 3(21) of ERISA, Section 4975 of the Code, or both, and is responsible for exercising independent judgment in evaluating the receipt of Services by the Benefit Plan;

  (5)  the Bank has not exercised any authority to cause the Benefit Plan to agree to these Account Terms; and

  (6)  the Plan Fiduciary has been informed (a) that the Bank is not undertaking to provide impartial investment advice or to give advice in a fiduciary capacity in connection with the Services; and (b) of the existence and nature of the financial interests of the Bank, as disclosed in the Account Terms and Service Terms.

(ii) The representations and covenants in the above clauses are intended to comply with the U.S. Department of Labor's Reg. Sections 29 C.F.R. 2510.3-21(a) and (c)(1) as promulgated on April 8, 2016 (81 Fed. Reg. 20,997).  If these regulations are revoked or repealed, these representations shall be deemed no longer in effect.

**AVAILABILITY POLICY - FOR ACCOUNTS MAINTAINED IN THE U.S.**

The Bank's policy is to make funds available to the Customer on the same, next or second business day after the day of deposit depending on the type of deposit and when the deposit is made as described below. If the Customer will need the funds from a deposit immediately, the Customer should ask the Bank when the funds will be available.

A. **Determining the Day of a Deposit.** If a deposit is made to an account on a business day before the Bank's cutoff time established for that location (which will be no earlier than 2 p.m. local time), then the Bank will consider that day to be the day of deposit. However, if a deposit is made after the cutoff time or on a day that is not a business day, then the Bank will consider the deposit to have been made no later than the next business day. For determining the availability of deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. Availability with respect to any deposit will be determined by the location of the banking center or other facility where the deposit was received. For deposits made at the Bank's automated teller machines (ATMs) the cutoff time is 11 p.m. Eastern Time unless otherwise noted on the ATM screen.

B. **Same Day Availability.** Funds from the following deposits made at a banking center or at an ATM that do not require deposit envelopes will be available on the business day the Bank determines the deposit is made:

- Cash;
- Wire transfers; and
- Electronic direct deposits to an account.

C. **Next Day Availability.** Funds from the following deposits are available on the first business day after the business day the Bank determines the deposit is made:

- U.S. Treasury checks that are payable to the Customer;
- Checks drawn on a Bank affiliate that holds the applicable account (excluding a Controlled Disbursement site); and
- At least, the first $200 from a day's total deposits.

If the deposit is made in person to a Bank employee, funds from the following deposits are also available on the first business day after the business day the Bank determines the deposit is made:

- State and local government checks that are payable to the Customer, if a special deposit slip, available upon request at any Bank banking center is used;
- Cashier's, certified, and teller's checks that are payable to the Customer, if a special deposit slip, available upon request at any Bank banking center, is used; and
- Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders, if these items are payable to the Customer.

If a special deposit slip is not used, availability of funds from these deposits will follow the schedule identified in the Availability of Other Check Deposits section below.

D. **Availability of Other Check Deposits.** Generally, funds from all other deposits of checks drawn on banks (as defined in Federal Reserve Regulation CC) will be available no later than the second business day after the day of deposit. Checks that require special handling may receive delayed availability. The amount of funds available to the Customer will be reduced by the amount of any deposited check that is returned unpaid. If the Bank reprocesses the check, the funds will become available no later than the second business day after the business day in which the check is reprocessed.

E. **Longer Delays May Apply.** In some cases the Bank may not make all of the funds that are deposited by check available. Depending on the type of check deposited, funds may not be available as set forth above. However, the first $200 of the aggregate deposit will be available on the first business day after the day of deposit.

If the Bank is not going to make all of the funds from a deposit available at the times shown above, it will notify the Customer and specify when the funds will be available. If a deposit is not made directly to a Bank employee, or if the Bank decides to take this action after the Customer has left the premises, the Bank will mail or otherwise send the notice to the Customer by the business day after the day of deposit.

Funds deposited by check may be delayed for a longer period under the following circumstances:

- The Bank believes a deposited check will not be paid;
- Deposited checks for all of the Customer's accounts total more than $5,000 in any one day;
- The Customer redeposited a check that has been returned unpaid;
- The Customer has overdrawn one or more of its accounts repeatedly in the last six months; or
- There is an emergency, such as failure of communications or computer equipment.

In such circumstances, funds will generally be available no later than the seventh business day after the day of deposit. Inclement weather or transportation problems may lead to additional delays under certain availability schedules. Customer may have specific availability schedules related to a banking service.

**F.**  **Special Rules for New Accounts.**  If the account is a new account, the following special rules may apply during the first thirty days the account is open:

- Funds from deposits of the first $5,000 of that day's total deposits of cashier's, certified, teller's, traveler's and federal, state and local government checks payable to the Customer will be available on the first business day after the day of deposit. The excess over $5,000 will be available no later than the ninth business day after the day of deposit. If the deposit of checks (other than U.S. Treasury checks) is not made in person to one of the Bank's employees, the first $5,000 may not be made available until the second business day after the day of deposit; and

- Funds from all other check deposits will be made available no later than the fifteenth business day after the day of deposit.

**G.**  **Large Dollar Deposits.**  The U.S. Federal Reserve Banks will not forward process any Item over $99,999,999.99 and considers such Items as "non-cash items." Such Items should not be deposited in the Account.  If Customer does deposit such an Item, the Bank may refuse to process such Item or handle it as a collection Item. If handled as a collection Item, Customer credit and availability will be deferred accordingly.

This Availability Policy and availability schedules may be changed without notice.

© 2018 JPMorgan Chase & Co.  All rights reserved.                                         JPMorgan Chase Bank, N.A.  Member FDIC.