# Attachment 4 to the Declaration of Dan Wilkening

# Account Terms

V1.3_05_24_13

## INTRODUCTION

This document (the "Account Terms"), contains the general terms, conditions and other disclosures for the accounts and services selected by the Customer and constitutes an agreement between the Bank and the Customer. References to "the Bank", when used in the Account Terms, shall mean JPMorgan Chase Bank, N.A., and any of its affiliates or subsidiaries. References to the "Customer" in the Account Terms mean the governmental, nonprofit, or business entity to which the Bank, as an independent contractor, provides accounts and services. All accounts subject to the Account Terms are, regardless of their location, referred to in this document as "Accounts". The Account Terms may be supplemented or amended by existing or future agreements, terms, conditions and notices, including, but not limited to any terms contained in an account application, country addendum, signature card or similar document for an Account or arrangements regarding specific types of Accounts or services ("Services") offered by the Bank, as described herein or which by their terms ("Service Terms") are subject to the Account Terms. By signing the signature card, account application or similar document or by using or continuing to use any of the Accounts or Services, the Customer agrees to the Account Terms and such supplements, amendments, agreements, terms, conditions, notices or Service Terms, as applicable.

The Accounts established with the Bank are subject to the Account Terms and relevant Account documentation, which shall include jurisdiction specific provisions set forth in an account application or country-specific addendum for the jurisdiction in which the Accounts are held (collectively, "Account Documentation"). The Customer shall not transfer any of its rights and obligations in an Account or with respect to a Service, or create any form of security interest over such rights and obligations in an Account, without the prior written consent of the Bank.

The Account Terms or Service Terms may vary applicable law or regulation to the maximum extent permitted under any such law or regulation. Any provision of applicable law or regulation that cannot be varied shall supersede any conflicting term of the Account Terms or Service Terms.

1. **Authorized Persons.**

1.1   The Bank is authorized to rely upon any document that indicates the person authorized to act on behalf of the Customer ("Authorized Person") with respect to the Accounts and Services, until the authority for such Authorized Person is withdrawn by the Customer upon written notice to the Bank, and the Bank has had a reasonable opportunity to act on the termination instruction. The Customer will provide specimen signatures of such Authorized Person to the Bank in the manner requested by the Bank.

1.2   Each Authorized Person, subject to any written limitation provided by the Customer and received and accepted by the Bank, is authorized on behalf of the Customer to: open, operate and close Accounts; overdraw Accounts as permitted by the Bank; appoint and remove Authorized Persons; execute or otherwise agree to any form of agreement relating to the Accounts or Services, including, without limitation, Account Documentation; execute guarantees, indemnities or other undertakings to the Bank in relation to guarantees, letters of credit or other financial transactions, or in relation to missing documents; draw, accept, endorse or discount checks, drafts, bills of exchange, notes and other financial instruments ("Items"); receive materials related to security procedures; and give instructions ("Instructions"), including, without limitation, requests and payment orders, by means other than the signing of an Item, with respect to any Account transaction. Without limitation, such Instructions may be given singly or otherwise regarding: (i) the payment, transfer or withdrawal of funds by wire, computer or other electronic means, or otherwise; (ii) money, credits, items or property at any time held by the Bank for account of the Customer; or (iii) any other transaction of the Customer with the Bank.

1.3   If the Customer provides the Bank with facsimile signature specimens, or if the Customer issues Items with a facsimile signature on one or more occasions, the Bank is authorized to pay Items signed by facsimile signature (including, but not limited to, computer generated signatures) if the actual or purported facsimile signature, regardless of how or by whom affixed, resembles the specimens filed with the Bank by the Customer, or resembles a specimen facsimile signature otherwise employed for the Customer's benefit.

1.4   The Customer represents that, prior to submitting any document or information, including through any electronic transmission, which designates the persons authorized to act on the Customer's behalf, including as a user of the Bank's electronic access systems, the Customer shall obtain from each individual referred to in such document all necessary consents to enable the Bank to process the data set out therein for the purposes of providing the Service.

2. **Instructions; Security Procedures.**

2.1   The Bank and the Customer may from time to time agree upon a security procedure to be followed by the Customer upon the issuance of an Instruction and/or by the Bank upon the receipt of an Instruction, so as to enable the Bank to verify that such Instruction is effective as that of the Customer. A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, call back procedures or similar security devices. It is understood that such security procedure is designed to verify the authenticity of, and not to detect errors in, Instructions. The Customer agrees to safeguard such security procedure and to make it available only to persons duly authorized. Any Instruction, the authenticity of which has been verified through such security procedure, shall be effective as that of the Customer, whether or not authorized. An authenticated SWIFT or host-to-host (secure communications channel for data transfer) message issued to the Bank in the name of the Customer shall be deemed to have been given by an Authorized Person. The Customer shall be bound by and adhere to the security procedures for use of the Service advised to it in writing or electronically by the Bank, as may be revised from time to time upon notice to the Customer.

2.2 If the Customer, other than with respect to security procedures, chooses to confirm an Instruction, any confirmation must be clearly marked as such, and, if there is any discrepancy between an Instruction and a confirmation, the terms of the Instruction shall prevail. Subject to Section 5.6, the Bank may, at its option, use any means to confirm or clarify any request or Instruction, even if any agreed security procedure appears to have been followed. The Bank is not obligated to confirm any Instructions. If the Bank is not satisfied with any confirmation or clarification, it may decline to honor the Instruction.

2.3 This Section 2.3 shall govern arrangements where the Customer authorizes the Bank to allow a third party (a "Third Party") to access and provide Instructions against an Account, including, without limitation, to initiate payments and transfers against an Account. The Customer may request that the Bank provide access to an Account to a Third Party by submitting an access request in a form acceptable to the Bank (an "Access Request").

   (a) The Customer confirms that the Third Party, as set forth in the Access Request, is authorized by the Customer to issue Instructions to the Bank and to access and receive balance and transaction information (including without limitation account statements, information reporting and transaction advices) in relation to an Account via any method of communication, including but not limited to the Bank's electronic channels, facsimile transmission, in writing, by telephone and SWIFT (each a "Delivery Method").

   (b) Subject to the Third Party's completion of appropriate documentation (as may be required by the Bank), the Third Party may issue Instructions and access the Account as contemplated hereunder. The Bank is authorized to act upon any Instruction that it receives from the Third Party on behalf of the Customer, regardless of the identity of the individual transmitting the Instruction and without any further authority from or reference to the Customer, provided that the Instruction is verified pursuant to the agreed upon security procedures, and notwithstanding that the Instruction may result in an overdraft of an Account. The Customer acknowledges that the Bank is authorized to act upon any Instructions purported to be given by any signatory of the Third Party who has been nominated by the Third Party in a form acceptable to the Bank, and such signatory of the Third Party shall be deemed an Authorized Person with respect to the provisions of these Account Terms relating to the use of Accounts and the giving of Instructions with respect to the Accounts. The Bank is authorized to act upon any Instructions received via any of the SWIFT BIC codes specified in an Access Request whether or not such SWIFT BIC codes are associated with the Customer or the Third Party.

   (c) Instructions given by the Third Party with respect to an Account pursuant to the terms of this Section 2.3 shall be deemed to be Instructions or communications given on behalf of the Customer for all purposes of these Account Terms.

   (d) The Customer may revoke an Access Request at any time by giving the Bank written notice of such revocation. The notice of revocation shall be sent to the address of the Bank officer or service representative managing the Account or to any other address notified by the Bank to the Customer from time to time. The Bank shall have a reasonable time to act on any notice received.

3. Deposits.

3.1 All Items deposited or cashed are received for collection only, and are received subject to final payment. The Bank may agree with other banks and clearing houses to vary procedures regarding the collection or return of Items, and deadlines to the extent permitted by applicable law or practice. The Bank chooses the method of collecting Items and may use other banks in the process. The Bank will present Items in accordance with the custom and practice of the jurisdiction in which the Items are collected. The Bank is not responsible for actions taken by other banks, nor for the loss or destruction of any Item in the possession of other banks or in transit. The Customer agrees to use reasonable efforts to assist the Bank in locating or obtaining replacements of Items lost while in the Bank's possession.

3.2 Credits and deposits to an Account will be available in accordance with the Bank's availability policy and in accordance with applicable laws. If the Bank credits an Account: (i) in contemplation of receiving funds for the Customer's credit and those funds are not actually received by the Bank, or (ii) in reliance on a transaction which is subsequently returned, reversed, set aside or revoked, or if the Bank does not receive funds for the Customer's credit for value on the date advised by or on behalf of the Customer, or if final settlement is not received by the Bank for any reason, then the Bank shall be entitled to debit any Account of the Customer with the amount previously credited and/or with any other charges incurred, even if doing so creates or increases an overdraft.

3.3 If an Item is processed by the Bank on a collection basis, the Bank may defer credit or payment for a reasonable time, in accordance with its practices, without dishonor; and the Bank shall not be obligated thereon until it has remitted final payment.

4. Payment of Items.

4.1 The Bank is authorized to pay any Item drawn on the Account, in accordance with the Bank's usual procedures, including, without limitation, any Item that purports to be a substitute check. The Bank is authorized to debit the Account on which the Item is drawn on the day the Item is presented, certified or accepted, or at such earlier time that the Bank receives notice by electronic or other means that an Item drawn on an Account has been deposited for collection. The Bank may determine Account balances in order to decide whether to dishonor an Item for insufficient funds at any time between receiving such presentment or notice and the time of the return of the Item, and need make no more than one such determination.

4.2 The Bank is authorized to pay all Items presented to it or cashed at the Bank, regardless of amount and without inquiry as to the circumstances of issue, negotiation or endorsement or as to the disposition of proceeds, even if drawn, endorsed or payable to cash, bearer or the order of the signer or any Authorized Person or to a lender in payment of that individual's obligations.

4.3 The Customer shall immediately notify the Bank if it becomes aware that any Items (whether completed or blank) are lost or stolen. The Customer shall not use its Account to allow any third party to issue checks or otherwise use the Account unless specifically agreed to in writing by the Bank. The Customer shall not issue Items that are post-dated, and the Bank shall not be liable for any damages caused by premature payment or certification of a post-dated Item. Further, the Customer shall not put any condition, restriction or legend on any Item, and the Bank is not required to comply with any such condition, restriction or legend.

4.4 The Bank may process any Item by electronic means. All Items the Customer draws against any Account must comply with the Bank's check specifications and image standards, published from time to time, and industry standards. The Bank shall not be liable for damages or losses due to any delay or failure in procuring, collecting or paying Items not conforming to such specifications or standards, except to the extent such losses or damages are the direct result of the Bank's gross negligence or willful misconduct.

## 5. Funds Transfer Instructions.

5.1 The Customer may issue funds transfer Instructions against Accounts, subject to the Bank's acceptance. Funds transfer Instructions will be received, processed and transmitted only on the Bank's funds transfer business days, and within the Bank's established cut-off hours on such days. Communications requesting cancellation or amendment of payment orders must be received at a time and in a manner affording the Bank a reasonable opportunity to act on the communication. The Customer may reverse, amend, cancel or revoke any Instructions only with the consent of the Bank and the beneficiary's bank. The Bank will debit the Account for the amount of each funds transfer Instruction accepted by the Bank, and the Customer authorizes the Bank to debit the Account for all fees associated with any funds transfer Instruction, including debit and credit processing charges, or to otherwise deduct such fees from the amount of the payment order. In processing the funds transfer, other banks may deduct fees from the payment order issued to them. No restrictions upon the acceptance of funds transfer Instructions by the Bank or upon the Accounts that the Bank may debit shall be binding unless agreed to by the Bank in writing. The Bank shall not be required to inquire into the circumstances of any transaction.

5.2 Notwithstanding any Instructions by the Customer to the contrary, the Bank reserves the right to use any funds transfer system and any intermediary bank in the execution of any funds transfer Instruction and may otherwise use any means of executing the funds transfer Instruction which the Bank deems reasonable in the circumstances.

5.3 In connection with any funds transfer, the Bank and other financial institutions may rely upon the identifying number of the beneficiary, the beneficiary's bank or any intermediary bank included in the funds transfer. Also, the beneficiary's bank in the funds transfer Instruction may make payment on the basis of the identifying number even though it identifies a person different from the named beneficiary. Accordingly, the Customer shall be responsible for the consequences of any inconsistency between the name and identifying number, as instructed, of any party in such a funds transfer Instruction.

5.4 If the Bank accepts a funds transfer Instruction issued in (i) the Customer's name for payment in a currency (the "Non-Account Currency") other than the currency (the "Account Currency") of the Account or (ii) a Non-Account Currency where the Customer is the beneficiary, the Bank is authorized (unless otherwise agreed in writing and subject to any restrictions under applicable law or regulations) to enter into a foreign exchange transaction with the Customer to convert the relevant amount of Non-Account Currency into an amount of Account Currency at a foreign exchange rate and spread, and at such date and time, as the Bank determines in its discretion. In the case of an Instruction for payment in a Non Account Currency, the Bank is authorized to debit the Account for the converted amount of Account Currency. The applicable foreign exchange rate may differ from rates at which comparable transactions are entered into with other customers or the range of foreign exchange rates at which the Bank otherwise enters into foreign exchange transactions on the relevant date. Any such foreign exchange transaction will be between the Bank and the Customer as principals, and the Bank will not be acting as agent or fiduciary for the Customer.

Notwithstanding any prior action or course of dealing, subject to applicable law and regulations, the Bank has no obligation to cancel, reverse or otherwise buy back foreign currencies purchased by the Customer under a Service and the Bank makes no commitment to buy back currencies. The Customer acknowledges that it may not be able to sell back certain foreign currencies once purchased.

5.5 If the Customer elects to settle foreign exchange transactions by draft, the Customer acknowledges and agrees that in the event the draft is not presented for payment within one hundred eighty (180) calendar days from the date of issuance, the Bank, subject to any restrictions under applicable law or regulations, shall have the right to cancel the draft, and the Customer authorizes the Bank to reconvert the funds and re-credit the Customer's Account in- the Account Currency at a foreign exchange rate and spread, and at such date and time, as the Bank determines in its discretion. If the remitter is no longer a customer of the Bank, the Bank may, in its discretion, transfer balances to an unclaimed moneys account, or issue a cashier's check, sending it to the address of the Customer on the books and records of the Bank. In the event that the payee, holder or other third party claims against the Bank on a cancelled draft, the Customer agrees that it shall be responsible for any losses in connection with such cancellation, including any amount recredited or otherwise paid to the Customer. The Customer acknowledges and agrees that applicable service charges and expenses, including stop payment and periodic maintenance fees, may be charged to the Customer's Account or otherwise deducted from the amount to be paid to the Customer.

5.6 Unless the Customer and the Bank have agreed in writing to an alternate security procedure, the authenticity of oral or written (including those transmitted by facsimile) funds transfer Instructions may, at the Bank's discretion, be verified by telephonic call-back confirmation with an Authorized Person. The Customer agrees that this security procedure is commercially reasonable for such Instructions. The Customer further agrees to be bound by such funds transfer Instructions, whether or not authorized, if issued in the name of the Customer using such security procedure.

## 6. Interest; Fees; Taxes.

6.1 The Bank may pay interest on certain balances in interest-bearing Accounts at a rate determined by the Bank. The Bank may adjust interest paid (or principal, if permitted by law) and/or impose any charges on time deposit Accounts or fixed term Accounts from which withdrawals are made prior to maturity. Early withdrawal charges may require a reduction in the principal amount if the amount of accrued and unpaid interest on the deposit is less than the charge. Where the Bank makes a payment of interest to the Customer, the Bank is authorized to deduct or withhold any sum on account of any tax required, or which in its view is required, to be so deducted or withheld or for which it is in its view liable or accountable by law or practice of any relevant revenue authority of any jurisdiction and in each case in accordance with the Bank's usual and customary business practice and the Bank shall pay the net amount of the interest to the Customer.

6.2

(a) The Bank may impose, charge, pass-through and modify fees and/or charges for Accounts and Services provided by the Bank, including, but not limited to, transaction, maintenance, balance-deficiency, and service fees and other charges, including those levied by any governmental authority and taxes (collectively "Fees"). The Customer will pay all Fees. The Bank may from time to time receive commission, rebate or similar payments from other banks or third parties which may derive from a portion of the Fees ultimately borne by the Customer. The Bank may debit any Account for Fees, whether or not such debit may result in an overdraft of the Account.

(b) All payments (inclusive of, but not limited to, Fees and interest on overdrafts) from the Customer to the Bank shall be in full, without set-off or counterclaim, and free of any deduction or withholdings related to any tax or other claim, unless a deduction or withholding is required by law. If any deduction or withholding is required by law in respect of any payment due to the Bank, the Customer shall:

   (i) ensure that the deduction or withholding is made;

   (ii) pay the full amount deducted or withheld applicable authority in accordance with the applicable law;

   (iii) if the payment is to be made by the Customer, increase the payment in respect of which the deduction or withholding is required so that the net amount received by the Bank after the deduction or withholding shall be equal to the amount which the Bank would have been entitled to receive in the absence of any requirement to make any deduction or withholding; and

   (iv) deliver to the Bank, within thirty days after it has made the payment to the applicable authority, a certified copy of the original receipt issued by the authority, evidencing the payment to the authority of all amounts required to be deducted or withheld.

6.3 In addition to any Fees or other amounts due, the Customer will pay or reimburse the Bank for any taxes (including, but not limited to, value added taxes, sales taxes and similar taxes), levies, imposts, deductions, charges, stamp, transaction and other duties and withholdings (together with any related interest, penalties, fines, and expenses) in connection with the Account or Services (including payments or receipts to an Account) except if imposed on the overall net income of the Bank. The Customer will provide the Bank such documentation, declarations, certifications and information as the Bank may require in connection with taxation and warrants that such information is true and correct in every respect and shall immediately notify the Bank if any information requires updating or correction.

## 7. Account Statements.

The Bank will issue Account statements, confirmations, or advices ("Account Statements") at the frequency and in the manner advised to the Customer from time to time. The Customer is responsible for ensuring that an Authorized Person promptly examines each Account Statement and any accompanying Items which it receives or is made available to it by the Bank, and reporting any irregularities to the Bank in writing, including any claim of improper or unauthorized funds transfer activity. The Bank shall not be responsible for the Customer's reliance on balance, transaction or related information that is subsequently updated or corrected or for the accuracy or timeliness of information supplied by any third party to the Bank. Internet Account Statements or electronic Account Statements, if applicable, shall be deemed by the Customer and the Bank to be available to the Customer when the Account Statements are posted on the Internet and the Bank sends an electronic mail notification of availability to the Customer, or when the Bank sends the electronic Account Statement to the Customer. For purposes of determining when an Item is sent to the Customer, an image of an Item or information identifying the Item (i.e. Item number, amount and date of payment) is a sufficient substitute for the actual Item.

## 8. Overdrafts.

8.1 The Bank may debit the Account even though the debit may bring about or increase an overdraft. Unless otherwise agreed in writing, any overdraft shall be immediately due and payable by the Customer to the Bank. If the Bank permits an overdraft, the Bank is authorized to charge interest on the amount of the overdraft as long as the overdraft is outstanding, at the rate determined by the Bank, up to the maximum rate permitted by law at the time of the overdraft or at the specific rate agreed in writing between the Customer and the Bank. Subject to applicable laws and regulations, interest shall remain applicable to any negative balance in the Account notwithstanding closure of the Account and/or termination of these Account Terms. Whether or not the Bank pays an Item that brings about or increases an overdraft, the Bank may deduct the applicable fees and expenses from the Account without notice. Unless agreed in writing, the Bank is under no obligation to permit any overdraft or to continue to permit overdrafts after having permitted an overdraft, notwithstanding any prior action or course of dealing.

8.2 When Items and other debits to the Account are presented to the Bank for payment on the same day and there are insufficient available funds in the Account to pay all of these transactions, the Bank may choose the order in which it pays transactions, including, without limitation, the largest transaction first or any other order determined by the Bank, in its sole discretion.

## 9. Set Off.

The Bank may at any time, without prejudice to any other rights which it may have, and without prior notice or demand for payment, combine, consolidate or merge all or any of the Accounts of the Customer or may retain, apply or set off any money, deposits or balances held in, or standing to the credit of, any Account in any currency towards payment of any amount owing by the Customer to the Bank or any of its affiliates. The Bank shall be entitled to accelerate the maturity of any time deposit or fixed term deposit. For the purposes of this Section the Bank may effect currency conversions at such times or rates as it may think reasonable and may effect such transfers between any Accounts as it considers necessary. The Customer grants to the Bank a lien and security interest in any Accounts of the Customer at the Bank, in order to secure any and all obligations and liabilities of the Customer to the Bank or any of its affiliates.

## 10. Agents; Information.

The Customer authorizes the Bank to retain agents to perform data processing, collection and other services in connection with the Accounts and Services. The Customer authorizes the Bank and its affiliates to disclose Account Documentation, information with respect to accounts and services provided to the Customer, any banking transaction, or the Customer itself, if such disclosure is: (i) necessary or desirable, in the Bank's opinion, for the Bank to perform its duties or exercise its powers and rights; (ii) to a proposed assignee of the rights of the Bank; (iii) to a branch, affiliate, subsidiary, employee or agent of the Bank or to its auditors, regulators or legal advisers; (iv) to the auditors of the Customer; (v) to branches, subsidiaries and affiliates for compliance with "know your customer" requirements for purposes of providing products and services to the Customer; or (vi) permitted or required by applicable law, regardless of whether the disclosure is made in the country in which the Customer resides, in which the Account is maintained, or in which the transaction is conducted. For the avoidance of doubt, the Bank may disclose, or may instruct its affiliates to disclose, such documentation and information in accordance with the terms set out herein. The Customer agrees that such disclosures by the Bank and its affiliates may be transmitted across national boundaries and through networks, including those owned by third parties.

## 11. Liability Limitation; Force Majeure.

11.1 The Bank, its agents, employees, officers and directors, shall not be liable for any damage, loss, expense or liability of any nature which the Customer may suffer or incur, except to the extent of direct losses or expenses attributable to the gross negligence or willful misconduct of the Bank, its agents, employees, officers or directors. The Bank, its agents, employees, officers and directors shall not, in any event, be liable for indirect, special, consequential or punitive loss or damage of any kind (including, but not limited to lost profits), whether or not foreseeable, even if the Bank, its agents, employees, officers or directors have been advised of the likelihood of such loss or damage, and regardless of whether the claim for loss or damage is made in negligence, gross negligence, for breach of contract or otherwise; provided, however, that the foregoing shall not apply to the extent such loss or damage is caused by fraud on the part of the Bank, its agents, employees, officers or directors.

11.2 Neither the Bank nor the Customer shall be liable for any loss or damage to the other for its failure to perform or delay in the performance of its obligation resulting from an act of God, act of governmental authority, de jure or de facto, legal constraint, war, terrorism, catastrophe, fire, flood or electrical, computer, mechanical or telecommunications failure, or failure of any agent or correspondent, or unavailability of a payment system, or any cause beyond its reasonable control.

## 12. Indemnity.

The Customer agrees to indemnify and hold the Bank, and its agents, employees, officers and directors, harmless from and against any and all claims, damages, demands, judgments, liabilities, losses, costs and expenses (including attorneys' fees) resulting directly or indirectly from: (i) the Bank's acceptance or execution of any request or direction, including, without limitation, Items and Instructions (a) issued in the name of an Authorized Person, (b) issued in accordance with the agreed upon security procedures or (c) on which the Bank is otherwise permitted to rely; (ii) the Bank's payment of any taxes, interest or penalty otherwise due from the Customer paid on the Customer's behalf, or for which the Bank has no responsibility under the Account Terms; or (iii) any action taken by the Bank in accordance with or as contemplated by Section 2.3 of these Account Terms.

## 13. Notices.

All Account Statements and notices may be sent to the Customer by ordinary mail, courier, facsimile transmission, electronic transmission (including but not limited to SWIFT communication), through internet sites, or by such other means as the Customer and the Bank agree upon from time to time, at the address of the Customer on the books and records of the Bank. Unless otherwise arranged, all notices to the Bank must be sent to the Bank officer or service representative managing the Account, and must be sent by ordinary mail, by courier, by facsimile transmission, by electronic transmission or by such other means as the Customer and the Bank agree upon from time to time. The Bank shall have a reasonable time to act on any notices received.

## 14. Termination.

Unless otherwise agreed, either the Bank or the Customer may close an Account or terminate a Service by giving the other party not less than thirty (30) calendar days' prior written notice of intent to close or terminate. Notwithstanding the foregoing, either party may terminate an Account or a Service upon written notice to the other party in the event of: (i) a breach of the Account Terms or Service Terms by the other party; (ii) the other party's inability to meet its debts as they become due, receivership, administration, liquidation, or voluntary or involuntary bankruptcy; or the institution of any proceeding therefor, any assignment for the benefit of the other party's creditors, or anything analogous to the foregoing in any applicable jurisdiction, or a determination in good faith by the terminating party that the financial or business condition of the other party has become impaired; (iii) a determination by the terminating party, in its sole opinion, that termination is necessary or required by law or regulation,

or as a result of a court or regulatory agency order or proceeding; or (iv) a good faith belief by the terminating party that the other party is engaged in activities that are inconsistent with the terminating party's policies. The Bank shall have a reasonable opportunity to act upon any termination request. The Bank may (but shall not be obliged to) complete all requests and Instructions received by it prior to receipt of the termination request, in addition to any request or Instruction accepted on the day termination is to become effective. Notwithstanding anything to the contrary in any Service Terms, upon the closing of an Account, all Services linked to such Account are simultaneously terminated (unless otherwise specifically agreed to by the parties) and the Bank's obligations in respect of such Account or Services will terminate. However, any such closing or termination shall not affect the Customer's liabilities to the Bank arising prior to, or on, such closing or termination, all of which shall continue in full force and effect. Interest on overdrafts as provided for in Section 8.1 of the Account Terms shall remain applicable to any negative balances on the Account after termination hereof. In the absence of Instructions from the Customer, the Bank may transfer balances to an unclaimed moneys account, or issue a cashier's check, sending it to the address of the Customer on the books and records of the Bank.

## 15. Account Disclosures.

15.1   The Bank may return or refuse to accept all or any part of a deposit or credit to an Account, at any time, and will not be liable to the Customer for doing so, even if such action causes outstanding Items to be dishonored and returned, or payment orders to be rejected. Refused deposits will be returned to the Customer.

15.2   The Bank may refuse to allow a withdrawal from any Account in certain cases including, but not limited to, cases where: (i) there is a dispute about the Account (unless a court or other competent authority has ordered the Bank to allow the withdrawal); (ii) a legal garnishment or attachment is served, Including, but not limited to, a levy, restraining notice or court order; (iii) the Account is being used as collateral to secure a debt; (iv) Account Documentation has not been presented; or (v) the Customer fails to pay a Bank loan or other debt or obligation to the Bank on time.

15.3   Any amount standing to the credit of any Account with the Bank is payable exclusively at a branch in the country at which the Account is held; however, payment may be suspended from time to time in order to comply with any law, regulation, governmental decree or similar order, in any jurisdiction, for the time period affecting the Bank, its officers, employees, affiliates, subsidiaries, agents or correspondents. The Customer acknowledges that deposits held in a branch of the Bank located outside the United States are not payable in the United States and: (i) are not insured by the Federal Deposit Insurance Corporation or any other United States governmental agency; (ii) are subject to cross-border risks; and (iii) have a lesser preference as compared to deposits held in the United States in the event of a liquidation of the Bank.

## 16. Governing Law.

16.1   The Account Terms, the relevant Account Documentation and the rights and obligations of the Customer and the Bank in respect of each Account shall be governed by and construed in accordance with the laws of the country in which the branch holding the relevant Account is located.

16.2   The Customer and the Bank hereby irrevocably waive all right to, and will not seek, trial by jury in any action, proceeding or counterclaim, of whatever type or nature, arising out of these Account Terms or the relationship established hereby. Any claim in connection with Accounts which are the subject of these Account Terms or any Services, unless a shorter period of time is expressly provided, must be brought against the Bank within two (2) years of the occurrence of the cause of action, except as prohibited by applicable law.

16.3   In relation to each Account, the courts of the country or state in which the branch of the Bank at which the relevant Account is held shall have exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the relevant Account Documentation and/or the relevant Account. This section is for the benefit of the Bank only and does not prevent the Bank from taking proceedings in the courts of any other country or state with jurisdiction including, to the extent allowed by law, concurrently in any number of countries or states.

## 17. Miscellaneous.

17.1   If the Account Terms, Account Documentation, including, without limitation, Service Terms, are translated into, or appear in a language other than English, the English language version shall control.

17.2   The term Bank shall include any successors of the Bank including, without limitation, an assignee or successors of JPMorgan Chase Bank, N.A. or any affiliate or subsidiary of such bank or any person who, under the laws of the jurisdiction of incorporation or domicile, has assumed the rights and obligations of the Bank, affiliate or subsidiary hereunder or to which under such laws the same have been transferred.

17.3   Any terms of any supplement, amendment, agreement, Service Terms or notice that are inconsistent with a provision of the Account Terms shall supersede the Account Terms' provision for purposes of the particular account or Service which is the subject thereof. The Account Terms supersede and replace any other account conditions previously sent to the Customer.

17.4   Section headings are for convenience only and shall not affect the meaning of the Account Terms. If any provision of the Account Terms shall be held to be illegal, invalid, or unenforceable the validity of the remaining portions of the Account Terms shall not be affected.

17.5   The Customer represents and warrants that it shall comply with all applicable laws and regulations. The Bank is required to act in accordance with Bank policies, the laws and regulations of various jurisdictions relating to the prevention of money laundering and the implementation of sanctions, including but not limited to regulations issued by the U.S. Office of Foreign Assets Control. The Bank is not obligated to execute

payment orders or effect any other transaction where the beneficiary or other payee is a person or entity with whom the Bank is prohibited from doing business by any law or regulation applicable to the Bank, or in any case where compliance would, in the Bank's opinion, conflict with applicable law or banking practice or its own policies and procedures. Where the Bank does not execute a payment order or effect a transaction for such reasons, the Bank may take any action required by any law or regulation applicable to the Bank including, without limitation, freezing or blocking funds. Transaction screening may result in delays in the posting of transactions and/or funds availability.

17.6  The Bank may change or update these Account Terms or impose other restrictions on the Accounts or Services, as the Bank deems necessary in the course of its business, at any time, by the sending of notice by means of ordinary mail or through electronic channels. Changes to the Account Terms which are required by law may be implemented immediately or as required by law. The Bank may waive any of these Account Terms, but such waiver shall apply only on that occasion. Such waiver shall not constitute a waiver of any other provision of the Account Terms or Account Documentation. Any such waiver shall not affect the Bank's right to enforce any of its rights with respect to other customers or to enforce any of its rights with respect to later transactions with Customer and is not sufficient to modify the terms and conditions of this Agreement.

17.7  To the extent that the Customer has or hereafter may acquire any immunity (including sovereign, crown or similar immunity) from jurisdiction of any court, suit or legal process (whether from service of notice, injunction, attachment, execution or enforcement of any judgment or otherwise), the Customer irrevocably waives and agrees not to claim such immunity.

17.8  The Customer agrees at its sole expense: (i) to advise each of its employees, officers, agents or other persons accessing any Service by or on behalf of Customer ("Users") of their obligations under the Account Terms or under any Service Terms or ancillary Service material, including, but not limited to, the obligation to refrain from using the Service via the Internet in the countries identified by the Bank; and (ii) to provide the Bank with all information reasonably necessary to setup and provide Services for the Customer, including, but not limited to, advising the Bank of the countries from which Users will access any Service via the Internet. Customer shall promptly provide the Bank with a notice of any claims it receives regarding a Service.

17.9  The Bank or the Customer, at its sole discretion, may make recordings and retain such recordings of telephone conversations between the Customer and the Bank.

17.10 All payment instructions, whether Items, payment orders or otherwise, are subject to applicable law and payment system rules.

17.11 The Bank may retain copies (paper, electronic or otherwise) of any documents or Items relating to the Accounts and Services in a form preserving an image of any such documents or Items, including signatures, or a regular business record and discard the original documents or Items. The Customer hereby waives any objection to the use of such records in lieu of their paper equivalents for any purpose and in any forum, venue or jurisdiction, including, without limitation, objections arising from the Bank's role or acquiescence in the destruction of the originals.

17.12 All intellectual property rights in or relating to a Service, including any trademarks, service marks, logos, and trade names used in conjunction with a Service are the property of the Bank or its licensors and are protected by applicable copyright, patent, trademark and other intellectual property law. Except as provided herein, the Customer shall not reproduce, transmit, sell, display, distribute, establish any hyperlink to, provide access to, modify, or commercially exploit in whole or in part any part of a Service, without the prior written consent of the Bank.

17.13 To assist in the fight against the funding of terrorism and money laundering activities, applicable law or regulations may require financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for the Customer: When the Customer opens an account, the Bank may ask for the Customer's name, address, date of birth (for individuals), and/or other information and documents that will allow the Bank to identify the Customer. The Customer agrees that the Bank also may request and obtain certain information from third parties regarding the Customer. For purposes of this provision, the Customer, to the extent required by law or regulation, shall include any signatory on an Account. If the Customer fails to provide or consent to the provision of any such information, the Bank may close any Account or discontinue providing any Service without further notice.

17.14 The Customer agrees that the Bank may deliver, make available and/or make accessible terms and conditions applicable to Accounts and Services to the Customer via electronic means and channels (including but not limited to by posting such terms on a Bank website). The Bank may request that the Customer "click" its approval of such terms. Subject to applicable law and regulations, the Customer agrees that the act of "clicking" its approval (or any similar act which has the same effect) with respect to any such terms will be evidence of Customer's acceptance of the applicable terms and conditions, to the same extent, and with the same force and effect, as if Customer had manually executed a written version of such terms and conditions.

18. Disputes over Account Funds.

The Bank may refuse to pay out any money from an Account until any dispute over the deposits or funds (including, without limitation, any dispute over what persons are authorized to represent or act for the Customer) has been resolved by a court, or by agreement of the parties that is documented to the Bank's satisfaction. The Bank may file an action in interpleader with respect to any money where the Bank has been notified of disputed claims to that money. If any person asserts that a dispute exists, the Bank is not required to determine whether that dispute has merit in order to refuse to pay funds or interplead the funds. The Customer agrees to reimburse the Bank for any expenses, including legal and attorneys' fees that the Bank incurs because of any such dispute.

19. Provisional Recredit.

In connection with any dispute regarding an Account, the Bank may choose to credit the Account pending completion of the Bank's investigation of the dispute. If the Bank determines that the Customer is not entitled to such credit, then, the Bank may reverse the provisional recredit to the Account, even if that reversal results in an overdraft.