# Attachment 5 to the Declaration of Dan Wilkening

# ADDENDUM TO ACCOUNT TERMS | United States of America

V1.3_06_27_13

This addendum ("Addendum") supplements the Bank's Account Terms and applies solely to Accounts maintained in the United States of America ("U.S.") and to Services provided in connection with such U.S. Accounts, regardless of the location where Account Services are executed or performed. Capitalized terms used in the Addendum, not otherwise defined, have the meanings set forth in the Account Terms. By using any Account maintained in the U.S., the Customer acknowledges receipt of, and agrees to be bound by the Account Terms and this Addendum, each as may be amended or supplemented from time to time.

The INTRODUCTION to the Account Terms is hereby supplemented with the following provision:

The Bank performs Account functions and Service activities in various locations, by various methods including electronic or automated means, and through various interbank and third party collection, payment and data arrangements, including those provided by the U.S. Federal Reserve Bank System, check truncation and image exchange systems, and collection/payment clearinghouses. These functions, services, arrangements and systems are subject to laws, federal regulations, banking system practices and procedures, operating circulars, interbank agreements, and clearinghouse and association rules (collectively, "Rules & Regulations" ) and the Uniform Commercial Code. Unless prohibited by applicable law, the Customer's and the Bank's respective rights and obligations arising from all such Account activities and Services shall be governed by the Uniform Commercial Code Official Text and Comments (excluding its choice of law rules) (the "UCC") applicable to funds transfers and the bank deposit, collection or payment of negotiable instruments and other items, as varied by the applicable Rules & Regulations, Account Terms and Service Terms.

Section 3 of the Account Terms (Deposits) is hereby supplemented with the following provisions:

3.4  The Bank may provide or make available upon request a receipt or similar document for certain deposits to the Customer's Account. However, the amount on such receipt or similar document is based solely on the deposit ticket. Credits for all deposits (whether or not accompanied by a deposit ticket), including bulk deposits, are subject to verification. Items deposited into an Account, handled for collection or exchanged for currency are received by the Bank as the Customer's collection agent, and are for collection only, subject to the Bank's collection of final payment thereon. The Bank reserves the right to make adjustments to the Account for any errors, including any errors appearing on the deposit ticket or occurring during processing or otherwise, but the Bank has no obligation to do so for *de minimis* discrepancies.

3.5  The Bank may handle items drawn on a non-U.S. bank or items payable in a foreign currency on a collection basis, not for deposit, even if the Bank has received the items as part of a deposit. The Customer may not receive provisional credit for such items, or if provisional credit has been given the Bank may revoke it. Credit for items payable in a foreign currency will be converted into U.S. dollars at a foreign exchange rate and spread, and at such date and time, as the Bank determines in its discretion.

3.6  The Customer must place its endorsement on the back of an Item only in the area within 1.5 inches from the trailing edge of the Item. The trailing edge of the Item is defined as the left-hand edge of the check looking at it from the front. If the Customer is authorized in writing to endorse Items on the Bank's behalf, the Customer agrees to comply with the endorsement standards of the Bank.

3.7  If the Customer encodes information on an Item, the Customer warrants to the Bank and to all other collecting and paying banks of that Item that it is properly encoded and the Customer will be liable for any loss related to any encoding error, including any loss due to delay in processing caused by the encoding error.

3.8  The Customer should not use carrier documents (Items placed inside envelopes) in either high-speed forward or return cash letters. The Customer shall be solely responsible for any delays, losses or claims resulting from its use of carrier documents in high-speed forward or return cash letters. If the payor bank, drawer or payee on any Item that was deposited to Customer's Account returns the Item to the Bank, or makes a claim based on an asserted unauthorized signature or endorsement or an asserted alteration, the Bank may accept that return or pay that claim and charge any Customer Account for all or any part of the amount of the Item, even if the claim is made after final payment of the item. If the Customer deposits or cashes an Item drawn on or by the Bank and the Item or any endorsement is asserted to be forged, unauthorized or altered, the Bank may charge back all or any part of the amount of the Item, even if the charge back is made after the final payment of the item, or creates an Account overdraft.

3.9  The Customer agrees that the Bank may collect any Item deposited to Customer's Account by electronic means, in which case the Bank has no duty to inspect such Item during the automated deposit and collection process.

3.10 The Bank may agree with other banks and clearing houses to vary procedures regarding the collection or return of Items, and to vary applicable deadlines, to the maximum extent permitted by applicable Rules & Regulations, the UCC or banking practice.

3.11 The Customer will not deposit any substitute checks (that are not returned Items) unless the Bank expressly agrees to accept such Items for deposit. In the event the Bank processes any substitute check deposits in the absence of such express agreement, the Customer agrees that such processing shall not be deemed to be the Bank's agreement to accept any substitute checks for deposit and Customer will be solely responsible for any loss or claim in connection with that deposit.

3.12 The Bank is not liable for any deposit made through the use of the Bank's night depositories until the Bank issues a deposit ticket or other receipt acknowledging the deposit. The Bank's count of the amount deposited in a night depository will be conclusive. The Customer is solely responsible for any loss incurred from the disappearance, theft, or loss of any envelope, bag, or money before the Bank verifies the contents of the deposit.

3.13 If the Customer deposits a remotely created check ("RCC"), as such term is defined in Federal Reserve Regulation CC, the Customer warrants to the Bank, with respect to each RCC, that the person on whose account the RCC is drawn, authorized the issuance of such RCC in the amount and to the payee stated on the RCC. The Customer authorizes the Bank to debit the Customer's account for any claim or return based upon an unauthorized RCC and the Customer agrees to indemnify and hold the Bank harmless from and against any claims, liabilities, costs and expenses (including attorneys' fees) resulting directly or indirectly from any breach of the foregoing warranty. All other Account and Service Terms governing an Item will apply to an RCC.

3.14 The Bank may issue one or more automated teller machine ("ATM") cards ("Cards") and personally identifiable numbers ("PINs") to Customer's employees or agents for use in initiating certain Account transactions at Bank owned ATMs. Unless otherwise agreed by Bank, Customer agrees to use and cause its employees and agents to use the Cards only at ATMs owned by the Bank and Customer shall be responsible for each Card and liable for any transactions and related fees initiated or charged upon using such Card. The Customer agrees that the types of transactions offered through the use of any Card may be limited by the Bank, in its sole discretion. The Bank has the right to cancel any Card at any time and for any reason, and will notify Customer of such cancellation. All ATM transactions are subject to verification. Any deposit transaction through an ATM that is not made on a business day or made after the Bank's designated cut-off time will be processed on the Bank's next business day. The Customer agrees to obtain possession and return to the Bank or destroy all cancelled Cards. If the Customer believes a Card or PIN has been lost or stolen, the Customer shall immediately contact the Bank's ATM call center.

3.15 The Bank strictly prohibits the use of any Account or Card to conduct transactions (including, without limitation, the acceptance or receipt of credit or other receipt of funds through an electronic funds transfer, or by check, draft or similar instrument, or the proceeds of any of the foregoing) that are related, directly or indirectly, to unlawful Internet gambling. The term "unlawful Internet gambling," as used in this section, shall have its meaning set forth in 12 C.F.R. Section Part 233, Section 233.2(bb). The Customer agrees not to conduct any transactions through the Account that directly or indirectly involve or are related to unlawful Internet gambling, including, without limitation, the acceptance or receipt of any funds or deposits in connection therewith.

**Section 4 of the Account Terms (Payment of Items) is hereby supplemented with the following provisions:**

4.5 The Bank may, in its discretion, cash Items drawn on an Account when presented by the holder. If a payee who is not a deposit customer of the Bank presents an Item drawn on the Account for cash, the Bank may refuse to cash the Item, or may charge the payee a fee if the Bank does cash the Item.

4.6 Requirements for two or more signatures on Items drawn on the Account or limits on the amount for which any an Item can be drawn are solely for the Customer's own internal control purposes and the Bank will not be liable for paying any Item (i) lacking the required number of signatures, or (ii) drawn in an amount exceeding the maximum limit assigned to the signer, provided the Bank followed its customary procedures when paying the Items.

4.7 The Bank offers the Customer Services reasonably designed to detect and/or deter check fraud and reduces the likelihood that a fraudulent, unauthorized, counterfeit or altered Item will be paid. Customer agrees that if it fails to use such Services, that failure will constitute Customer negligence contributing to the making of an unauthorized signature or payment of an altered Item, and the Customer will assume the risk that Items presented for payment against its Account may be forged or altered. In that event, Customer will be precluded from asserting any claims against the Bank for paying any unauthorized, altered, counterfeit or other fraudulent Items that such Service was designed to detect or deter, and the Bank shall not be required to re-credit Customer's Account or otherwise have any liability for paying such Items to the extent the Service would likely have prevented such loss. In the event the Bank receives or is presented with Items which appear to be duplicates of each other, the Bank may return one or more of such Items.

4.8 The Customer assumes all responsibility and liability for any claims or losses that the Customer or the Bank may suffer as a result of the Customer's: (i) issuance of an Item in such a manner that information, marks or bands on the back of the Item obscures endorsements; or (ii) placement of an endorsement on the back of the Item which obscures other endorsements; and which thereby causes a delay in the forward and/or return processing of the Item. The Bank retains the right to refuse to accept an Item for deposit if the back of the Item is obscured.

4.9 If an Item issued by the Customer is transferred or negotiated outside of the U.S. and is subsequently sent to the Bank for deposit, collection or payment in the U.S., the Customer shall be deemed to make, to the Bank, the transfer and presentment warranties under the UCC, as if such Item were negotiated or otherwise transferred in the U.S..

4.10 A stop payment Instruction from the Customer will be effective on an Item if: (i) the Bank receives the stop payment Instruction with a reasonable opportunity to act on such Instruction, which shall be at least one (1) full Business Day following the Business Day of the Bank's confirmed receipt of the Instructions at the applicable Bank location; (ii) the Instruction is in the form required by the Bank and the Information is complete; and (iii) the Item is not yet paid or cashed. For purposes of this Section, "Business Day" means a day on which the Bank is generally open for business in the jurisdiction where the Account is maintained. Stop payment Instructions on Items, unless otherwise provided, will be valid for one (1) year and will automatically renew up to six (6) additional years unless the Bank confirms receipt of the Customer's revocation of a stop payment Instruction. The Customer may request, through the Bank's call center or other authorized representative, a non-renewable stop payment, which will be effective for a 180-day period. The Bank shall not be liable for any Item properly paid or cashed prior to the

effective time of a stop payment request. The Bank may properly return any item which is the subject of a stop payment request. However, the Customer acknowledges that a stop payment instruction does not limit or vary its obligation to pay the subject item and, notwithstanding a stop payment instruction, the Bank may properly pay such an item to a person entitled to enforce it.

4.11 Any Item issued by the Customer drawn on its Account shall be deemed to be endorsed in the name of the payee if: the Item is endorsed or deposited into an account in a name that is substantially similar to that of the payee; the payee is a fictitious person; the Customer was wrongfully or erroneously induced to issue the Item payable to the stated payee; the deposit of the item was accomplished by an employee entrusted with responsibility for the Item or person working in concert with such an employee; or the Customer or payee failed to act with ordinary care with respect to the Item. The Bank shall not be liable for any loss arising from any such endorsed or deposited item, or for the loss caused by the alteration or unauthorized signature on any Item issued by the Customer, unless the Customer establishes that the Bank failed to handle the Item with ordinary care, and that such failure substantially contributed to the loss. If the Bank's failure to act with ordinary care substantially contributed to the loss on the item, the loss shall be allocated between the Customer and the Bank based upon their respective failure to exercise ordinary care which contributed to the loss. For purposes of this section, "employee" shall include Customer and its independent contractors and Third Parties, and their respective employees, delivery agents, officers, directors, attorneys, fiduciaries, administrators, service providers, and other agents.

4.12 The Bank may process any Item for payment from a Customer Account by electronic means, in which case, the Bank's exercise of ordinary care in payment of that item does not obligate the Bank to inspect the Item during the automated payment process.

Section 5 of the Account Terms (Funds Transfer Instructions) is hereby supplemented with the following provision:

5.7 Automated Clearing House ("ACH") entries will be subject to the rules of the National Automated Clearing House Association and any other applicable Rules & Regulations, to which the Customer agrees to be bound. Credit given by the Bank to the Customer for an ACH credit entry shall be provisional, until the Bank receives final payment. If the Bank does not receive final payment, the Bank may revoke the provisional credit and charge back the amount of the entry to the Account, or obtain a refund from the Customer, in which case the originator of the credit entry shall not be deemed to have paid the Customer the amount of such entry. The Bank shall not be obligated to notify the Customer of the receipt of a payment order or ACH entry for credit or debit to an Account.

Section 7 of the Account Terms (Account Statements) is hereby supplemented with the following provisions:

7.2 The Customer acknowledges that Account Statements and images of paid Items are available to it and are sufficient to allow it to make all inspections and reports of Account activity including errors, as required in this Section. The Bank is not required to return paid or cancelled Items with the Account Statement.

7.3 The Customer shall inspect each Account Statement and all payments and charges reported thereon, promptly upon receipt. The Customer must notify the Bank in writing of any unauthorized, improper, or missing endorsements within six (6) months after the date of the Account Statement on which that item was reported to have been paid. The Customer must notify the Bank in writing, within a reasonable period of time not to exceed 60 calendar days of the date of an Account Statement, of (i) the failure to receive the Account Statement, or (ii) of any errors, unauthorized payments, charges, alterations, discrepancies or irregularities reported on the Account Statement ("Errors"). The Customer must provide the Bank with all information necessary for the Bank to investigate any claim based upon an endorsement or Error, and must provide all supporting evidence that the Bank requests. Failure to comply within the time frames set forth above shall be deemed conclusive proof that the Customer failed to exercise reasonable care and promptness in examining Account Statements and paid Items or identifying Errors and that such failure may cause subsequent loss to the Bank. If the Customer fails to comply with the notice requirements set forth above, the Bank is not required to reimburse the Customer for the Customer's claimed loss and the Customer shall be barred from bringing any action against the Bank.

7.4 If an Account has no activity other than charges assessed or interest credited by the Bank for a period of at least six (6) months, the Bank is not required to provide an Account statement until the Account has additional activity. If an Account has no activity other than charges assessed or interest credited by the Bank for a period of at least twelve (12) months, the Customer may be unable to access the Account until appropriate contact is made between the Customer and the Bank.

Section 15 of the Account Terms (Account Disclosures) is hereby supplemented with the following provisions:

15.4 U.S. federal regulations limit the number of pre-authorized or automatic transfers or withdrawals or telephonic/electronic instructions (including check, draft, debit card or similar order payable to third parties) that can be made from a savings account (including a savings sub-account (as described below) and a money market deposit account) to a total of six (6) per calendar month or statement cycle or similar period. The Customer agrees to comply at all times with such restrictions. Exceeding these withdrawal limits may result in the Bank converting the savings account into a non-interest bearing demand deposit account, with any attendant changes in pricing and account terms and conditions. Further, the Bank is required by U.S. law to reserve the right to require at least seven (7) days notice prior to a withdrawal from a savings account (including a savings sub-account) or an interest-bearing negotiable order of withdrawal account ("NOW Account").

15.5 The Customer, if eligible, may open a NOW Account. There is no limit on the number of withdrawals that the Customer may make from the demand deposit or NOW sub-account.

15.6 The Bank is authorized, for regulatory reporting and internal accounting purposes, to divide an Account: (i) in the case of a demand deposit checking Account, into a non-interest bearing demand deposit sub-account and a non-interest bearing savings sub-account; (ii) in the case of a

NOW Account, into an interest bearing NOW sub-account and an interest bearing savings sub-account, and, in both cases, to transfer funds on a daily basis between these sub-accounts in accordance with U.S. law at no cost to the Customer. The Bank will record the sub-accounts and any transfers between them on the Bank's books and records only. The sub-accounts and any transfers between them will not affect the Account number, balance requirement or use of the Account, except as described herein.

15.7 The Bank will establish a target balance for the Customer's demand deposit or NOW sub-account, which it may change at any time. To the extent funds in the demand deposit or NOW sub-account exceed the target balance, the excess will be transferred to the Customer's savings sub-account, unless the maximum number of transfers from the savings sub-account for that calendar month or statement cycle have already occurred. If withdrawals from the demand deposit or NOW sub-account exceeds the available balance in the demand deposit or NOW sub-account, funds from the Customer's savings sub-account will be transferred to the demand deposit or NOW sub-account up to the entire balance of available funds in the savings sub-account to cover the shortfall and to replenish any target balance that the Bank has established for the demand deposit or NOW sub-account. If a sixth transfer is needed during a calendar month or statement cycle, it will be for the entire balance in the Customer's savings sub-account, and such funds will remain in the demand deposit or NOW sub-account for the remainder of the calendar month or statement cycle.

15.8 The Bank, for its administrative purposes may designate a branch of the Bank as the branch of record of an Account which may be different from the branch at which the Account is opened. This designation requires no action on the part of the Customer and will not change the Bank's operations, Services or customer support.

15.9 Bank's relationship with Customer concerning the Accounts is that of a debtor and creditor. No fiduciary, quasi-fiduciary or other special relationship exists between Bank and Customer or any third parties regarding the Accounts.

Section 16 of the Account Terms (Governing Law) is hereby supplemented with the following provisions:

16.1 Section 16.1 is replaced with the following provision: Subject to the UCC as modified by the Rules & Regulations, which shall control, and unless otherwise specifically provided in any Service Terms, the Account Terms, the Account Documentation, Service Terms and the rights and obligations of the Customer and the Bank in respect of each Customer Account maintained in the U.S. shall be governed by and construed in accordance with the laws of the State of New York, (without regard to its conflict of laws rules), incorporating general commercial bank practices applicable to the type of Account and Services provided to the Customer. The rights and remedies of the Bank under this Addendum, the Account Terms, the Account Documentation, the Service Terms, and any other agreement by the Customer in favor of the Bank are in addition to the rights and remedies of the Bank under applicable law (as provided above in this Section), are cumulative and may be exercised successively or concurrently, and are retained by the Bank.

16.4 In the event the Bank is required to remit funds to any state as abandoned property, the Account may be charged for fees in remitting funds to that state. In addition, the Bank may charge fees in connection with its handling of dormant funds and accounts. These charges are not refundable.

Section 17 of the Account Terms (Miscellaneous) is hereby supplemented with the following provision:

17.15 If the Customer is a bank or financial institution and is not organized under the laws of the U.S., it shall not permit its customers to conduct banking transactions in the U.S. through the Customer's Account, and shall not provide its customers with check stock, drafts, wire transfer capabilities or any other means by which its customers are able to draw on the Customer's Account. These types of arrangements are typically called "payable through accounts" and are prohibited under these Account Terms. The Customer acknowledges that the sale of U.S. dollar checks or drafts to third parties is explicitly prohibited without the express written approval of the Bank.

## AVAILABILITY POLICY - FOR ACCOUNTS MAINTAINED IN THE U.S.

The Bank's policy is to make funds available to the Customer on the same, next or second business day after the day of deposit depending on the type of deposit and when the deposit is made as described below. If the Customer will need the funds from a deposit immediately, the Customer should ask the Bank when the funds will be available.

A. Determining the Day of a Deposit. If a deposit is made to an account on a business day before the Bank's cutoff time established for that location (which will be no earlier than 2 p.m. local time), then the Bank will consider that day to be the day of deposit. However, if a deposit is made after the cutoff time or on a day that is not a business day, then the Bank will consider the deposit to have been made no later than the next business day. For determining the availability of deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. Availability with respect to any deposit will be determined by the location of the banking center or other facility where the deposit was received. For deposits made at the Bank's automated teller machines (ATMs) the cutoff time is 11 p.m. Eastern Time unless otherwise noted on the ATM screen.

B. Same Day Availability. Funds from the following deposits made at a banking center or at an ATM that do not require deposit envelopes will be available on the business day the Bank determines the deposit is made:
- Cash;
- Wire transfers; and

- Electronic direct deposits to an account.

C. **Next Day Availability.** Funds from the following deposits are available on the first business day after the business day the Bank determines the deposit is made:

- U.S. Treasury checks that are payable to the Customer;
- Checks drawn on a Bank affiliate that holds the applicable account (excluding a Controlled Disbursement site); and
- At least, the first $200 from a day's total deposits.

If the deposit is made in person to a Bank employee, funds from the following deposits are also available on the first business day after the business day the Bank determines the deposit is made:

- State and local government checks that are payable to the Customer, if a special deposit slip, available upon request at any Bank banking center is used;
- Cashier's, certified, and teller's checks that are payable to the Customer, if a special deposit slip, available upon request at any Bank banking center, is used; and
- Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders, if these items are payable to the Customer.

If a special deposit slip is not used, availability of funds from these deposits will follow the schedule identified in the Availability of Other Check Deposits section below.

D. **Availability of Other Check Deposits.** Generally, funds from all other deposits of checks drawn on banks (as defined in Federal Reserve Regulation CC) will be available no later than the second business day after the day of deposit. Checks that require special handling may receive delayed availability. The amount of funds available to the Customer will be reduced by the amount of any deposited check that is returned unpaid. If the Bank reprocesses the check, the funds will become available no later than the second business day after the business day in which the check is reprocessed.

E. **Longer Delays May Apply.** In some cases the Bank may not make all of the funds that are deposited by check available. Depending on the type of check deposited, funds may not be available as set forth above. However, the first $200 of the aggregate deposit will be available on the first business day after the day of deposit.

If the Bank is not going to make all of the funds from a deposit available at the times shown above, it will notify the Customer and specify when the funds will be available. If a deposit is not made directly to a Bank employee, or if the Bank decides to take this action after the Customer has left the premises, the Bank will mail or otherwise send the notice to the Customer by the business day after the day of deposit.
Funds deposited by check may be delayed for a longer period under the following circumstances:

- The Bank believes a deposited check will not be paid;
- Deposited checks for all of the Customer's accounts total more than $5,000 in any one day;
- The Customer redeposited a check that has been returned unpaid;
- The Customer has overdrawn one or more of its accounts repeatedly in the last six months; or
- There is an emergency, such as failure of communications or computer equipment.

In such circumstances, funds will generally be available no later than the seventh business day after the day of deposit. Inclement weather or transportation problems may lead to additional delays under certain availability schedules. Customer may have specific availability schedules related to a banking service.

F. **Special Rules for New Accounts.** If the account is a new account, the following special rules may apply during the first thirty days the account is open:

- Funds from deposits of the first $5,000 of that day's total deposits of cashier's, certified, teller's, traveler's and federal, state and local government checks will be available on the first business day after the day of deposit if the deposit meets certain conditions. For example, the checks must be payable to the Customer. The excess over $5,000 will be available no later than the ninth business day after the day of deposit. If the deposit of checks (other than U.S. Treasury checks) is not made in person to one of the Bank's employees, the first $5,000 may not be made available until the second business day after the day of deposit; and

- Funds from all other check deposits will be made available no later than the fifteen business day after the day of deposit.

This Availability Policy and availability schedules may be changed without notice.

© 2013 JPMorgan Chase & Co. All rights reserved.                    JPMorgan Chase Bank, N.A.  Member FDIC.