# Attachment 9 to the Declaration of Dan Wilkening

# CHASE

## Terms And Conditions For Business Accounts and Services

*Effective September 3, 1996*



© 1996 The Chase Manhattan Bank.
All rights reserved. Member FDIC.

03 9522° (11/96)

# THE CHASE MANHATTAN BANK TERMS AND CONDITIONS FOR BUSINESS ACCOUNTS AND SERVICES

## INTRODUCTION

Welcome to The Chase Manhattan Bank ("Chase"). We are pleased that you have decided to maintain a banking relationship with Chase. This booklet, together with the accompanying enclosures, contains the general rules, regulations, terms and conditions ("Terms and Conditions") and other disclosures for the accounts and services which you may select and constitutes an agreement between you and Chase. References to "you" or "your" in these Terms and Conditions means the agency, association, bank, corporation, municipality, partnership, organization or other entity to whom accounts and services are being provided by Chase. By signing an account application or signature cards, or by using or continuing to use these accounts and services, you agree to these Terms and Conditions.

These Terms and Conditions may be supplemented by existing or future written agreements, acknowledgements, terms and conditions and notices including, but not limited to, agreements or acknowledgements regarding specific type of accounts maintained with Chase, or specialized services offered by Chase as described herein or which by their terms are subject to these Terms and Conditions.

Any term of any such agreements, acknowledgements, terms and conditions or notices which is inconsistent with a provision of these Terms and Conditions shall supersede such provision for purposes of the particular account or service which is the subject thereof. These Terms and Conditions supersede and replace any other Terms and Conditions or Account Conditions previously sent to you.

Please contact your Chase representative if you need any additional information.

These Terms and Conditions are divided as follows:

**Part I** entitled *Deposit, Payment, Transfer and Withdrawal Services* describes Chase's terms and conditions for business accounts and services, as well as rights and obligations of you and Chase concerning such accounts and services.

**Part II** entitled *General Terms* describes Chase's general operating terms and conditions, rules and practices.

**Part III** entitled *Interest-Bearing Accounts* describes features of certain interest-bearing accounts.

**Part IV** entitled *Business Services* describes the Check Coverage and Business Cash Now℠ and Coverage Now services.

**Part V** entitled *Employee Benefit Plans FDIC Coverage* describes FDIC insurance coverage of Employee Benefit Plans.

## PART I: DEPOSIT, PAYMENT, TRANSFER AND WITHDRAWAL SERVICES

### 1. Credits

The types of credits that can be made to your account include, but are not limited to, deposits in the form of: i) checks (including Depository Transfer Checks and Preauthorized Checks), drafts, notes, acceptance or other instruments ("Items"); ii) cash; iii) transfers of funds from other accounts at Chase, other financial institutions or other parties; and iv) credit of the proceeds from the sale, redemption or payment of securities.

All funds received for credit to your account will be credited in the same type of funds that Chase receives unless Chase notifies you to the contrary. Chase reserves the right to refuse or to limit any deposit or credit.

### 2. Debits

The types of debits that can be made to your account include, but are not limited to: i) payments of Items; ii) withdrawals of cash; iii) transfer of funds to other accounts at Chase, other financial institutions or other parties; iv) debits to cover the purchase of securities, charges of fees, commissions and other expenses of any nature; and v) all account and service charges and fees.

Your account may be debited on the day an Item is presented, certified or accepted, or at such earlier time as notification is received by Chase by electronic or other means that an Item drawn on your account has been deposited for collection in another financial institution. A determination of your account balance for purposes of making a decision to dishonor an Item for insufficiency of available funds may be made at any time between the receipt of such presentment or notice and the time of return of the Item, and no more than one such determination need be made.

Chase is authorized to debit your account and honor and pay Items and transfer of funds without limitation of amount and without inquiry as to the circumstances of issue, negotiation or indorsement or as to the disposition of the proceeds thereof, even if drawn, indorsed or payable to cash, bearer or to the individual order of any signing officer, agent or other authorized signatory or tendered in payment of that individual's obligations.

Page 1

### 3. Facsimile Signature

Chase is authorized to honor and pay Items, whether preauthorized, signed by hand or by facsimile signature (including, but not limited to, computer generated signature). In the case of a facsimile signature (including, but not limited to, a computer generated signature) Chase is authorized to honor and pay Items that bear or purport to bear the facsimile signature of any person authorized to sign Items or deliver such instructions to Chase in such a manner, regardless of by whom or by what means the actual or purported facsimile signature may have been affixed to the Items or the instructions, if such facsimile signature resembles the facsimile signature specimen on file with Chase.

### 4. Telecopier Instructions

Chase may honor any instructions received by telecopier (facsimile), computer or other electronic transmissions if Chase reasonably believes such instructions to be genuine or if such instructions are received in accordance with any security procedures agreed upon by you and Chase or in accordance with any other agreements Chase may have with you regarding the acceptance of such instructions.

### 5. Final Payment of Items

Chase chooses the method of obtaining final payment of Items and may use other banks in the process. Chase is not responsible for actions taken by other banks, nor for the loss or destruction of any Items in the possession of other banks or in transit. Chase is not responsible for any act or failure to act that is reasonable under the circumstances or that is taken or omitted pursuant to these Terms and Conditions.

### 6. Collection Procedures

Chase may agree with other banks to vary procedures regarding the collection or return of Items, and deadlines to the extent permitted by applicable law.

### 7. Items Transferred Outside the United States

In the event you negotiate or otherwise transfer an Item outside of the United States which is subsequently sent to Chase for deposit, collection or payment in the United States, you shall be deemed to make the same warranties to Chase on transfer or presentment, pursuant to the Uniform Commercial Code, as if such Item were negotiated or otherwise transferred by you in the United States.

### 8. Responsibility for the Back of a Check

As a paying bank, and as a bank of first deposit, Chase is required by federal regulation to place its indorsement stamp in prescribed and restricted positions on the back of a check. Due to these prescribed and restricted indorsement positions, you shall avoid indorsement locations reserved for Chase and shall further place your indorsement on the back of a check in the area from 0.0 to 1.5 inches from the trailing edge of the check. The trailing edge of the check is defined as the left side of the check looking at it from the front. You assume all responsibility and liability for any claim or loss that you or Chase may suffer as a result of your: i) issuance of a check in such a manner that information, marks or bands on the back of the check obscure indorsements; or ii) placement of an indorsement on the back of the check which obscures other indorsements, and which thereby causes a delay in the forward processing and/or return processing of the check. Chase retains the right to refuse to accept a check for deposit when the back of the check is unreasonably obscured.

### 9. Postdated Items

You shall not date an Item later than the day it is written. Chase shall not be liable for: i) returning a postdated Item unpaid; ii) certifying or paying a postdated Item before its date; or iii) dishonoring and returning other Items drawn, accepted or made by you as a consequence of Chase having certified or paid a postdated Item.

### 10. Check Specifications

You agree that all Items used in connection with your accounts shall be produced in accordance with Chase's check printing specifications and industry standards. Chase shall not be responsible for damages or losses due to any delay or failure in processing, collecting or paying Items not conforming to such specifications or standards. Chase is authorized to debit your account, without further notice to you, for any damages, losses or expenses (including attorneys' fees) which Chase may incur as a result of the handling of Items not produced in accordance with such specifications or standards.

## 11. Encoding

If Chase accepts Items for deposit from you which you or your agent have encoded with MICR encoding, Chase may rely upon the accuracy and completeness of such encoding in processing the Items for collection or payment. You shall be solely responsible for any encoding errors or defects, including without limitation, amount errors, and shall indemnify and hold Chase harmless from and against any and all claims, damages, demands, judgments, liabilities, losses, settlements and expenses (including attorneys' fees) resulting directly or indirectly from such encoding.

## 12. Legends

Chase shall not be responsible for complying with conditions, restrictions or legends, pre-printed or otherwise, on Items drawn on your account.

## 13. Receipt of Notice of Claim

In the event that Chase receives notice concerning any claim of unauthorized, improper, or missing indorsement or drawer's signature or of alteration on or of any other claim of improper deposit or cashing of any Item deposited or cashed by you, Chase is authorized to charge any of your accounts in the amount of the claim or any portion thereof and hold such amount in a separate miscellaneous account pending resolution of the claim. In the event that Chase determines to charge any of your accounts, Chase shall, in a timely manner, notify you of such charges. Chase may exchange information with others concerning any claim of unauthorized, improper, or missing indorsement or alteration on any Item that is deposited or cashed by you.

## 14. Funds Transfer

You may issue payment orders orally, electronically or in writing, as arranged, against your accounts with Chase, subject to Chase's acceptance. Payment orders will be received and processed only on Chase's funds transfer business days, and within its established cut-off hours. Chase shall debit your account for the amount of each payment order accepted by Chase. No restrictions upon the acceptance of payment orders by Chase or upon the accounts which Chase may debit shall be binding unless agreed by Chase in writing. Communications requesting cancellation or amendment of payment orders must be received no later than 4:00 p.m. New York time on the Chase funds transfer business day preceding the Chase funds transfer business day Chase is to execute your payment order.

All payment orders, and communications requesting cancellation or amendment of payment orders, issued in your name, are subject to verification by Chase pursuant to a mutually agreed security procedure. Unless otherwise agreed, Chase may furnish confidential security procedure material to any person authorized on your account with Chase or to any other person Chase reasonably believes to be authorized to receive the information. You must safeguard any test keys, passwords, identification codes, mnemonics or other security or authentication measures and make them available only to persons who are authorized to give instructions using such measures.

In accepting a payment order issued in your name for payment outside the U.S. in a currency other than the U.S. dollar, Chase shall debit your account for the U.S. dollar equivalent of the amount of the foreign currency transferred at Chase's then prevailing rate of exchange or as otherwise agreed. In processing your funds transfers, other banks may deduct their fees from the payment orders issued to them. If the beneficiary's bank is instructed to pay in a currency other than its local currency, payment may be made by the beneficiary's bank at its rate of exchange on the date of its payment. In connection with each funds transfer, you shall be responsible for complying with all local currency restrictions and any other local law governing the transaction.

In accepting a payment order issued in your name, Chase may rely upon the identifying number (such as Fedwire routing number or account number) of the beneficiary, the beneficiary's bank or any intermediary bank, as instructed. Also, the beneficiary's bank in the payment order may make payment on the basis of the identifying number even though it identifies a person different from the named beneficiary. Accordingly, you shall be responsible for the consequences of any inconsistency between the name and identifying number, as instructed, of any party in such a payment order.

Chase may from time to time provide you with operational procedures or instructions regarding its funds transfer services with which you agree to comply.

### 15. Automated Clearing House Debits and Depository Transfer Checks

You may authorize the transfer of funds by Automated Clearing House ("ACH") debits by use of Depository Transfer Checks ("DTC(s)") or Preauthorized Checks. ACH debits and DTCs do not require your signature. DTCs and Preauthorized Checks may contain your name printed on the Item. Chase makes no warranty and is not liable for the accuracy, genuineness or authenticity of ACH debits, DTCs or Preauthorized Checks.

### 16. Receipt of ACH Entries

All ACH entries received for your account will be received by Chase subject to the rules of the National Automated Clearing House Association and any other applicable ACH rules. You agree to be bound by such ACH rules. Any credit given by Chase to you for an ACH entry shall be provisional until Chase receives final settlement. If Chase does not receive final settlement, Chase may revoke the provisional credit and charge back the amount to your account or obtain a refund from you, in which case the originator of the credit entry shall not be deemed to have paid you the amount of such entry. Chase shall not notify you of its receipt of ACH entries, or ACH-formatted entries transferred on its books, for your account.

### 17. Withdrawal Limitations

Chase may refuse to allow a withdrawal from any account in certain cases including, but not limited to, cases where: i) there is a dispute about the account (unless a court or other competent authority has ordered Chase to allow the withdrawal); ii) a legal garnishment or attachment is served, including, but not limited to, a levy, restraining notice or court order; iii) the account is being used as collateral to secure a debt; iv) any required documentation has not been presented; or v) you fail to repay a Chase loan or other debt or obligation to Chase on time.

### 18. Stop Payment Orders

Generally, you may request Chase to stop payment on an Item or ACH debit entry that you have issued or authorized. In order for you to give Chase a valid stop payment order on an Item or ACH debit, you must provide Chase with a reasonable opportunity to act on such a stop payment order. A stop payment order must be given by a person authorized on your account and must specify: i) the account number; ii) payee; iii) date; iv) precise amount; and v) Item number or similar identifying information for an ACH debit. A stop payment order will not be effective on an Item that has been certified, issued or paid by Chase. Where permitted by law, Chase may, in its sole discretion, stop payment on a certified Item or Chase official check if the certified Item or Chase official check has been lost, stolen or destroyed and upon your provision of an affidavit of fact and a surety bond or other form of security acceptable to Chase.

Chase shall not be liable for failure to effectuate a stop payment order if: i) you do not provide Chase with all the information enumerated above and with a reasonable opportunity to effectuate the stop payment order; ii) Chase determines, as permitted by law, not to stop payment on a certified Item or Chase official check; or iii) the Item in question is a postdated Item.

### 19. Periodic Statements and Advices

Upon receipt of your monthly or periodic statements ("Statements") (which may include a record of transactions and canceled Items), or advices, you shall exercise reasonable care and promptness in examining the Statement or advice. Statements and advices may be mailed or otherwise made available to you in paper format, by computer disk, by electronic transmission or by such other means as you and Chase agree upon from time to time. You shall notify Chase in writing within sixty (60) calendar days of the mailing or transmission of the Statement or advice, or from the time the Statement or advice is made available to you, except as provided in the following sentence, of any errors, discrepancies or irregularities, including, but not limited to, unauthorized or missing drawer's signature or alteration, unauthorized transfers or withdrawals of funds by wire or otherwise, or of the non-receipt of an expected Statement, advice or credit. You shall notify Chase, in writing, within six (6) months of the mailing of the Statement or advice, or from the time the Statement or advice is made available to you, that any indorsement was unauthorized, improper, or missing. You shall provide Chase with all information necessary for Chase to investigate the alleged error, discrepancy or irregularity. You shall bring no action and Chase will not be liable for any loss, damage or expense sustained by you unless you so

notify Chase in writing of any error, discrepancy or irregularity [...] in the Statement or advice within the time periods set forth herein. You shall not institute any legal proceeding or action against Chase for any claim which you may have regarding any such error, discrepancy or irregularity, including, but not limited to, unauthorized or missing drawer's signature or alteration, non-receipt of an expected Statement or advice or that any indorsement was unauthorized, improper, or missing unless: i) you shall have given the written notice as provided herein; and ii) such legal proceeding or action shall be commenced: a) within one (1) year after the date when such Statement or advice was mailed, transmitted or made available to you in the case of an unauthorized or missing drawer's signature or any alteration on the face or back of an Item; or b) within eighteen (18) months in the case of an unauthorized, improper, or missing indorsement.

## PART II: GENERAL TERMS

### 1. Authorized Individuals

Chase is authorized to rely upon any document provided by you to Chase which indicates the persons authorized to act on your behalf until the authority for any such person is withdrawn in writing. By using any service provided by Chase, you represent and warrant that the execution, delivery and performance by you of any agreement or acknowledgement covering such service have been duly authorized by necessary action and do not and will not violate any provision of law or your charter or by-laws, or result in the breach of or constitute a default under any other agreement or instrument by which you are bound or affected.

### 2. Retention of Agents

Chase may retain agents, including, but not limited to, Chase subsidiaries and affiliates to perform services for you. Chase shall not, however, be responsible for the action or omissions, or the solvency or notice to you of the insolvency, of any agent Chase selects in good faith.

### 3. Exchange of Information

You authorize Chase, or any affiliate or subsidiary of Chase: i) to exchange information about you and any or all of your accounts with each other and with others, including information that may be used to offer insurance and investment products to you; ii) to disclose documentation and/or information about you and your accounts or services in connection with banking transactions and in other circumstances Chase, its affiliates or subsidiaries deem necessary or appropriate or pursuant to law or regulation; and iii) to transmit account information to, and process such information at, such foreign or domestic locations as Chase may elect for such purpose.

### 4. Interest on Overdrafts

In the event Chase permits an overdraft, Chase is authorized to charge you interest on the amount of such overdraft during the continuance thereof at the maximum rate permitted by law at the time of the overdraft or at the specific rate negotiated between you and Chase, which rate, as reflected on the Statement or customer notice, shall be deemed conclusive. Unless agreed in writing, Chase is under no obligation to permit any overdraft or to continue to permit overdrafts after having permitted an overdraft. No prior action or course of dealing on the part of Chase with respect to permitting overdrafts or to continue permitting overdrafts after having permitted an overdraft in your account shall cause reliance on your part that such action would continue or give rise to any claim or action by you against Chase if Chase refuses to honor or pay an Item, an ACH debit, payment order or any other debit or withdrawal unless you have sufficient funds available in your account to cover such a debit or withdrawal without incurring an overdraft.

### 5. Recordings

Chase, at its sole discretion, may make recordings and retain such recordings of telephone conversations between you and Chase.

### 6. Electronic Record Retention

Chase may retain its copy of any documents or Items relating to your accounts and services in a form preserving an image of any such documents or Items, including that of your signature (whether electronic, mechanical, magnetic or otherwise) or a regular business record and discard the original documents or Items. You hereby waive any objection to the use of such records in lieu of their paper equivalents for any purpose and in any forum, venue or jurisdiction, including, without limitation, objections arising from Chase's role or acquiescence in the destruction of the originals.

## 7. Fees

You agree to pay and to have your accounts charged for all fees and service charges incurred by you including, but not limited to, balance deficiency fees, fees not satisfied by compensating balance arrangements and all usual and customary fees that Chase may, from time to time, charge for any of the accounts and services provided.

Your accounts will be charged, if applicable, for certain expenses incurred in remitting funds to the applicable state pursuant to the Abandoned Property Laws of such state. These charges are not refundable.

## 8. Set-Off and Lien

Chase, its branches, subsidiaries or affiliates, shall have a continuing lien for the amount of any and all of your, your subsidiaries' or your affiliates' liabilities and obligations to Chase, its branches, subsidiaries or affiliates, and claims of every nature and description of Chase, its branches, subsidiaries or affiliates, against you, whether now existing or hereafter incurred, originally contracted with Chase, its branches, subsidiaries or affiliates, and/or with another or others and now or hereafter owing to or acquired in any manner by Chase, its branches, subsidiaries or affiliates whether contracted by you alone or jointly and/or severally with another or others, absolute or contingent, secured or unsecured, matured or unmatured (all of which are hereafter collectively called "Obligations"), upon any and all monies, deposits, securities, and any all other property of yours, your subsidiaries or your affiliates and the proceeds thereof, now or hereafter actually or constructively held or received by, or in transit in any manner to or from Chase, its branches, subsidiaries or affiliates, its correspondents or agents from or for you, your subsidiaries or affiliates whether for safekeeping, custody, pledge, transmission, collection or otherwise coming into Chase's, its branches', subsidiaries' or affiliates' possession in any way, or placed in any safe deposit box leased by Chase, its branches, subsidiaries or affiliates to you, your subsidiaries or your affiliates. Chase, its branches, subsidiaries or affiliates, shall also have a right of set-off for the amount of the Obligations, and Chase, its branches, subsidiaries or affiliates, may at any time or times and without notice or demand for payment, apply your subsidiaries' or your affiliates' deposits (general or special), your subsidiaries' or your affiliates' credits with Chase, its branches, subsidiaries or affiliates, or your claims against Chase, its

branches, subsidiaries or affiliates, or any parts thereof, to such Obligations and in such amounts as Chase, its branches, subsidiaries or affiliates, may elect, although said Obligations may be contingent or unmatured and whether any collateral therefor is deemed adequate or not.

## 9. Balance and Other Information

Balances change on a frequent basis. You hereby waive any claim against Chase based on representations made by Chase, orally, electronically, or in writing regarding balance, transaction and related information provided by Chase. Chase assumes no responsibility for your reliance on balance, transaction and related information communicated to you by any means including, but not limited to, electronically, which is subsequently updated or corrected, or for the accuracy or timeliness of information supplied by third parties.

## 10. Notices

All Statements and advices will be sent to you by ordinary mail, by courier, by electronic transmission or by such other means as you and Chase agree upon from time to time at the address (street address, post office box or electronic address) last recorded by Chase. You must notify Chase, promptly and in writing, of any change of your address. Unless otherwise arranged, all notices to Chase must be sent to the Chase address specified on your Statement or if the notice relates to a particular service which you are receiving from Chase to the address specified in the agreement for such service. Chase shall have a reasonable time to act on any notices received. Chase shall not be responsible for the failure to receive, or delay in receipt of, notices which are not sent in the manner provided herein.

## 11. Liability

**YOU AGREE THAT: i) CHASE SHALL NOT BE LIABLE FOR ANY DAMAGES UNLESS SUCH DAMAGES ARE THE DIRECT RESULT OF CHASE'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; AND ii) CHASE SHALL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF CHASE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

In the event of Chase's: i) failure to stop payment on an Item; or ii) payment of an Item bearing an unauthorized signature, forged drawer's signature, forged indorsement or alteration, Chase's liability, if any, shall be limited to the face amount of the Item.

### 12. Indemnity

In order to induce Chase to honor requests for services, including, but not limited to, those enumerated in these Terms and Conditions, you hereby agree to indemnify and hold Chase, its subsidiaries and affiliates and its successors, assigns, correspondents, directors, officers and employees harmless from and against any and all claims, damages, demands, judgments, liabilities, losses and expenses (including attorneys' fees) resulting directly or indirectly from: i) any willful misconduct, negligence, action or omission on the part of any individual who has been listed as a person authorized to act on your behalf in any document provided by you to Chase; ii) Chase's acts or omissions under these Terms and Conditions except for Chase's gross negligence or wilful misconduct; or iii) your failure to observe any provision of these Terms and Conditions, including without limitation, your breach of any representation or warranty hereunder.

### 13. Termination of Account

You or Chase may close any of your accounts at any time; provided, however, certain conditions for time deposits and savings accounts may apply. Upon one of your accounts being closed, you shall receive any finally collected and available balance in the account at the time the account is closed. Chase may return unpaid any Items presented on your account after it is closed. After your account is closed, Chase or its subsidiaries and affiliates may continue to exchange information about your account with others.

Chase may terminate any service at any time without notice. If you wish to terminate a service, you shall give Chase prior written notice of your intention to terminate. Termination by you shall become effective a reasonable time after Chase's receipt of the termination notice. Chase may complete all requests and instructions accepted on the day termination is to become effective.

### 14. Waiver of Jury Trial

BOTH YOU AND CHASE HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTER-CLAIM, OF WHATEVER TYPE OR NATURE, INCLUDING ACTIONS SOUNDING IN CONTRACT OR TORT OR BASED UPON A STATUTORY VIOLATION, ARISING OUT OF THESE TERMS AND CONDITIONS, OR THE RELATIONSHIP ESTABLISHED HEREBY.

### 15. Claims Against Chase

Any claim which you may have against Chase arising from accounts or services which are the subject of these Terms and Conditions, unless a shorter period of time is expressly provided, must be brought against Chase within two (2) years of the incurrence of the cause of action.

Any claim which you may have against Chase as a result of accounts and services offered pursuant to these Terms and Conditions may only be brought as a breach of contract claim; and you hereby irrevocably waive all right in any action, proceeding or counterclaim, of whatever type or nature, to bring any claim against Chase sounding in negligence or tort or based upon a statutory violation.

### 16. Force Majeure

Chase shall not be liable for any loss or damage to you caused by Chase's failure to provide any service or delay in providing such service resulting from an act of God, act of governmental authority, *de jure* or *de facto*, legal constraint, war, terrorism, fire, catastrophe, or electrical, computer, mechanical or telecommunications failure, or failure of any agent or correspondent or any other cause beyond Chase's control.

### 17. Changes of These Provisions

Chase may change these Terms and Conditions or impose other restrictions on your accounts or services, as Chase deems necessary in the course of its business, at any time by the posting of notice at the branch at which your accounts are maintained or by the sending of notice by means of ordinary mail. Changes to these Terms and Conditions which are required by law may be implemented immediately or as required by law.

### 18. Waiver

Chase may waive any of these Terms and Conditions, but such waiver shall apply only on that occasion and must be in writing. Such waiver shall not constitute a waiver of any other provision of these Terms and Conditions.

To the extent that you would have or be able to claim sovereign immunity in any action, claim, suit or proceeding brought by Chase (or Chase's assignee), you irrevocably waive and agree not to claim such immunity.

### 19. Variation of Law; Severability

These Terms and Conditions vary applicable law or regulation to the maximum extent permitted under any such law or regulation. Any provision of applicable law or regulation that cannot be varied by agreement or notice shall supersede any conflicting term of these Terms and Conditions.

If any provision of these Terms and Conditions shall be held to be illegal or unenforceable, the validity of the remaining portions of these Terms and Conditions shall not be affected.

### 20. Governing Law

Any disputes arising from or related to your accounts with Chase or services provided to you by Chase shall be governed by the laws of the State of New York (without reference to the conflict of law rules thereof), except that any disputes arising from or related to an account opened and maintained in a state or jurisdiction other than New York shall be governed by the laws of that state or jurisdiction (without reference to the conflict of laws rules thereof). In addition, any dispute arising from or related to your accounts with Chase or services provided to you by Chase shall be governed by federal laws and regulations, Federal Reserve Bank rules and Operating Circulars, local clearinghouse rules, Automated Clearing House Rules and general commercial bank practices applicable to accounts of your type or to the services provided by Chase.

### 21. Jurisdiction and Venue

Any action against Chase arising from or relating to your accounts or services provided to you by Chase must be brought by you in state or (where there is subject matter jurisdiction) federal court located in the State of New York, County of New York, except that any action arising from or relating to an account opened and maintained by Chase in another state or jurisdiction must be brought by you in a proper court located in that state or jurisdiction. In addition, you consent to the jurisdiction and venue of the state and federal courts located within the State of New York, County of New York for the adjudication of all claims made by Chase against you arising from or relating to your account or the services provided by Chase.

## PART III: INTEREST-BEARING ACCOUNTS

### A. Non-CD Accounts—Account Features

1. **Annual Interest Rate**

   These accounts have interest rates that may vary from time to time and are determined by Chase, based on market conditions. From time to time, Chase may establish, change or eliminate different balance levels or the use of an index to determine different rates of interest or establish a balance above which interest shall not be paid.

2. In the event that a claim is asserted against the funds on deposit (see Part (I) 17. Withdrawal Limitations) such funds may be placed in a non-interest bearing account at Chase's discretion.

3. **Interest Computation Method/ Compounding Period**

   Interest on any of these accounts is compounded daily and computed on a 365-day basis. During leap years, interest will be computed on a 366-day basis, if the account is open on February 29.

4. **Paying Interest**

   a. Interest on any of these accounts is paid to that account on a monthly basis.

   As a result of our having different computer systems, interest on your Business Passbook Savings Account may be paid on a quarterly basis.

   b. If you close any of these accounts before the interest crediting date, you forfeit the unpaid interest for that period.

5. **Schedule for Collection/Earning of Interest**

   Deposits to any of these accounts, except Business Savings Accounts, begin to earn interest on the day the funds become collected, which depends on where the item originated and/or what type of deposits are made (i.e., cash, check, wire, electronic transfer, etc.). Collection usually occurs between zero (0) and three (3) Business Days. Business Savings Accounts begin to earn interest as of the day of deposit. You must maintain a minimum balance of $1.00 in the account each day to earn interest.

6. **Transaction Limitations**

   a. **Business Money Market Account**

   There is no limit on the number of withdrawals or transfers you may make:
   - in person
   - by mail
   - by messenger
   - at an ATM

   You are permitted by law to make up to six (6) restricted withdrawals or transfers per statement period (approximately four (4) weeks). Of these six (6), up to three (3) may be by check. Examples of such restricted transactions include:
   - telephone and computer transfers
   - preauthorized third-party payments
   - preauthorized transfers to another account (except Chase Bank loans).

   Federal regulation requires Chase to monitor excessive restricted transactions in the use of Business Money Market Accounts. IF YOU CONTINUOUSLY EXCEED THE STATED LIMITS, CHASE WILL NOTIFY YOU THAT IT WILL NO LONGER HONOR ANY TRANSACTIONS EXCEEDING THESE LIMITS. FEES WILL BE CHARGED FOR ALL EXCESS TRANSACTIONS (SEE FEE SCHEDULE).

   b. **Business Savings Accounts**

   You are permitted by law to make up to six (6) restricted transactions as described above, per calendar month. There are no checks drawn on this account.

   In the event that Chase receives an authorization to charge a Business Savings Account in excess of the above limitations, Chase is under no obligation to honor such authorization. ANY PREAUTHORIZED OR AUTOMATIC TRANSFERS EXCEEDING THESE LIMITS WILL NOT BE PAID FROM YOUR ACCOUNT AND A FEE WILL BE CHARGED (SEE FEE SCHEDULE).

   c. IN CALCULATING THE LIMITATIONS ON BUSINESS MONEY MARKET AND BUSINESS SAVINGS ACCOUNTS, CHASE USES THE DATE THAT THE TRANSACTION IS POSTED TO YOUR ACCOUNT AND NOT THE DATE THAT THE TRANSACTION IS AUTHORIZED.

d. As a result of Chase having different computer systems, your Business Money Market and Business Savings Accounts may be treated differently from what is described in Section (a) and (b) above. Instead, pursuant to federal regulation, Chase is required to monitor excessive restricted transactional use of Money Market and Savings Accounts. If you continuously exceed the stated limits (all limits are calculated for statement periods and not calendar months), Chase is required to convert your account to an appropriate transaction account (Business Checking or Business Checking with Interest) and you will be notified.

e. Chase is required by federal law to reserve the right to require at least seven (7) days notice prior to a withdrawal from a Business Checking with Interest, Money Market or Savings Account. (Presently, Chase does not have this requirement.)

7. **Business Checking Account and Business Checking with Interest/Money Market Sub-Account**

In order to accommodate our internal accounting and regulatory reporting, a money market sub-account is established and is a part of your Business Checking Account or Business Checking with Interest Account (both referred to as "Account" as appropriate). This will not affect your account number, balance requirements, monthly statement or your use of the Account. There will not be any change in the way you earn interest (Business Checking with Interest only) or in your transactional (check writing or otherwise) capabilities.

There will be two portions or "sub-accounts" within your Account. One is a checking sub-account with no transaction limitations and the other is a money market sub-account.

The sub-account for Business Checking Account is a non-interest bearing money market account. At the beginning of each statement period, we will automatically allocate a portion of your Account to each sub-account. All checks, withdrawals and other charges will be made against the checking sub-account. As funds are needed, we will, without charge, automatically transfer funds from the money market sub-account to the checking sub-account. This can occur up to six (6) times per statement period. Upon the sixth transfer, the entire balance in the money market sub-account will be transferred to the checking sub-account. This process will repeat at the beginning of each statement period. We will be responsible for monitoring these transactions.

Your monthly statement will reflect one combined balance and for your Business Checking with Interest Account one annual percentage yield earned and one amount of interest paid for the entire Account. The statement will not reflect the previously described internal transfers between the two sub-accounts.

B. **CDs—GENERAL TERMS**

1. **Annual Interest Rate**

The annual interest rate is determined by Chase, based on market conditions, and is fixed for the term of your CD.

2. **Interest Computation Method and Computing Period**

CD interest is compounded daily. Jumbo CD interest is computed on a simple interest basis (no compounding). Interest on CDs is computed from day of deposit to day of withdrawal. This interest computation policy includes the day of deposit but excludes the maturity date. Interest is computed on a 365-day basis.

3. **Term and Maturity Date**

   The term of your CD is the length of time you have agreed to leave your money on deposit. The term begins on the date you make the deposit and ends on the maturity date stated. If the maturity date falls on a Saturday, Sunday or federal holiday, the next banking day becomes the maturity date.

4. **Automatic Renewal**

   CDs will be renewed automatically for the same term at the interest rate in effect on the maturity date. However, Chase reserves the right not to renew your CD or to renew on different terms. You must notify Chase in writing at least fourteen (14) days before maturity if you wish the renewal to be for a different term or if you don't want your CD renewed. If you choose not to renew, the principal plus interest can be credited to an account you choose, or a check will be issued to you.

5. **Grace Period**

   After the CD is renewed, there is a grace period of five (5) Business Days during which you can notify Chase that you do not wish the CD to be renewed and you can withdraw the funds from the CD without penalty, or during which you can make one (1) additional deposit to the CD. The minimum additional deposit is $250 and, for Jumbo CDs, the minimum additional deposit is $1,000.

6. **Interest After Maturity**

   If you tell us not to renew your CD, no interest will be earned on or after the maturity date.

7. **Paying Interest**

   You may choose to have your interest credited to your CD or to another Chase account monthly and at maturity. Interest earned on Tax Deferred CDs will be credited only at maturity. Interest earned on Jumbo CDs will be credited at maturity and on the anniversary of CD opening (for terms of more than 12 months).

   If your Jumbo CD is on a different computer system, interest is paid annually and/or at maturity, depending on the term of the CD.

8. **Early Withdrawal Penalty**

   Partial withdrawals from a CD are not permitted. If Chase permits you to make an early withdrawal of the entire CD (or any renewal thereof), YOU WILL FORFEIT THE AMOUNT OF SIMPLE INTEREST LISTED BELOW ON THE AMOUNT WITHDRAWN, COMPUTED AT THE RATE IN EFFECT ON YOUR CD, REGARDLESS OF THE LENGTH OF THE TIME THE FUNDS REMAINED ON DEPOSIT. ALL OR PART OF THE PENALTY MAY BE DEDUCTED FROM THE PRINCIPAL AMOUNT. However, no early withdrawal penalty is assessed if the withdrawal is made because of the death or legal incompetency of an owner.

   | Term | Penalty |
   | --- | --- |
   | • 7-29 days | 7 days simple interest |
   | • 30-91 days | 30 days simple interest |
   | • 92-364 days | 90 days simple interest |
   | • 365 days and over | 180 days simple interest |

PART IV: Business Services

A. Services

As a result of having different computer systems, you may have access to one or more of the services described below. If you use Business Cash Now℠, that service may be converted to our Check Coverage service. If your service is converted, you will be notified. If you have any questions, please ask your account officer.

B. Check Coverage

Check Coverage (the "Service") is a feature that can be added to your Business Checking or Business Checking with Interest Account to avoid the return of checks unpaid. You will obtain immediate checkwriting availability on checks you deposit at our automated teller machines ("ATM"). On checks deposited at our teller windows, you will obtain next Business Day checkwriting availability. In addition, available funds will automatically be transferred from your designated money market or savings account to cover overdrafts on your checking account.

To use this Service you must maintain with us a Business Checking or Business Checking with Interest Account ("Protected Account"), and a Business Money Market or Business Savings Account or a Business CD (uncollected funds feature only) ("Protecting Account"), as designated on the signature card. The Protecting Account must be held in the same name(s) and legal capacity, customer number and at the same branch of account as the Protected Account. A maximum of four accounts may be designated as Protecting Accounts.

1. Uncollected Funds Feature

Check Coverage enables you to write checks against a deposit before that deposit would otherwise be available to you. An amount equal to your deposit must remain in your Protecting Accounts for the length of time it takes for your deposit to become available during the ordinary course of business. Your Protecting Accounts will continue to earn interest on those funds being held to cover the check(s) deposited. The uncollected funds feature is for check-writing purposes only and will not permit you to withdraw cash except as stated below under "Special Rules for Automated Teller Machines." The maximum amount of coverage available is the total available funds in the Protecting Accounts, not to exceed $25,000.

2. Special Rules for Automated Teller Machines

If you deposit a check at a Chase ATM, you will be able to obtain immediate cash at any Chase ATM or at an ATM at any participating ATM network **on the day of deposit (only) and for an amount not to exceed your daily cash withdrawal limit.** (Some accounts may not be accessible through network ATMs.)

The Service will not be available during any Chase ATM maintenance period or any other period our computer or communications systems is off-line. Deposits made during this period may be used for check-writing privileges the next Business Day after the day of deposit.

3. **Overdraft Protection Feature**

As a Check Coverage customer, your designated Protecting Accounts are used to cover overdrafts in your Protected Account. Until the funds are actually transferred to cover an overdraft, you will continue to have full access to them and they will continue to earn interest. The overdraft protection feature is for checkwriting purposes only. You will not be permitted to withdraw cash. This feature is not intended to constitute a line of credit.

  a. **Overdraft Transfer Maximum**

  No more than $25,000 in total will be transferred from your Protecting Accounts to cover overdrafts in your Protected Account. If one or more transactions overdraw your Protected Account in a given Business Day, and if you have available funds in your Protecting Accounts to cover them, one overdraft transfer will be generated from each Protecting Account in the order you designate until sufficient funds have been transferred to pay all checks which have been presented for payment. However, a fee will be assessed for each check paid.

  b. **Transfer Limitation**

  The total number of payment transfers permitted from each Protecting Account is six (6) per statement period if you are using a Business Money Market Account, or six (6) per calendar month if you are using a Business Savings Account. If the total number of payment transfers, including overdraft transfers, has reached the applicable limit, that account will no longer serve as a Protecting Account for the remainder of that statement period or calendar month. Transfers will continue from your other protecting accounts until the applicable transaction limita-

tion is reached for each of these. Once all accounts have exceeded these limits, any checks drawn on your Protected Account will be returned. You will also be charged the current insufficient funds fee.

4. **General Provisions Related to Uncollected and Overdraft Features**

  a. **Receipt of Deposits**

  In using this Service, it is important for you to know when deposits are considered received by us. Checks deposited at a teller window or a Chase ATM are considered received by us on the day of deposit, except that if the deposit is not made on a Business Day or is made after our designated close of business (generally 3:00 p.m.), the checks are considered received by us on our next Business Day. For the purpose of the Bank's determining whether you have sufficient available balances in your Protected Account to pay checks drawn on that account, funds deposited at a Chase ATM are available by means of this Service on the evening of the Business Day of receipt. For checks deposited at teller windows, funds are available by means of this Service for checkwriting privileges on the Business Day after the day of receipt. While the day a deposit is considered to be received will not affect your ability to obtain immediate cash for checks deposited at a Chase ATM on the day of deposit (only), it will affect when your checks would otherwise become available for withdrawal in accordance with our funds availability policy (see Funds Availability Schedule) and hence the time during which a portion of the Protecting Account may not be withdrawn.

b. **Adjustments to Accounts**

If a check you deposit is returned unpaid for any reason, or if you misrepresented your deposit amount at a Chase ATM, then we shall transfer funds from your Protecting Account to cover an overdraft in your Protected Account. If we deem it necessary to protect us from loss, we may restrict or charge your Protected/ Protecting Account without prior notice.

c. **Service Charges**

We shall waive our standard uncollected check fee for checks paid in connection with this Service. You shall be subject to all other fees and service charges applicable to your account, including any fees for the return or payment of checks drawn against an insufficient balance. You agree to pay these charges promptly and authorize us to charge your account for these amounts. Additionally, you agree to pay or amend your use of this Service at any time without prior notice. Any holds placed against any Protecting Accounts at the time of termination will continue in effect in accordance with this agreement.

d. **Termination**

We reserve the right to terminate or amend your use of this Service at any time without prior notice. Any holds placed against any Protecting Account at the time of termination will continue in effect in accordance with this agreement.

C. **Business Cash Now℠**

Business Cash Now allows you to deposit check(s) that are payable to you into your Business Checking or Business Checking with Interest Account ("Primary Account"), and have immediate availability to these funds up to your Business Cash Now limit. To be eligible, you must be a BusinessPlus' Customer and maintain a Primary Account and at least one Business Money Market Account, Business Savings Account or Business CD ("Related Account"). IRA, Keogh, SEP, Client Funds and Attorney IOLA Accounts are not eligible. Checks must be deposited at Chase Bank automated teller machines (ATM) and funds may be accessed by writing a check to a third party or by making a withdrawal at an ATM. The Business Cash Now limit will not be used as an overdraft line of credit.

1. **Business Cash Now℠ Limits**

    The daily Business Cash Now limit, which includes both checks written and ATM withdrawals, is the lesser of $15,000 for BusinessPlus banking customers or the total of available balances in Related Accounts. The limit is calculated daily. Related Accounts opened and included in the relationship after the date of this Agreement will be included in calculating the Business Cash Now limits within five (5) business days after an account has been opened. Withdrawal limits at Chase ATMs are $1,000 per day per Chase Business Banking Card.

2. **Business Cash Now℠ Holds**

    When you draw against funds deposited that are not yet available in the Primary Account, Chase will place a hold against the Related Account(s) equal to the amount of not-yet-available funds used. Hold(s) will be placed against the least liquid account(s) in the relationship. Hold(s) will be placed for one ( I ) Business Day.

3. **Deposited Checks Returned Unpaid**

   If a check(s) deposited into the Primary Account is returned unpaid, the amount of the check will be charged to the Primary Account. If this charge creates an overdraft in the Primary Account, Chase, at its discretion, may transfer funds from the Related Account to cover the overdraft. If Chase chooses to transfer funds, notice will be given on the day of the transfer.

4. **Termination Of Service**

   Chase may terminate or amend Business Cash Now at any time, without prior notice. Any holds placed against any Related Account(s) at the time of termination will continue in effect in accordance with this Agreement.

D. **Coverage Now**[SM]

   Coverage Now is a service offered by Chase whereby, in order to avoid overdrafts, transfers of funds may be made from your Business Money Market Account and/or Business Savings Account ("Source Account) to your Business Checking or Business Checking with Interest Account, as designated on your Business*Plus* application.

   1. **Amounts**

      If check(s) or other charges are processed against the Business Checking or Business Checking with Interest Account ("Recipient Account") that would result in an overdraft to that account, Chase is authorized through Coverage Now to automatically transfer funds from the Source Account to the Recipient Account. Any transfer shall be up to a maximum of $10,000 per transaction. Coverage Now will only transfer funds necessary to cover an entire overdraft, otherwise a transfer will not be completed.

   2. **Fees**

      There will be an overdraft check paid fee per transfer charged against the Source Account (see fee schedule).

   3. **Source Account**

      In order for Chase to complete a transfer, the Source Account must have a balance of collected funds at least equal to the amount of the overdraft and applicable fees. Transfers will not be made if there are insufficient collected funds in the Source Account. In that event, the check(s) or other charges presented against the Recipient Account will be returned unpaid or may be approved and paid, on a case-by-case basis, thereby creating an overdraft.

   4. **Transaction Limitations**

      Federal law limits the number of automatic or electronic transfers from the Source Account to six (6) per statement cycle. This transfer limit will be reduced by the number of any other automatic or electronic transfers from the Source Account during a statement cycle. In addition, if the Source Account is a Business Money Market Account, the transfer limit will be further reduced by the number of checks paid against the Business Money Market Account during a statement cycle. If the limit on the number of transfers from the Source Account has been met during any statement cycle, additional Coverage Now transfers from the Source Account during that statement cycle will not be completed.

   5. **Notices**

      Chase will send a notice to you for each attempted transfer whether or not it is completed.

6. **Deposits**

   If check(s) are deposited to the Recipient Account and are returned unpaid and charged back against the Recipient Account, which results in an overdraft, the Bank is authorized to transfer funds from the Source Account to the Recipient Account to satisfy this overdraft.

7. **Amendments and Termination**

   Chase may terminate or amend Coverage Now at any time, without prior notice.

## PART V: EMPLOYEE BENEFIT PLANS FDIC COVERAGE

Under federal law, whether an employee benefit plan deposit is entitled to per-participant (or "pass-through") deposit insurance coverage is based, in part, upon the capital status of the insured institution at the time each deposit is made. Specifically, "pass-through" coverage is not provided, if, at the time an employee benefit plan deposit is accepted by an FDIC-insured bank or savings association, the institution may not accept brokered deposits under the applicable provisions of the Federal Deposit Insurance Act ("FDIA"). Whether an institution may accept brokered deposits depends, in turn, upon the institution's capital level. If an institution's capital category is either "well capitalized", or is "adequately capitalized" and the institution has received the necessary broker deposit waiver from the FDIC, then the institution may accept brokered deposits. If an institution is either "adequately capitalized" without a waiver from the FDIC or is in a capital category below "adequately capitalized," then the institution may not accept brokered deposits. The FDI Act and FDIC regulations provide an exception from this general rule on the availability of "pass-through" insurance coverage for employee benefit plan deposits when, although an institution is not permitted to accept brokered deposits, the institution is "adequately capitalized" and the depositor receives a written statement from the institution indicating that such deposits are eligible for insurance coverage on a "pass-through" basis. The availability of "pass-through" insurance coverage for employee benefit deposits also is dependent upon the depositor's compliance with FDIC recordkeeping regulations which require that the depositor maintain, in good faith and in the regular course of business, details of the relationship so that the interests of other parties in the account are ascertainable.

Chase's capital category currently is well-capitalized. Thus, in our best judgment, employee benefit plan deposits are currently eligible for "pass-through" insurance coverage under the applicable federal law and FDIC insurance regulations.

Under the FDIC's insurance regulations on employee benefit plan deposits, an insured bank must notify employee benefit plan depositors if new, rolled-over or renewed employee benefit plan deposits would be ineligible for "pass-through" insurance and must provide certain ratios on the institution's capital condition to employee benefit plan depositors who request such information. If you would like additional information on Chase's capital condition, please make a request to your customer service representative.