# Attachment 10 to the Declaration of Dan Wilkening

JPMorganChase

Account Terms | JPMORGAN CHASE BANK, N.A.

V1.1_0306_(0106)

INTRODUCTION

This document (the "Account Terms"), contains the general terms and conditions and other disclosures for the accounts and services which the Customer may select, and constitutes an agreement between the Bank and the Customer. References to the "Customer" in the Account Terms mean the governmental, nonprofit, or business entity to which the Bank provides accounts and services. All accounts subject to the Account Terms are, regardless of their location, referred to in this document as "Accounts". The Account Terms may be supplemented or amended by existing or future agreements, terms and conditions, and notices, including, but not limited to any terms contained in an account application, signature card or similar document for an Account or arrangements regarding specific types of Accounts or services ("Services") offered by the Bank, as described herein or which by their terms ("Service Terms") are subject to the Account Terms. By signing the signature card, account application or similar document or by using or continuing to use any of the Accounts or Services, the Customer agrees to the Account Terms and such supplements, amendments, agreements, terms and conditions, notices or Service Terms, as applicable.

The Accounts established with the Bank are subject to the Account Terms and relevant Account documentation ("Account Documentation"). The Customer shall not transfer any of its rights and obligations in an Account or with respect to a Service, or create any form of security interest over such rights and obligations or in an Account, without the prior written consent of the Bank.

1. Authorized Persons.

1.1 The Bank is authorized to rely upon any document that indicates the person authorized to act on behalf of the Customer ("Authorized Person") with respect to the Accounts and Services, until the authority for the Authorized Person is withdrawn by the Customer upon written notice to the Bank, and the Bank has a reasonable opportunity to act on the termination instruction. The Customer will provide specimen signatures to the Bank, in the manner requested by the Bank.

1.2 Each Authorized Person, subject to any written limitation received and accepted by the Bank, is authorized on behalf of the Customer to: open, operate and close Accounts; overdraw Accounts as permitted by the Bank; appoint and remove Authorized Persons; execute or otherwise agree to any form of agreement relating to the Accounts or Services, including, without limitation, Account Documentation; execute guarantees, indemnities or other undertakings to the Bank in relation to guarantees, letters of credit or other financial transactions, or in relation to missing documents; draw, accept, endorse or discount checks, drafts, bills of exchange, notes and other financial instruments ("Items"); receive materials related to security procedures; and give instructions ("Instructions"), including, without limitation, requests and payment orders, by means other than the signing of an Item, with respect to any Account transaction. Without limitation, such Instructions may be given singly or otherwise regarding: (i) the payment, transfer or withdrawal of funds by wire, computer or other electronic means, or otherwise; (ii) money, credits, items or property at any time held by the Bank for account of the Customer; or (iii) any other transaction of the Customer with the Bank.

1.3 If the Customer provides the Bank with facsimile signature specimens, or if the Customer issues Items with a facsimile signature on one or more occasions, the Bank is authorized to pay Items signed by facsimile signature (including, but not limited to, computer generated signatures) if the actual or purported facsimile signature, regardless of how or by whom affixed, resembles the specimens filed with the Bank by the Customer, or resembles a specimen facsimile signature otherwise employed for the Customer's benefit.

1.4 The Customer represents that, prior to submitting any document which designates the persons authorized to act on the Customer's behalf, the Customer shall obtain from each individual referred to in such document all necessary consents to enable the Bank to process the data set out therein for the purposes of providing the Service.

2. Instructions; Security Procedures.

2.1 The Bank and the Customer may from time to time agree upon a security procedure to be followed by the Customer upon the issuance of an Instruction and/or by the Bank upon the receipt of an Instruction, so as to enable the Bank to verify that such Instruction is effective as that of the Customer. A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, call back procedures or similar security devices. It is understood that such security procedure is designed to verify the authenticity of, and not to detect errors in, Instructions. The Customer agrees to safeguard such security procedure and to make it available only to authorized persons. Any Instruction, the authenticity of which has been verified through such security procedure, shall be effective as that of the Customer. An authenticated SWIFT message issued to the Bank in the name of the Customer shall be deemed to have been given by an Authorized Person.

2.2 The Bank is not obligated to confirm any Instructions. If the Customer, other than with respect to security procedures, chooses to confirm an Instruction, any confirmation must be clearly marked as such, and, if there is any discrepancy between an Instruction and a confirmation, the terms of the Instruction shall prevail. Subject to Section 5.5, the Bank may, at its option, use any means to confirm or clarify any request or Instruction, even if any agreed security procedure appears to have been followed. If the Bank is not satisfied with any confirmation or clarification, it may decline to honor the Instruction.

3. Deposits.

3.1 All Items deposited or cashed are received for collection only, and are received subject to final payment. The Bank may agree with other banks and clearing houses to vary procedures regarding the collection or return of Items, and deadlines to the extent permitted by applicable law or practice. The Bank chooses the method of collecting Items and may use other banks in the process. The Bank will present Items in accordance with the custom and practice of the jurisdiction in which the Items are collected. The Bank is not responsible for actions taken by other banks, nor for the loss or destruction of any Item in the possession of other banks or in transit. The Customer agrees to use reasonable efforts to assist the Bank in locating or obtaining replacements of Items lost while in the Bank's possession.

3.2     Credits and deposits to an Account will be available in accordance with the Bank's availability policy and in accordance with applicable laws. If the Bank credits an Account: (i) in contemplation of receiving funds for the Customer's credit and those funds are not actually received by the Bank, or (ii) in reliance on a transaction which is subsequently set aside or revoked, or if the Bank does not receive funds for the Customer's credit for value on the date advised by or on behalf of the Customer, then the Bank shall be entitled to debit any Account of the Customer with the amount previously credited and/or with any other charges incurred, even if doing so creates or increases an overdraft.

3.3     If the Customer sends an Item to the Bank on a collection basis, the Bank may defer credit or payment for a reasonable time, in accordance with its practices, without dishonor; and the Bank shall not be obligated thereon until it has remitted final payment.

The following provisions in this section apply to Accounts in the United States, and to Services provided in connection with such Accounts.

3.4     The Bank may provide or make available upon request a receipt or similar document for certain deposits to your Account. However, the amount on such receipt or similar document is based solely on the deposit ticket. Credits for all deposits whether or not accompanied by a deposit ticket, including bulk deposits, are subject to final verification. The Bank reserves the right to make adjustments to the Account for any errors, including any errors appearing on the deposit ticket, occurring during processing or otherwise, but the Bank has no obligation to do so for de minimis discrepancies..

3.5     The Bank may accept Items drawn on a non-U.S. bank or Items payable in a foreign currency on a collection basis, not for deposit, even if the Bank has taken possession of the Items as part of a deposit. Therefore, the Customer may not receive provisional credit for such Items, or if provisional credit has been given the Bank may revoke it. The actual credit for Items payable in a foreign currency will be at the Bank's exchange rate, for the Account credited, in effect at the time of final collection in U.S. dollars.

3.6     The Customer must place its endorsement on the back of a check only in the area within 1.5 inches from the trailing edge of the check. The trailing edge of the check is defined as the left side of the check looking at it from the front. If the Customer is authorized in writing to endorse checks on the Bank's behalf, the Customer agrees to comply with the endorsement standards of the Bank and of Appendix D of Regulation CC of the Federal Reserve System (available through your Bank representative).

3.7     If the Customer pre-encodes Items, the Customer should not use carrier documents (Items placed inside envelopes) in either high-speed forward or return cash letters. If the Customer does send carrier documents in either high-speed forward or return cash letters, the Customer shall be solely responsible for any losses or claims related to it, including, without limitation, errors in the amount of the Item, delays in processing or claims based upon poor image quality, and shall indemnify and hold the Bank harmless from and against any and all claims resulting directly or indirectly from processing the carrier documents.

3.8     If the payor bank, drawer or payee on any Item returns the Item to the Bank or makes a claim against the Bank based on an asserted unauthorized signature or endorsement or an asserted alteration, the Bank may accept that return or pay that claim and charge the Customer's Account for all or any part of the amount of the Item, even if the claim is made after the payor bank's return deadline. If the Customer deposits or cashes an Item drawn on the Bank and the Item or any endorsement is asserted to be forged, unauthorized or altered, the Bank may charge back all or any part of the amount of the Item, even if the charge back is made after the Bank's midnight deadline.

3.9     The Customer agrees that the Bank may collect any deposited Item by electronic means. The Customer will not deposit any substitute checks (that are not returned items) unless the Bank specifically agrees to accept such deposit. In the event the Bank processes any substitute checks for deposit, without a specific agreement, the Customer agrees that the processing of it shall not be deemed to be the Bank's agreement to accept any substitute checks for deposit and that the Customer will be solely responsible for any loss or liability in connection with the deposit.

3.10    If the Customer uses any of the Bank's night depositories, the Customer does so solely at its own risk. The Bank is not liable for any deposit in the night depository until the Bank issues the Customer a deposit ticket or other receipt acknowledging the deposit. Any Bank employee may open and count the money deposited in any night depository, and that employee's determination of the amount of money will be conclusive. The Customer is solely responsible for any loss incurred from the disappearance, theft, or loss of any envelope, bag, or money before the Bank verifies the contents of the deposit.

4.      Payment of Items.

4.1     The Bank is authorized to pay any Item drawn on the Account, in accordance with the Bank's usual procedures, including, without limitation, any item that purports to be a substitute check. The Bank is authorized to debit the Account on which the Item is drawn on the day the Item is presented, certified or accepted, or at such earlier time that the Bank receives notice by electronic or other means that an Item drawn on an Account has been deposited for collection. The Bank may determine Account balances in order to decide whether to dishonor an Item for insufficient funds at any time between receiving such presentment or notice and the time of the return of the Item, and need make no more than one such determination.

4.2     The Bank is authorized to pay all Items presented to it or cashed at the Bank, regardless of amount and without inquiry as to the circumstances of issue, negotiation or endorsement or as to the disposition of proceeds, even if drawn, endorsed or payable to cash, bearer or the order of the signer or any Authorized Person or to a lender in payment of that individual's obligations.

4.3     The Customer shall immediately notify the Bank if it becomes aware that any Items (whether completed or blank) are lost or stolen. The Customer shall not issue Items that are post-dated, and the Bank shall not be liable for any damages caused by premature payment or certification of a post-dated Item. Further, The Customer shall not put any condition, restriction or legend on any Item, and the Bank is not required to comply with any such condition, restriction or legend.

4.4     The Bank may process any Item by electronic means. All Items the Customer draws against any Account must comply with the Bank's check specifications and image standards, published from time to time, and industry standards. The Bank shall not be liable for

damages or losses due to any delay or failure in procuring, collecting or paying Items not conforming to such specifications or standards, except to the extent such losses or damages are the result of the Bank's gross negligence or willful misconduct.

The following provisions in this section apply to Accounts in the United States, and to Services provided in connection with such Accounts.

4.5   The Bank may, in its discretion, cash Items drawn on its Account when presented by the holder. If a payee who is not the Bank's deposit account customer presents an Item drawn on the Account for cash, the Bank may refuse to cash the Item or may charge the payee a fee for cashing the Item.

4.6   If the Customer establishes an Account which purports to: (i) require two or more signatures on any Items drawn on the Account; or (ii) limits the maximum amount for which any person can sign an Item, the Customer acknowledges and agrees that any such requirement is solely for the Customer's own internal control purposes. The Customer agrees that as long as the Bank follows its usual and customary procedures for processing and paying Items, the Bank will not be liable for paying any Item (a) lacking the required number of signatures, or (b) in an amount exceeding the maximum limit assigned to the signer.

4.7   If the Bank offers the Customer services reasonably designed to help prevent check fraud and the Customer fails to utilize those services, that failure will constitute Customer negligence contributing to the making of an unauthorized signature and the Customer will assume the risk that checks or drafts presented against its Account may be forged or altered, to the extent that the services the Bank offered may have prevented any loss. In the event the Bank receives or is presented with Items which appear to be duplicates of each other, then the Bank may return one or more of such Items.

4.8   The Customer assumes all responsibility and liability for any claim or loss that the Customer or the Bank may suffer as a result of the Customer's: (i) issuance of a check in such a manner that information, marks or bands on the back of the check obscures endorsements; or (ii) placement of an endorsement on the back of the check which obscures other endorsements; and which thereby causes a delay in the forward processing and/or return processing of the check. The Bank retains the right to refuse to accept a check for deposit when the back of the check is unreasonably obscured.

4.9   If an Item issued by the Customer is transferred or negotiated outside of the United States and is subsequently sent to the Bank for deposit, collection or payment in the United States, the Customer shall be deemed to make, to the Bank, the transfer and presentment warranties under the Uniform Commercial Code, as if such Item were negotiated or otherwise transferred in the United States.

4.10   A stop payment Instruction from the Customer will be effective on an Item if: (i) the Bank receives the stop payment Instruction with a reasonable opportunity to act on such Instruction, which shall be at least one (1) full Business Day following the Business Day of the Bank's confirmed receipt of the Instructions at the applicable Bank location; (ii) the Instruction contains all information concerning the Item that the Bank requires, and is in the form required by the Bank; and (iii) the Item is not yet paid or cashed. For purposes of this Section, "Business Day" means a day on which the Bank is generally open for business in the jurisdiction where the Account is maintained. Stop payment Instructions on Items, unless otherwise provided, will be valid for one (1) year and will automatically renew up to six (6) additional years unless the Bank confirms receipt of the Customer's revocation of a stop payment Instruction. The Customer may request, through the Bank's call center or other authorized representative, a non-renewable stop payment, which will be effective for a 180-day period. The Bank shall not be liable for any Item properly paid or cashed prior to the effective date of a stop payment request. Stop payment Instructions on Items are effective in having the Item returned unpaid by the Bank. However, stop payment Instructions have no effect on the rights of a holder in due course of the Item to make a claim directly against the Customer.

5.   Funds Transfer Instructions.

5.1   The Customer may issue funds transfer Instructions against Accounts, subject to the Bank's acceptance. Funds transfer Instructions will be received, processed and transmitted only on the Bank's funds transfer business days, and within the Bank's established cut-off hours on such days. The Customer may reverse, amend, cancel or revoke any Instructions only with the consent of the Bank, and the beneficiary's bank. The Bank will debit the Account for the amount of each funds transfer Instruction accepted by the Bank, and may debit the Account for all fees associated with any funds transfer Instruction. No restrictions upon the acceptance of funds transfer Instructions by the Bank or upon the Accounts that the Bank may debit shall be binding unless agreed to by the Bank in writing. The Bank shall not be required to inquire into the circumstances of any transaction.

5.2   Notwithstanding any instructions by the Customer to the contrary, the Bank reserves the right to use any funds transfer system in the execution of any funds transfer Instruction and may otherwise use any means of executing the funds transfer Instruction which the Bank deems reasonable in the circumstances.

5.3   In connection with any funds transfer, the Bank and other financial institutions may rely upon the identifying number of the beneficiary, the beneficiary's bank or any intermediary bank included in the funds transfer. Also, the beneficiary's bank in the funds transfer Instruction may make payment on the basis of the identifying number even though it identifies a person different from the named beneficiary. Accordingly, the Customer shall be responsible for the consequences of any inconsistency between the name and identifying number, as instructed, of any party in such a funds transfer Instruction.

5.4   In accepting a funds transfer Instruction issued in the Customer's name for payment in currency other than the currency of the Account, the Bank is authorized to debit the Account for the equivalent amount of the foreign currency transferred at the Bank's prevailing rate of exchange or as otherwise agreed. In processing the funds transfer, other banks may deduct fees from the payment order issued to them. If the Bank accepts funds transfer Instructions issued in a foreign currency where the Customer is the beneficiary, the Bank may convert the funds to the currency of the Account at the Bank's applicable currency exchange rate and charge the Customer a fee for such currency conversion.

5.5   Unless the Customer and the Bank have agreed in writing to an alternate security procedure, the authenticity of oral or written (including those transmitted by facsimile) funds transfer Instructions may, at the Bank's discretion, be verified by telephonic call-back confirmation with an Authorized Person. The Customer agrees that this security procedure is commercially reasonable for such Instructions.

The Customer further agrees to be bound by such funds transfer Instructions, whether or not authorized, if issued in the name of the Customer using such security procedure.

The following provision in this section applies to Accounts in the United States, and to Services provided in connection with such Accounts.

5.6     All ACH entries received for an Account will be received by the Bank subject to the rules of the National Automated Clearing House Association and any other applicable ACH rules. The Customer agrees to be bound by such ACH rules. Any credit given by the Bank to the Customer for an ACH entry shall be provisional until the Bank receives final settlement. If the Bank does not receive final settlement, the Bank may revoke the provisional credit and charge back the amount to the Account or obtain a refund from the Customer, in which case the originator of the credit entry shall not be deemed to have paid the Customer the amount of such entry. The Bank shall not be obligated to notify the Customer of the receipt of a payment order or ACH entry for credit or debit to an Account.

6.      Interest; Fees; Taxes.

6.1     The Bank, unless otherwise agreed, will pay interest on certain Accounts in accordance with the Bank's usual procedures. The Bank may adjust interest paid (or principal if required by law) on time deposit Accounts or fixed term Accounts from which withdrawals are made prior to maturity.

6.2     The Customer will pay all fees and charges applicable, from time to time, to the Account and each Service. Unless otherwise agreed, the Bank is authorized to debit the Account for fees, charges, and levies or taxes imposed by any revenue or governmental authority, whether or not such fees, charges, levies or taxes will result in an overdraft of the Account, or to bill the Customer separately. All payments to the Bank shall be in full, without set-off or counterclaim and free of any deduction or withholdings on account of any tax or otherwise.

6.3     The Customer will pay or reimburse the Bank for any taxes, levies, imposts, deductions, charges, stamp, transaction and other duties and withholdings (together with any related interest, penalties, fines, and expenses) in connection with the Account or Services (including payments or receipts to an Account) except if imposed on the overall net income of the Bank. The Customer will provide the Bank such documentation, declarations, certifications and information as the Bank may require in connection with taxation, warrants that such information is true and correct in every respect and shall immediately notify the Bank immediately if any information requires updating or correction.

7.      Account Statements.

7.1     The Bank will issue Account statements, confirmations, or advices ("Account Statements") at the frequency and in the manner advised to the Customer from time to time. The Customer will ensure that an Authorized Person examines the Account Statements and any accompanying Items it receives from the Bank from time to time within a reasonable time after the time they are sent or made available to the Customer. The Bank shall not be responsible for the Customer's reliance on balance, transaction or related information that is subsequently updated or corrected or for the accuracy or timeliness of information supplied by any third party to the Bank. Internet Account Statements or electronic Account Statements, if applicable, shall be deemed to be available to the Customer and the Bank to be available to the Customer when the Account Statements are posted on the Internet and the Bank sends an electronic mail notification of availability to the Customer, or when the Bank sends the electronic Account Statement to the Customer. For purposes of determining when an Item is sent to the Customer, an image of an Item or information identifying the Item (i.e. Item number, amount and date of payment) is a sufficient substitute for the actual Item.

The following provisions in this section apply to Accounts in the United States, and to Services provided in connection with such Accounts.

7.2     The Customer must notify the Bank in writing of any unauthorized, improper, or missing endorsements within six (6) months after the Account Statement is mailed, transmitted or made available to the Customer. The Customer must notify the Bank in writing of any other errors, discrepancies or irregularities in any Account Statement, or in the Items and documents summarized or detailed in the Account Statement, or of the non-receipt of an expected Account Statement, within sixty (60) calendar days after the Account Statement is mailed, transmitted or made available to the Customer. The Customer must provide the Bank with all information necessary for the Bank to investigate the alleged error, discrepancy or irregularity, and must provide all supporting affidavits and testimony that the Bank requests.

7.3     If the Bank is safekeeping or truncating checks or deposit slips, the Customer agrees that cancelled checks or deposit slips will not be returned in the Account Statement and that the original cancelled checks or deposit slips may be destroyed in accordance with the Bank's applicable record retention schedules.

8.      Overdrafts.

8.1     The Bank may debit the Account even though the debit may bring about or increase an overdraft. Unless otherwise agreed, any overdraft shall be immediately due and payable by the Customer to the Bank. If the Bank permits an overdraft, the Bank is authorized to charge interest on the amount of the overdraft as long as the overdraft is outstanding, at the rate determined by the Bank, up to the maximum rate permitted by law at the time of the overdraft or at the specific rate negotiated between the Customer and the Bank. Whether or not the Bank pays an Item that brings about or increases an overdraft, the Bank may deduct the applicable overdraft fees and expenses from the Account without notice. Unless agreed in writing, the Bank is under no obligation to permit any overdraft or to continue to permit overdrafts after having permitted an overdraft, notwithstanding any prior action or course of dealing.

8.2     When Items and other debits to the Account are presented to the Bank for payment on the same day and there are insufficient available funds in the Account to pay all of these transactions, the Bank may choose the order in which it pays transactions, including, without limitation, the largest transaction first or any other order determined by the Bank, in its sole discretion.

9.      Set Off.

The Bank may at any time, without prejudice to any other rights which it may have, and without prior notice or demand for payment, combine, consolidate or merge all or any of the Accounts of the Customer or may retain, apply or set off any money held in any Account in any currency towards payment of any amount owing by the Customer to the Bank or any of its affiliates. The Bank shall be entitled to accelerate the maturity of any time deposit or fixed term deposit. For the purposes of this Section the Bank may effect currency conversions at such times or

rates as it may think reasonable and may effect such transfers between any Accounts as it considers necessary. The Customer grants to the Bank a lien and security interest in any Accounts of the Customer at the Bank, in order to secure any and all obligations and liabilities of the Customer to the Bank.

10. Agents; Information.

The Customer authorizes the Bank to retain an agent to perform data processing, collection and other services that the Bank considers necessary or desirable and may modify or terminate the Bank's arrangements with the Bank's agents at any time. The Customer agrees that requests, Instructions, and information with respect to Accounts, the Customer itself, or transactions to be disclosed in accordance with the Account Terms, may be transmitted across national boundaries and through networks, including networks owned and operated by third parties. The Customer authorizes the Bank to disclose information with respect to any Account, the Customer itself, or any transaction in which: (i) the disclosure, in the Bank's opinion, is necessary or desirable for the purpose of allowing the Bank to perform its duties and to exercise its powers and rights hereunder; (ii) the disclosure is to a proposed assignee of the rights of the Bank; (iii) the disclosure is to a branch, affiliate, subsidiary, employee or agent of the Bank or to its auditors, regulators or legal advisers; (iv) the disclosure is to the auditors of the Customer; or (v) the disclosure is permitted or required by law, regardless of whether the disclosure is made in the country in which the Customer resides, in which the Account is maintained, or in which the transaction is conducted.

11. Liability Limitation; Force Majeure.

11.1   The Bank, its agents, employees, officers and directors, shall not be liable for any damage, loss, expense or liability of any nature which the Customer may suffer or incur, except to the extent of direct losses or expenses attributable to the gross negligence or willful misconduct of the Bank, its agents, employees, officers or directors. The Bank, its agents, employees, officers and directors shall not, in any event, be liable for indirect, special, consequential or punitive loss or damage of any kind (including, but not limited to lost profits), whether or not foreseeable, even if the Bank, its agents, employees, officers or directors have been advised of the likelihood of such loss or damage, and regardless of whether the claim for loss or damage is made in negligence, gross negligence, for breach of contract or otherwise; provided, however, that the foregoing shall not apply to the extent such loss or damage is caused by fraud on the part of the Bank, its agents, employees, officers or directors.

11.2   Neither the Bank nor the Customer shall be liable for any loss or damage to the other for its failure to perform or delay in the performance of its obligation resulting from an act of God, act of governmental authority, de jure or de facto, legal constraint, war, terrorism, catastrophe, fire, flood or electrical, computer, mechanical or telecommunications failure, or failure of any agent or correspondent, or unavailability of a payment system, or any cause beyond its reasonable control.

12. Indemnity.

The Customer agrees to indemnify and hold the Bank, and its agents, employees, officers and directors, harmless from and against any and all claims, damages, demands, judgments, liabilities, losses, costs and expenses (including attorneys' fees) resulting directly or indirectly from: (i) the Bank's acceptance or execution of any request or direction, including, without limitation, Items and Instructions issued in the name of an Authorized Person; or (ii) the Bank's payment of any taxes, interest or penalty otherwise due from the Customer paid on the Customer's behalf, or for which the Bank has no responsibility under the Account Terms.

13. Notices.

All Account Statements and notices may be sent to the Customer by ordinary mail, courier, facsimile transmission, electronic transmission, through internet sites, or by such other means as the Customer and the Bank agree upon from time to time, at the address of the Customer on the books and records of the Bank. Unless otherwise arranged, all notices to the Bank must be sent to the Bank to the officer or service representative managing the Account, and must be sent by ordinary mail, by courier, by facsimile transmission, by electronic transmission or by such other means as the Customer and the Bank agree upon from time to time. The Bank shall have a reasonable time to act on any notices received.

14. Termination.

Unless otherwise agreed, either the Bank or the Customer may close an Account or terminate a Service by giving the other party not less than thirty (30) days' prior written notice of intent to close or terminate. Notwithstanding the foregoing, either party may terminate an Account or a Service upon written notice to the other party in the event of: (i) a material breach of the Account Terms or Service Terms by the other party; (ii) the other party's inability to meet its debts as they become due, receivership, administration, liquidation, or voluntary or involuntary bankruptcy; or the institution of any proceeding therefor, any assignment for the benefit of the other party's creditors, or anything analogous to the foregoing in any applicable jurisdiction, or a determination in good faith by the terminating party that the financial condition of the other party has become materially impaired; or (iii) a determination by the terminating party, in its sole opinion, that termination is necessary or required by law or regulation, or as a result of a court or regulatory agency order or proceeding. Notwithstanding anything to the contrary in any Service Terms, upon the closing of an Account, all Services linked to such Account are simultaneously terminated (unless otherwise specifically agreed to by the parties) and the Bank's obligations in respect of such Account or Services will terminate. However, any such closing or termination shall not affect the Customer's liabilities to the Bank arising prior to, or on, such closing or termination, all of which shall continue in full force and effect. In the absence of instructions from the Customer, the Bank may transfer balances to an unclaimed moneys account, or issue a cashier's check, sending it to the address of the Customer on the books and records of the Bank.

15. Account Disclosures.

15.1   The Bank may return or refuse to accept all or any part of a deposit or credit to an Account, at any time, and will not be liable to the Customer for doing so, even if such action causes outstanding Items to be dishonored and returned, or payment orders to be rejected. Refused deposits will be returned to the Customer.

15.2   The Bank may refuse to allow a withdrawal from any Account in certain cases including, but not limited to, cases where: (i) there is a dispute about the Account (unless a court or other competent authority has ordered the Bank to allow the withdrawal); (ii) a legal garnishment

or attachment is served, including, but not limited to, a levy, restraining notice or court order; (iii) the Account is being used as collateral to secure a debt; (iv) Account Documentation has not been presented; or (v) the Customer fails to pay a Bank loan or other debt or obligation to the Bank on time.

15.3 Any amount standing to the credit of any Account with the Bank is payable exclusively at the branch at which the Account is held, however, payment may be suspended from time to time in order to comply with any law, regulation, governmental decree or similar order, in any jurisdiction, for the time being affecting the Bank, its officers, employees, affiliates, agents or correspondents. The Customer acknowledges that deposits held in a branch of the Bank located outside the United States: (i) are not insured by the Federal Deposit Insurance Corporation; (ii) are subject to cross-border risks; and (iii) may enjoy a lesser preference as compared to deposits held in the United States in the event the Bank should be liquidated, insolvent or placed into receivership or other proceeding for the benefit of creditors.

The following provisions in this section apply to Accounts in the United States, and to Services provided in connection with such Accounts.

15.4 The Customer is permitted by U.S. law to make up to six (6) pre-authorized withdrawals or telephonic transfers from a savings account (including a money market deposit account) per calendar month or statement cycle or similar period. If the savings account can be accessed by Items, then no more than three (3) of these six (6) transfers may be made by an Item. The Bank is required by U.S. law to reserve the right to require at least seven (7) days notice prior to a withdrawal from a savings account. The Bank does not presently exercise this right.

15.5 The Customer, if eligible, may open an interest bearing checking account ("NOW Account"). The Bank is required by U.S. law to reserve the right to require at least seven (7) days notice prior to a withdrawal from a NOW Account. The Bank does not presently exercise this right.

15.6 The Bank is authorized, for regulatory reporting and internal accounting purposes, to divide an Account: (i) in the case of a demand deposit checking Account, into a non-interest bearing demand deposit sub-account and a non-interest bearing savings sub-account; (ii) in the case of a NOW Account, into an interest bearing NOW sub-account and an interest bearing savings sub-account, and, in both cases, to transfer funds between these sub-accounts in accordance with U.S. law at no cost to the Customer. The Bank will record the sub-accounts and any transfers between them on the Bank's books and records only. The sub-accounts and any transfers between them will not affect the Account number, balance requirement or use of the Account.

15.7 The Bank, for its administrative purposes may designate a branch of the Bank as the branch of record of an Account which may be different from the branch at which the Account is opened. This designation requires no action on the part of the Customer and will not change the Bank's operations, Services or customer support.

16. Governing Law.

16.1 The Account Terms, the relevant Account Documentation and the rights and obligations of the Customer and the Bank in respect of each Account shall be governed by and construed in accordance with the laws of the country in which the branch holding the relevant Account is located. With respect to Accounts maintained in the United States, the Account Terms, the Account Documentation and the rights and obligations of the Customer and the Bank in respect of each Account also shall be governed by and construed in accordance with the laws of the State of Ohio, United States (without regard to its conflicts of law rules). Unless otherwise specified in the Service Terms, the rights and obligations of the Customer and the Bank under any Service Terms shall be governed by and construed in accordance with the laws of the State of Ohio, United States (without regard to its conflicts of laws rules). For purposes of clarity, unless otherwise specified in the Service Terms or Account Terms, for Accounts maintained in the United States and for all Services, such governing law shall include U.S. federal laws and regulations, Federal Reserve Bank rules and Operating Circulars, clearing house rules, automated clearing house rules and general commercial bank practices applicable to the type of Account and Services provided to the Customer.

16.2 The Customer and the Bank hereby irrevocably waive all right to, and will not seek, trial by jury in any action, proceeding or counterclaim, of whatever type or nature, arising out of these Account Terms or the relationship established hereby. Any claim in connection with Accounts which are the subject of these Account Terms, unless a shorter period of time is expressly provided, must be brought against the Bank within two (2) years of the incurrence of the cause of action, except as prohibited by applicable law.

16.3 In relation to each Account, the courts of the country or state in which the branch of the Bank at which the relevant Account is held shall have exclusive jurisdiction to settle any disputes that arise out of or are connected with the Account Terms, the relevant Account Documentation and/or the relevant Account. This section is for the benefit of the Bank only and does not prevent the Bank from taking proceedings in the courts of any other country or state with jurisdiction including, to the extent allowed by law, concurrently in any number of countries or states.

17. Miscellaneous.

17.1 If the Account Terms, Account Documentation, including, without limitation, Service Terms, are translated into, or appear in a language other than English, the English language version shall control.

17.2 The expression "the Bank", when used herein, shall mean JPMorgan Chase Bank, N.A., and any of its affiliates or subsidiaries, as applicable, and shall include any successors of the Bank including, without limitation, an assignee or successors of JPMorgan Chase Bank, N.A. or any affiliate or subsidiary of such bank or any person who, under the laws of the jurisdiction of incorporation or domicile, has assumed the rights and obligations of the Bank, affiliate or subsidiary hereunder or to which under such laws the same have been transferred.

17.3 The Account Terms or Service Terms may vary applicable law or regulation to the maximum extent permitted under any such law or regulation. Any provision of applicable law or regulation that cannot be varied shall supersede any conflicting term of the Account Terms or Service Terms. Any terms of any supplement, amendment, agreement, Service Terms or notice that are inconsistent with a provision of the Account Terms shall supersede the Account Terms' provision for purposes of the particular account or Service which is the subject thereof. The Account Terms supersede and replace any other account conditions previously sent to the Customer.

17.4    Section headings are for convenience only and shall not affect the meaning of the Account Terms. If any provision of the Account Terms shall be held to be illegal or unenforceable, the validity of the remaining portions of the Account Terms shall not be affected.

17.5    The Customer represents and warrants that it shall comply with all applicable laws and regulations. The Bank will not be obligated to execute payment orders or effect any other transaction hereunder where the beneficiary or other payee is a person or entity with whom the Bank is prohibited to do business by law or regulation or in any case where compliance would, in the Bank's judgment, conflict with applicable law or banking practice.

17.6    The Bank, with respect to Account operations and processes, may change these Account Terms or impose other restrictions on the Customer's Accounts or the Services, as the Bank deems necessary in the course of its business, at any time, by the sending of notice by means of ordinary mail or through electronic channels. Changes to the Account Terms which are required by law may be implemented immediately or as required by law. The Bank may waive any of these Account Terms, but such waiver shall apply only on that occasion. Such waiver shall not constitute a waiver of any other provision of the Account Terms.

17.7    To the extent that the Customer has or hereafter may acquire any immunity (including sovereign, crown or similar immunity) from jurisdiction of any court, suit or legal process (whether from service of notice, injunction, attachment, execution or enforcement of any judgment or otherwise), the Customer irrevocably waives and agrees not to claim such immunity.

17.8    The Customer agrees at its sole expense: (i) to advise each of its employees, officers, agents or other persons accessing any Service by or on behalf of Customer ("Users") of their obligations under the Account Terms or under any Service Terms or ancillary Service material, including, but not limited to, the obligation to refrain from using the Service via the Internet in the countries identified by the Bank; and (ii) to provide the Bank with all information reasonably necessary to setup and provide Services for the Customer, including, but not limited to, advising the Bank of the countries from which Users will access any Service via the Internet. Customer shall promptly provide the Bank with a notice of any claims it receives regarding a Service.

17.9    The Bank or the Customer, at its sole discretion, may make recordings and retain such recordings of telephone conversations between the Customer and the Bank.

17.10   All payment Instructions, whether Items, payment orders or otherwise, are subject to applicable law and payment system rules.

17.11   The Bank may retain copies (paper, electronic or otherwise) of any documents or Items relating to the Accounts and Services in a form preserving an image of any such documents or Items, including signatures, or a regular business record and discard the original documents or Items. The Customer hereby waives any objection to the use of such records in lieu of their paper equivalents for any purpose and in any forum, venue or jurisdiction, including, without limitation, objections arising from the Bank's role or acquiescence in the destruction of the originals.

17.12   All intellectual property rights in or relating to a Service, including any trademarks, service marks, logos, and trade names used in conjunction with a Service are the property of the Bank or its licensors and are protected by applicable copyright, patent, trademark and other intellectual property law. Except as provided herein, the Customer shall not reproduce, transmit, sell, display, distribute, establish any hyperlink to, provide access to, modify, or commercially exploit in whole or in part any part of a Service, without the prior written consent of the Bank.

17.13   To assist in the fight against the funding of terrorism and money laundering activities, applicable law or regulations may require financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for the Customer: When the Customer opens an account, the Bank may ask for the Customer's name, address, date of birth (for individuals), and/or other information and documents that will allow the Bank to identify the Customer. The Customer agrees that the Bank also may request and obtain certain information from third parties regarding the Customer. For purposes of this provision, the Customer, to the extent required by law or regulation, shall include any signatory on an Account. If the Customer fails to provide or consent to the provision of any such information, the Bank may close any Account or discontinue providing any service without further notice.

18.     Disputes over Account Funds.

The Bank may refuse to pay out any money from an Account until any dispute over the deposits or funds (including, without limitation, any dispute over what persons are authorized to represent or act for the Customer) has been resolved by a court, or by agreement of the parties that is documented to the Bank's satisfaction. The Bank may file an action in interpleader with respect to any money where the Bank has been notified of disputed claims to that money. If any person asserts that a dispute exists, the Bank is not required to determine whether that dispute has merit in order to refuse to pay funds or interplead the funds. The Customer agrees to reimburse the Bank for any expenses, including legal and attorneys' fees, that the Bank incurs because of any dispute.

19.     Provisional Recredit.

In connection with any dispute regarding an Account, the Bank may choose to credit the Account pending completion of the Bank's investigation of the dispute. If the Bank determines that the Customer is not entitled to such credit, then, the Bank may reverse the provisional recredit to the Account, even if that reversal results in an overdraft.

The following Section applies to Accounts in the United States, and to Services provided in connection with such Accounts.

20.     Abandoned or Inactive Accounts.

In the event the Bank is required to remit funds to any state as abandoned property, the Account may be charged for fees in remitting funds to any state. These charges are not refundable. If an Account has no activity other than charges assessed or interest credited by the Bank for a period of at least six months, the Bank is not required to provide an Account statement until the Account has additional activity. If an Account has no activity other than charges assessed or interest credited by the Bank for a period of at least 12 months, the Customer may be unable to access the Account until appropriate contact is made between the Customer and the Bank.

## Availability Policy

### FOR ACCOUNTS MAINTAINED IN THE U.S.

The Bank's policy is to make funds available to the Customer on the same, next, second or third business day after the day of deposit depending on the type of deposit as described below. If the Customer will need the funds from a deposit immediately, the Customer should ask the Bank when the funds will be available.

A. Determining the Day of a Deposit. If a deposit is made to an account at a banking center located in the same state as the banking center address on the face of the check at which that account was opened and/or is maintained, before 2:00 p.m. at a banking center or 12:00 noon local time at an ATM*, on a business day that the Bank is open, then the Bank will consider that day to be the day of deposit. However, if a deposit is made after that time, on a Saturday, Sunday or federal holiday, or in a state different from the state of the banking center at which the relevant account was opened and/or is maintained, then the Bank will consider that the deposit was made no later than the next business day. For determining the availability of deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. Availability with respect to any deposit will be determined by the location of the banking center or other facility where the deposit was received.

B. Same Day Availability. Funds from the following deposits will be available on the business day the Bank determines the deposit is made:
- Cash;
- Wire transfers; and
- Electronic direct deposits to an account.

C. Next Day Availability. Funds from the following deposits are available on the first business day after the business day the Bank determines the deposit is made:
- U.S. Treasury checks that are payable to the Customer;
- Checks drawn on a Bank affiliate that holds the applicable account (excluding a Controlled Disbursement site); and
- At least, the first $100 from a day's total deposits.
- If the deposit is made in person to a Bank employee, funds from the following deposits are also available on the first business day after the business day the Bank determines the deposit is made:
- State and local government checks that are payable to the Customer, if a special deposit slip, available upon request at any Bank banking center is used;
- Cashier's, certified, and teller's checks that are payable to the Customer, if a special deposit slip, available upon request at any Bank banking center, is used; and
- Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders, if these items are payable to the Customer.

If a special deposit slip is not used, availability of funds from these deposits will follow the schedule identified in the Availability of Other Check Deposits section below.

D. Availability of Other Check Deposits. Funds from all other deposits of checks drawn on banks (as defined in Federal Reserve Regulation CC) will be available depending on whether the check is a local or nonlocal check. Checks can be identified as local or nonlocal by looking at the first four digits of the nine-digit bank routing number normally located on the lower left-hand side of the check. Some checks are marked "payable through" and have a four- or nine-digit number near the routing number. For these checks, use the four-digit number (or the first four digits of the nine-digit number), not the routing number on the bottom of the check, to determine if these checks are local or nonlocal.

Checks that require special handling may receive delayed availability.

The amount of funds available to the Customer will be reduced by the amount of any deposited check that is returned unpaid. If the Bank reprocesses the check, the funds will become available no later than the second business day after the banking day the check is reprocessed, for local items, or no later than three business days after the banking day the check is reprocessed, for all other items. "Banking day" means that part of any day on which the bank is open to the public for carrying on substantially all of its banking functions.

E. Longer Delays May Apply. In some cases the Bank may not make all of the funds that are deposited by check available. Depending on the type of check deposited, funds may not be available until the fifth business day after the day of deposit. However, the first $100 of the aggregate deposit will be available on the first business day after the day of deposit.
If the Bank is not going to make all of the funds from a deposit available at the times shown above, it will notify the Customer at the time the deposit is made. The Bank will also specify when the funds will be available. If a deposit is not made directly to a Bank employee, or if the Bank decides to take this action after the Customer has left the premises, the Bank will mail or deliver the notice to the Customer by the day after the Bank receives the deposit. The Bank will notify the Customer if it delays the ability to withdraw funds for any of these reasons, and it will tell the Customer when the funds will be available.

Funds deposited by check may be delayed for a longer period under the following circumstances:
- The Bank believes a deposited check will not be paid;
- Deposited checks for all of the Customer's accounts total more than $5,000 in any one day;
- The Customer redeposited a check that has been returned unpaid;
- The Customer has overdrawn one or more of its accounts repeatedly in the last six months; or
- There is an emergency, such as failure of communications or computer equipment.

In such circumstances, funds will generally be available no later than the seventh business day after the day of deposit. Inclement weather or transportation delays may lead to additional delays under certain availability schedules. Please see your specific availability schedule.

The Federal Reserve banking system does not allow forward processing of any check over $99,999,999. The Bank will handle any such item as a collection item, with customer credit and availability deferred accordingly.

This Availability Policy and availability schedules may be changed without notice.

*Certain banking centers and automated teller machines (ATM) observe cut-off hours later than 2:00 p.m. and 12:00 noon local time, respectively. Check the local banking center or ATM for exact times.

© 2006 JPMorgan Chase & Co. All rights reserved.
JPMorgan Chase Bank, N.A. Member FDIC.