**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

PRESIDENT DONALD J. TRUMP, TRUMP
PAYROLL CORP., 401 MEZZ VENTURE,
LLC, 401 NORTH WABASH VENTURE,
LLC, THC MIAMI RESTAURANT
HOSPITALITY, LLC, TRUMP BRIARCLIFF
MANOR DEVELOPMENT, LLC, TRUMP
CHICAGO RETAIL, LLC, TRUMP MIAMI
RESORT MANAGEMENT, LLC, TRUMP
NATIONAL GOLF CLUB COLTS NECK,
LLC, and TRUMP NATIONAL GOLF CLUB,
LLC,

       Plaintiffs,

vs.

JPMORGAN CHASE BANK, N.A. and
JAMES DIMON,

       Defendants.

Case No. 1:26-cv-21106-KMW

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(A)**

Plaintiffs President Donald J. Trump, Trump Payroll Corp., 401 Mezz Venture, LLC, 401

North Wabash Venture, LLC, THC Miami Restaurant Hospitality, LLC, Trump Briarcliff Manor

Development, LLC, Trump Chicago Retail, LLC, Trump Miami Resort Management, LLC, Trump

National Golf Club Colts Neck, LLC, and Trump National Golf Club, LLC (collectively,

"Plaintiffs"), by and through undersigned counsel, submit their Memorandum of Law in

Opposition to Defendants JPMorgan Chase Bank, N.A. ("JPMC") and James Dimon's ("Dimon")

(together, "Defendants") Motion to Transfer Under 28 U.S.C. § 1404(a) ("Motion to Transfer").

In support, Plaintiffs state as follows:

## SUMMARY OF OPPOSITION

For three principal reasons, the Court should deny Defendants' Motion to Transfer.

*First*, half of the claims alleged against Defendants have no connection to Plaintiffs' Accounts or the forum selection clauses that Defendants rely on heavily in their Motion to Transfer. Defendants' passing attempt to group those claims under the same umbrella as Plaintiffs' claims for declaratory relief and breach of implied covenant of good faith and fair dealing—that relate to Plaintiffs' Accounts—is misguided.

*Second*, the multiple factors set forth in 28 U.S.C. § 1404(a) weigh in favor of finding that New York ***is not*** a more convenient forum than this District.

*Third*, there are genuine factual disputes relating to Plaintiffs' jurisdictional allegations that warrant venue discovery. Defendants claim that none of the conduct in this suit occurred in Florida. However, Plaintiffs directly dispute this in their jurisdictional allegations. The Eleventh Circuit has declared that when there are factual disputes germane to the merits of an action, a plaintiff possesses a qualified right to engage in jurisdictional discovery to resolve the disputes and aid the Court's venue analysis.

For these and the reasons that follow, the Court should deny Defendants' Motion to Transfer.

## ARGUMENT

**A.    The Motion to Transfer should not be addressed until Plaintiffs' Motion for Remand is adjudicated**.

Given that Plaintiffs have filed a Motion for Remand contemporaneously with this Opposition, Plaintiffs submit that the Court should not adjudicate Defendants' Motion to Transfer until the threshold question of whether this Court has subject-matter jurisdiction is resolved. Here, there is no basis for diversity jurisdiction because Plaintiff Trump Payroll Corp. is a corporation

2

incorporated in New York with its principal place of business in New York, and Defendant Dimon is a resident of New York. *See* D.E. 1-2, ¶¶ 2, 12. Defendants do not dispute these assertions. *See* D.E. 1; *see also* D.E. 15. Nevertheless, Defendants incorrectly contend that diversity jurisdiction exists because Plaintiffs "fraudulently joined" Dimon to defeat diversity jurisdiction. *See* D.E. 1 (asserting multiple arguments claiming that Dimon was fraudulently joined). However, for the reasons articulated in Plaintiffs' Motion for Remand, Defendants fall woefully short of the clear and convincing evidentiary standard applicable to Defendants' unsubstantiated argument that there is no possibility that Plaintiffs have stated a claim against Dimon.

Deferring adjudication of the Motion to Transfer until the Motion for Remand is resolved is proper because "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle,* 7 Wall. 506, 514, 19 L.Ed. 264 (1868)). If the Court grants the Motion to Remand, resolution of the instant Motion to Transfer will be rendered moot.

This established principle of law was followed in a similar procedural scenario before the Eleventh Circuit. In *Snapper, Inc. v. Redan*, 171 F.3d 1249 (11th Cir. 1999), the Eleventh Circuit affirmed the district court's decision to grant the motion for remand and deem the simultaneously pending motion to transfer moot following remand. *See id*., at 1251. Although there is "no bright-line rule" as to whether the Motion for Remand should be decided first, not doing so would only be proper when there is another court that is already familiar with the disputed issues. *Cf. Zampa v. JUUL Labs, Inc.,* 2019 WL 1777730, at *4 (S.D. Fla. Apr. 23, 2019) (declining to decide a motion for remand before a motion to transfer because "the Northern District of California is most

familiar with the issues presented because it has already consolidated several cases against Defendant for alleged violations of state and federal laws[.]"). Here, no such scenario exists.

Other courts around the country—including the one that Defendants desire transfer to—have held that it is proper to decide a motion for remand before a motion to transfer. *See Callen v. Callen*, 827 F. Supp. 2d 214, 215 (S.D.N.Y. 2011) ("When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand.") (quoting *Stahl v. Stahl,* 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003)); *see also Deutsche Oel & Gas S.A. v. Energy Capital Partners Mezzanine Opportunities Fund A, LP*, 2020 WL 5814233, at *5 (S.D.N.Y. Sept. 30, 2020) (same); *see also Letbetter v. Local 514, Transp. Workers Union of Am.,* No. 14-CV-00125-TCK-FHM, 2014 WL 4403521, at *1 (N.D. Okla. Sept. 5, 2014) ("Ordinarily, a federal court resolves any question about its jurisdiction before it reaches the merits of a case. The Court, therefore, finds it prudent to rule on the Motion to Remand before considering the Motion to Transfer."); *see also Bocock v. Medventure Tech. Corp.,* No. 4:13-CV-00108-SEB, 2013 WL 5328309, at *3 (S.D. Ind. Sept. 20, 2013) ("Applying the *Meyers* analysis to the above-captioned matters, the Court finds that the jurisdictional question presented here is likely to be unique and should be resolved before transferring these cases to MDL 2326. … For the same reasons, the Court is not persuaded that the judiciary (or, for that matter, BSC) will be forced to expend significantly more resources by resolving jurisdiction in this District than it would in the Southern District of West Virginia. Because jurisdiction must be established, the resources will be expended all the same; the question is strictly one of where they will be expended.").

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │Coral Gables, Florida 33134
Telephone: (305) 614-4071

Accordingly, if this Court grants remand—because Dimon's proper joinder destroys diversity—there is no case over which to exercise transfer authority. Thus, until the Motion for Remand is adjudicated, it is premature to consider Defendants' Motion to Transfer.

> **B.        The forum selection clauses do not sweep in Counts I and II**.

Defendants' Motion to Transfer fails at its threshold because it assumes that every claim in this case falls within one or another account agreement. This contention is wrong. Even if the forum selection clauses are valid and enforceable, which Plaintiffs wholly dispute and are moving to obtain jurisdictional discovery thereupon, the clauses do not encompass two of Plaintiffs' four claims: Count I for Trade Libel against JPMC, and Count II for violation of FDUTPA against Dimon. Those claims do not arise out of, relate to, or have a direct connection to the account agreements necessary to trigger the clauses.

The Eleventh Circuit has made clear that phrases such as "arising out of" and "relating to" are not limitless. A dispute arises out of or relates to the contract in question "where the dispute occurs as a fairly direct result of the performance of contractual duties[.]" *Telecom Italia, SpA v. Wholesale Telecom Corp.,* 248 F.3d 1109, 1116 (11th Cir. 2001). The Court has expressly rejected any rule that a clause applies merely because a dispute would not have arisen "but for" the parties' agreement. As the Eleventh Circuit explained, "related to" still requires a direct relationship; otherwise, the phrase would "stretch to the horizon and beyond." *Doe v. Princess Cruise Lines, Ltd.,* 657 F.3d 1204, 1218 (11th Cir. 2011); *see also Int'l Underwriters AG v. Triple I: Int'l Investments, Inc.,* 533 F.3d 1342, 1347 (11th Cir. 2008) ("Moreover, *Blinco* did not establish any rule that any dispute that could not have arisen but for an agreement necessarily 'arises from or relates to' the agreement within the meaning of an arbitration clause. We disapproved any such rule in *Seaboard Coast Line R.R. Co. v. Trailer Train Co.,* 690 F.2d 1343 (11th Cir. 1982).").

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

This is precisely the flaw in Defendants' Motion to Transfer. Counts I and II *are not* claims concerning the operation, maintenance, or closure of Plaintiffs' accounts under the governing account agreements. Rather, those claims challenge a separate course of wrongful conduct: Defendants' publication of Plaintiffs' names—including President Trump, the Trump Organization, affiliated entities, and members of the Trump family—on a blacklist intended to induce other federally regulated banks not to transact with them. The Complaint expressly alleges that the wrongful termination of the accounts and the blacklist publication were separate and distinct acts. The account-termination and debanking allegations are tied to Counts III and IV. By contrast, Counts I and II arise from different conduct, seek redress for different injuries, and implicate different legal duties.

This distinction matters. In *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335 (11th Cir. 2012), the Eleventh Circuit held that a forum selection clause in a lot purchase contract did not reach appraisal-fraud claims against mortgage entities because that dispute was not "a fairly direct result of the performance of contractual duties" under the purchase agreement. *Byers*, 701 F.3d at 1341 (quoting *Telecom Italia, SpA v. Wholesale Telecom Corp.,* 248 F.3d 1109, 1116 (11th Cir. 2001)). The same reasoning applies here. Plaintiffs' trade libel and FDUTPA claims do not depend on construing the account agreements, proving breach of those agreements, or determining whether JPMC properly exercised any contractual termination right. Nor do Counts I and II arise from Plaintiffs' Accounts or the April 19, 2021, termination letter ("Termination Letter") referenced in the Complaint. *See* D.E. 1-2, ¶¶ 45-51. Notably, Counts I and II do not identify any specific accounts terminated pursuant to the Termination Letter—those allegations appear only in Counts III and IV. *Compare* D.E. 1-2, ¶¶ 85-92, 94-98; *with* D.E. 1-2, ¶¶ 100-108, 110-118. Counts

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

I and II, instead, arise from an alleged blacklist scheme external, and not related, to the account contracts.

Defendants try to blur that distinction by contending that Counts I and II "relate to" the parties' contractual relationship because the alleged blacklist somehow concerned whether Plaintiffs' accounts complied with "applicable banking rules and regulations." D.E. 15, p. 10. But that is Defendants' characterization—not the claim that Plaintiffs actually pled. Counts I and II do not seek relief for any contractual decision to close accounts or for any right allegedly conferred by the account terms. They instead seek relief for allegedly false and deceptive publications to third parties. *See* D.E. 1-2, ¶¶ 85-92. A tort or statutory claim does not become contractual merely because the parties also had a banking relationship. Otherwise, every business tort between contracting parties would automatically fall within a forum-selection clause, a result the Eleventh Circuit has expressly rejected. *See Doe,* 657 F.3d at 1218; *Telecom Italia, SpA,* 248 F.3d at 1116.

The same is true as to Count II against Dimon. He is not a party to any of the agreements attached to, or referenced in Defendants' Motion to Transfer. *See generally* D.E. 15. Nor can he invoke those agreements to compel transfer here. As the Eleventh Circuit explained in *Bahamas Sales,* for a non-signatory to enforce a contract under equitable estoppel, the claim against that non-signatory must actually depend on the underlying contract. 701 F.3d at 1343. Count II does not. It arises from alleged deceptive and unfair conduct engaged in by Dimon, not from any contractual undertaking, right, or obligation created by the account agreements. Because Count II does not arise out of or relate to those agreements in the first place, Dimon cannot use contracts he never signed to force the transfer of a claim that does not depend on them.

Defendants' reliance on *Radical Investments Ltd. v. Good Vibrations Ent. LLC*, 2022 WL 2188278 (S.D. Fla. Apr. 25, 2022), does not change the result. There, the non-signatory defendants

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

simply did not object to the transfer of the case as a whole. *Id.* at *3. But the pertinent question here is not whether a non-signatory could request transfer in the abstract. It is whether the claims themselves fall within the scope of the operative forum selection clauses. Here, that issue is central, and Defendants cannot sidestep it. The relevant question is whether Count I or Count II arises out of or relates to the account agreements. They do not. *Radical Investments* does not authorize Defendants to sweep independent tort and statutory claims into clauses that do not cover them.

For the same reason, Defendants' reliance on *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49 (2013) is misplaced. There, *all* claims fell within the scope of the forum-selection clause in dispute. *See id*. at 49 ("The subcontract included a forum-selection clause, which stated that all disputes between the parties would be litigated in Virginia."). Here, by contrast, Counts I and II are independent claims that fall outside of the forum selection clauses. *See supra* § B. The Court, therefore, should first determine the scope of the forum selection clauses. And once it does, Defendants' attempt to transfer the entire action fails. Despite their contention to the contrary, Defendants are not entitled to *Atlantic Marine's* extraordinary presumption in favor of transfer for claims that are not contract-based and do not require reference to the account agreements.

C.      **Enforcing the forum-selection clauses risks piecemeal litigation**.

Transfer is also inappropriate because enforcing the forum selection clauses as Defendants propose would fracture this case into two proceedings: Counts I and II remaining here, and Counts III and IV potentially proceeding elsewhere. Federal courts disfavor this kind of piecemeal litigation. The Supreme Court has long recognized the "desirability of avoiding piecemeal litigation." *Colorado River Water Conservation Dist. v. U. S.,* 424 U.S. 800, 818 (1976). The Eleventh Circuit likewise recognizes that forum selection clauses need not be enforced where

doing so would contravene public policy. *See Krenkel v. Kerzner Intern. Hotels Ltd.,* 579 F.3d 1279, 1281 (11th Cir. 2009) (recognizing that enforcement of forum-selection clauses is disfavored when they "contravene public policy"). Consistent with this principle, courts in this District have refused to enforce forum selection clauses when doing so would create burdensome piecemeal litigation and risk inconsistent judgments. *See BP Products N. Am., Inc. v. Super Stop 79, Inc.,* 464 F. Supp. 2d 1253, 1257–58 (S.D. Fla. 2006) ("BP contends that enforcement of the clauses would result in burdensome piecemeal litigation, which may result in inconsistent judgments. This Court agrees. It is true that the Parties agreed to a clear and unambiguous forum selection clause which designates the Circuit Court in and for Broward County, Florida as the exclusive jurisdiction to resolve actions related to Notes I and II. However, enforcement of the forum selection clauses may result in inconsistent judgments between this Court and the Florida state court."). When enforcing a clause would splinter one case into two, multiply proceedings, duplicate motion practice and discovery, and create a real risk of inconsistent rulings on common issues, the "interest of justice" no longer favors transfer. It cuts the other way. *See Patten Air, LLC v. Howard*, 2018 WL 9837756, at *9 (S.D. Fla. Jan. 3, 2018) (collecting cases: "In short, courts routinely find that it would be both against the interests of justice and against parties' private interests to enforce a forum selection clause that results in litigating intertwined claims in two different and distant courts.").

Plaintiffs' claims arise from the same overall course of conduct and will substantially overlap in witnesses, facts, and proof. Splitting them between two courts would create duplication, inefficiency, and the serious risk of inconsistent rulings. This principle has real force here because Defendants have not shown that the forum-selection clauses govern any, let alone, all the claims in this case. If the Court were to adopt Defendants' position, overlapping claims arising from the same nucleus of facts would proceed in different forums before different judges under different

schedules, with duplicative litigation over the same events. In this setting, transfer does not vindicate the parties' contractual expectation of a single chosen forum for the dispute. It instead produces the worst of both worlds—one subset of claims in the contractual forum, and the rest in the original forum. The Court should not sever interrelated claims and force parallel litigation in different forums merely because Defendants overread contract clauses that, even if they were applicable, which they are not, do not govern half the case. Whatever force a forum selection clause may carry, it does not justify an inefficient and fragmented result where independent claims fall outside the clause and should remain in this Court.

Because *Atlantic Marine* does not authorize transfer of claims outside the scope of a forum selection clause, and because any contrary ruling would splinter this case into inefficient parallel proceedings, the Motion to Transfer on this basis should be denied.

**D.      28 U.S.C. § 1404 does not favor transfer to New York**.

To determine whether to transfer an action for the convenience of the parties:

> The **private factors** to be considered include: (a) the plaintiff's initial choice of forum, (b) the convenience of the parties, (c) the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses, (d) the relative ease of access to sources of proof and location of relevant documents, and (e) the financial ability to bear the costs of change. The **public factors** to be considered include (a) the forum's familiarity with the governing law, (b) the forum's interest in adjudicating the dispute, (c) the burden of jury duty on the forum's community, and (d) the relative docket congestion.

*Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1282 (S.D. Fla. 2012) (internal citations omitted) (emphasis added).

**i.          Defendants' reliance on *Atlantic Marine* is misplaced**.

As explained above, half of Plaintiffs' causes of action do not arise out of or relate to the forum selection clauses at issue, even if the clauses were operative, which they are not. *See supra* § B. Given that all causes of action at issue in *Atlantic Marine* fell within the scope of the forum

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

selection clause in dispute in that action, *Atlantic Marine* is distinguishable because Plaintiffs have not been found to have acted "in violation of the forum-selection clause." *Atlantic Marine*, 571 U.S. at 67. Therefore, they do not have "the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id*.

Instead, Defendants must demonstrate that "transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." *Fruitstone v. Spartan Race Inc.,* 464 F. Supp. 3d 1268, 1285 (S.D. Fla. 2020) (quoting *Stiefel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1339 (S.D. Fla. 2008)). Here, Defendants fall short of substantiating their burden that the private and public factors support transfer.

### ii.    Private factors do not warrant transfer.

***Plaintiffs' choice of forum is entitled to considerable deference***. "Traditionally, a plaintiff's choice of forum is accorded considerable deference, and unless ... clearly outweighed by other considerations, it should not be disturbed." *Exotropin, LLC v. DP Derm, LLC*, 2025 WL 2306200, at *10 (S.D. Fla. Aug. 11, 2025) (quoting *Sorensen v. Am. Airlines, Inc*., 2022 WL 2065063, at *7 (S.D. Fla. June 8, 2022)). Defendants make only a passing argument that Plaintiffs' choice of forum should not be afforded any deference. *See* D.E. 15, p. 13. Those arguments do not demonstrate—by any interpretation—why Plaintiffs' choice of forum would be clearly outweighed by the other considerations stated in Defendants' Motion to Transfer, which is not reality.

Conversely, Plaintiffs' decision to file in this District should be afforded considerable deference because the harm they suffered was experienced in this District. *See* D.E. 1-2, ¶ 19. Indeed, Plaintiffs allege that Defendant Dimon's instruction to publish the names of President Trump, Plaintiffs, the Trump Organization, and its affiliated entities, and the Trump family on a

blacklist that was accessible by any other federally regulated bank nationwide, including Florida, caused Plaintiffs harm. *See* D.E. 1-2, ¶¶ 54, 92. This publication was authorized and instructed by Dimon, and it was effectuated by Defendant JPMC. *See id.*, ¶¶ 85-87.

"Under Florida law, the tort of defamation or slander occurs wherever the allegedly false material is circulated." *Stern v. O'Quinn*, 2008 WL 11401793, at *5 (S.D. Fla. July 14, 2008) (relying on *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777 (1984)). "[I]n the context of defamation and other non-physical torts, courts generally hold that venue under section 1391(a)(2) is proper in the district where the injured party resides and the defamatory statements were published." *Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc.,* 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) (collecting cases and finding that venue was proper under 28 U.S.C. § 1391(a)(2), which was later amended to 1391(b)(2)); *see also Adam J. Rubinstein, M.D., P.A. v. Ourian*, No. 20-21948-CIV, 2020 WL 6591559, at *4 (S.D. Fla. Nov. 10, 2020) (collecting cases reaching same conclusion and denying motion to transfer venue).

Given that Plaintiffs allege that the blacklist was accessible by federally regulated banks throughout the United States, and that eight out of the ten Plaintiffs reside in or maintain their principal place of business in Florida, the greater majority of Plaintiffs' harm was felt in Florida. *See* D.E. 1-2, ¶¶ 1-10, 54-58, 86-92. Thus, Plaintiffs' choice of forum should be afforded considerable deference. *See supra Exotropin*, 2025 WL 2306200, at *10; *see also Fruitstone*, 464 F. Supp. 3d at 1284 (denying motion to transfer: "Florida is Plaintiff's home forum, certain operative facts occurred here, and Plaintiff asserts Florida-law based claims."); *cf. Vivant Pharm., LLC v. Clinical Formula, LLC*, No. 10-21537-CIV, 2011 WL 1303218, at *2 (S.D. Fla. Mar. 31, 2011) (cited only to explain applicable standard: "The decision to exercise pendent venue is a matter of judicial discretion that only follows the court's consideration of factors such as judicial

12

economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants."). Thus, Defendants have not demonstrated that this factor supports transfer.

*New York is an inconvenient forum for Plaintiffs*. Other than general allegations that Defendants, certain unnamed witnesses, and certain pieces of evidence are located in New York, Defendants do not submit any tangible argument demonstrating why New York would be a more convenient forum for the parties than Florida. *See* D.E. 15, p. 13. The failure to identify any witnesses by name or what testimony they intend to offer cuts against finding that this factor supports transfer. *See Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1164 (S.D. Fla. 2017) ("[T]he party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony." (citing *Mason v. Smithkline Beecham Clinical Labs*, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001)).

Even though Plaintiffs operate businesses outside of Florida, eight of the ten Plaintiffs in this action maintain their principal place of business in Florida. *See* D.E. 1-2, ¶¶ 1-10. At best, Defendants' arguments on this factor amount to shifting the inconvenience from them to Plaintiffs. That, however, does not justify transfer. *See Mason v. Smithkline Beecham Clinical Labs.,* 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) ("Where a transfer 'merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain.' Therefore, the factor of convenience to Defendants, while relevant, does not weigh heavily in favor of transfer.") (quoting *Eye Care International, Inc. v. Underhill,* 119 F.Supp.2d 1313, 1319 (M.D.Fla. 2000)).

*Defendants fail to identify the key witnesses who are located in New York*. Defendants do not submit any argument or substantiate with evidence any argument that New York would be

a more convenient forum for their witnesses. *See generally* D.E. 15, pp. 11-16. These general allegations, however, are insufficient. *See supra Gubarev*, 253 F. Supp. 3d at, 1164.

***Electronic transmission of documents renders their location virtually irrelevant***. In addition, Defendants do not explain—with argument or evidence—why the production of documents from New York would be so burdensome as to justify or support transfer. *See Exotropin,* 2025 WL 2306200, at *8 ("Defendants do not explain why producing documentary evidence in Florida would be burdensome, nor do they identify the specific evidence at issue or its location."); *see also Guarantee Ins. Co. v. Amazing Home Care Servs., LLC*, 2013 WL 12094328, at *3 (S.D. Fla. Feb. 13, 2013) ("[I]n this age of electronic discovery, it is no more burdensome for Defendant to produce its documents in Florida than it is for it to produce them in New York. The Court has previously found, and repeats here, that '[p]roducing documents and other files for litigation ... is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval.' "). Consequently, this factor does not favor transfer.

***None of the parties' financial ability affects transfer***. Defendants do not address this factor. *See* D.E. 15, pp. 11-16. Thus, this factor is neutral in the Court's analysis and does not support transfer.

### iii.        Public factors do not warrant transfer.

***Half of Plaintiffs' claims—including the single claim against Dimon—arise under Florida law***. Plaintiffs' Motion for Remand demonstrates that Plaintiffs' claim against Dimon involves careful, detailed analysis of Florida Statutes §§ 501.204 and 501.212(4). *See* Motion for Remand, § (C)(i)-(iv). Given that this Court is more familiar with Florida law than the Southern District of New York, this factor does not support a transfer. *See Tuuci Worldwide, LLC v. S. Frankford & Sons, Inc.,* 2023 WL 5275187, at *13 (S.D. Fla. Aug. 16, 2023) ("The Court agrees

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│Coral Gables, Florida 33134
Telephone: (305) 614-4071

with Plaintiff that this factor weighs against transfer to Pennsylvania since there are claims brought under Florida law but not under Pennsylvania law."); *see also Waterproof Gear, Inc. v. Leisure Pro, Ltd.*, No. 8:08-cv-2191, 2009 WL 1066249, at *6 (M.D. Fla. Apr. 20, 2009) (denying motion to transfer from Florida to New York because if the case was "transferred to New York, the New York district court would have to apply Florida law to [the plaintiff]'s state law claims[,]" and the "New York district court would not be as familiar with Florida law as a Florida district court would be" (alterations added; citation omitted)).

*Defendants do not explain why the Southern District of New York has a greater interest than this District to decide this action*. Given that Defendants do not address this factor, it does not support a determination favoring transfer. *See* D.E. 15, pp. 11-16.

*Defendants do not identify any legitimate burden on the community*. Because Defendants do not address this factor, it does not support transfer. *See* D.E. 15, pp. 11-16; *see also AutoNation, Inc. v. Hall*, 2019 WL 3712008, at *10 (S.D. Fla. May 29, 2019) (denying a motion to dismiss where a defendant has not shown the interest of justice requires transfer).

*Defendants do not address why the Southern District of New York is a more efficient forum*. Tellingly, Defendants do not address this factor. *See* D.E. 15, pp. 11-16; *see also Exotropin*, 2025 WL 2306200, at *11 (denying motion to transfer: "this Court enjoys a considerable advantage in median pendency from civil case filing to disposition and trial."). Thus, this factor does not support transfer.

**CONCLUSION**

**WHEREFORE**, Plaintiffs President Donald J. Trump, Trump Payroll Corp., 401 Mezz Venture, LLC, 401 North Wabash Venture, LLC, THC Miami Restaurant Hospitality, LLC, Trump Briarcliff Manor Development, LLC, Trump Chicago Retail, LLC, Trump Miami Resort Management, LLC, Trump National Golf Club Colts Neck, LLC, and Trump National Golf Club, LLC respectfully request that the Court deny Defendants' Motion to Transfer and award any other relief the Court deems proper.

Dated: March 23, 2026

Respectfully submitted,

**BRITO, PLLC**
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office: 305-614-4071
Fax: 305-440-4385

By: /s/ *Alejandro Brito*
    **ALEJANDRO BRITO**
    Florida Bar No. 098442
    Primary: abrito@britopllc.com
    Secondary: apiriou@britopllc.com
    **IAN MICHAEL CORP**
    Florida Bar No. 1010943
    Primary: icorp@britopllc.com

*Attorneys for Plaintiffs President Donald J. Trump, et. al.*

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 23, 2026, the foregoing was served via the Court's

CM/ECF System upon:

<table>
<tr>
<td>

**JONES DAY**
600 Brickell Avenue
Suite 3300
Miami, FL 33131
Telephone: 305-714-9700
Facsimile: 305-713-9799
**ELIOT PEDROSA**
Florida Bar No. 182443
Email: epedrosa@jonesday.com
**KELLY A. CARRERO**
Florida Bar No. 1072663
Email: kcarrero@jonesday.com

</td>
<td>

**JONES DAY**
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: 202-879-3939
**NOEL J. FRANCISCO**
*Admitted pro hac vice*
Email: njfrancisco@jonesday.com
**CHARLOTTE H. TAYLOR**
*Admitted pro hac vice*
Email: ctaylor@jonesday.com

</td>
</tr>
<tr>
<td>

**JONES DAY**
250 Vesey Street
New York, NY 10281
Telephone: 212-326-3939
Facsimile: 212-755-7306
**JAYANT W. TAMBE**
*Admitted pro hac vice*
Email: jtambe@jonesday.com
**AMANDA L. DOLLINGER**
*Admitted pro hac vice*
Email: adollinger@jonesday.com

</td>
<td>

**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Cir, 8th Floor
Miami, FL 33134
Telephone: (305) 740-1975
Facsimile: (305) 351-4059
**DEREK E. LEON**
Florida Bar No. 625507
Email: dleon@leoncosgrove.com

</td>
</tr>
</table>

*Attorneys for Defendants*
*JPMorgan Chase Bank, N.A. and James Dimon*

By: /s/ *Alejandro Brito*

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071