**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, TRUMP PAYROLL CORP., 401 MEZZ VENTURE, LLC, 401 NORTH WABASH VENTURE, LLC, THC MIAMI RESTAURANT HOSPITALITY, LLC, TRUMP BRIARCLIFF MANOR DEVELOPMENT, LLC, TRUMP CHICAGO RETAIL, LLC, TRUMP MIAMI RESORT MANAGEMENT, LLC, TRUMP NATIONAL GOLF CLUB COLTS NECK, LLC, and TRUMP NATIONAL GOLF CLUB, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> JPMORGAN CHASE BANK, N.A. and JAMES DIMON, <br><br> Defendants. | Case No. 1:26-cv-21106-KMW |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN**
**FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR REMAND**

Plaintiffs President Donald J. Trump ("President Trump"), Trump Payroll Corp., 401 Mezz Venture, LLC, 401 North Wabash Venture, LLC, THC Miami Restaurant Hospitality, LLC, Trump Briarcliff Manor Development, LLC, Trump Chicago Retail, LLC, Trump Miami Resort Management, LLC, Trump National Golf Club Colts Neck, LLC, and Trump National Golf Club, LLC (collectively, "Plaintiffs"), by and through undersigned counsel, submit their Reply Memorandum of Law in Further Support of Plaintiffs' Motion For Remand. In support, Plaintiffs state as follows:

## SUMMARY OF REPLY

For at least three reasons, Defendants' response to Plaintiffs' Motion for Remand [ECF No. 31] fails to cure the fatal defects with Defendants' Notice of Removal [ECF No. 1], thereby leaving no doubt that Plaintiffs' Motion for Remand should be granted.

*First*, Defendants' response does not direct the Court to any evidence that proved either that Plaintiffs fraudulently pled facts in their Complaint, which they did not do, or that there is "no possibility" that Plaintiffs stated a claim against Defendant James Dimon ("Dimon"). Not only are Defendants' Notice of Removal [ECF No. 1] and their response to Plaintiffs' Motion for Remand devoid of any evidence supporting their arguments, but the cases relied on by Defendants for those arguments are easily distinguishable as well.

*Second*, Defendants fall short of demonstrating that Dimon is covered by the safe harbor provision under Florida Statute § 501.212(4). As the cases interpreting that statute unequivocally demonstrate, unless the regulation at issue specifically covers the alleged conduct, the safe harbor provisions of Florida Statute § 501.212(4) do not apply. Because Defendants fail to identify any statute that regulates the unlawful conduct at issue—publishing the names of President Trump, the other Plaintiffs, the Trump Organization and its affiliated entities, and/or the Trump family's names on a blacklist designed to induce other federally regulated banks in the United States from transacting with them—Dimon cannot rely on the safe harbor provision to escape liability.

*Third*, Plaintiffs allege that Dimon engaged in an unfair or deceptive trade practice, that Dimon's unfair and deceptive trade practices caused other federally regulated banks to not transact with Plaintiffs, and as a natural and probable consequence, Plaintiffs suffered financial and reputational harm. Thus, Plaintiffs state a claim against Dimon under Florida Statute § 501.204(1).

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650│Coral Gables, Florida 33134
Telephone: (305) 614-4071

## ARGUMENT

### A. The fraudulent joinder standard has remained constant for decades.

Defendants' reliance on *Otoh v. Fed. Nat'l Mortgage Ass'n*, 2025 WL 915028, at *3 (11th Cir. Mar. 26, 2025) is a concession that the fraudulent joinder standard imposes on Defendants the "burden of proving by clear and convincing evidence that (1) there is no possibility the plaintiff can establish a cause of action against the fraudulently joined party; or (2) the plaintiff fraudulently pleaded jurisdictional facts." Indeed, the Eleventh Circuit has applied this framework for nearly three decades. *See id*. (citing and relying on *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284 (11th Cir. 1998) and *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329 (11th Cir. 2011)).

Defendants' response does not direct the Court to *any* evidence that shows that Plaintiffs have fraudulently alleged facts against Dimon, nor does the response demonstrate that there is *no possibility* that Plaintiffs have established a cause of action against Dimon. Moreover, each of the cases relied on by Defendants applied the same standard explained above, and, in any event, are factually distinguishable from this action.

*Otoh* concerned a cause of action for intentional infliction of emotional distress under Georgia law, which does not apply to this action. *See Otoh*, 2025 WL 915028, at *4. Moreover, *Otoh* provided little to no analysis explaining why there was no possibility that the plaintiff could establish a valid cause of action. Instead, it stated only that "As to Counts One and Two, Otoh failed to demonstrate that the Defendants' foreclosure conduct rose to the level of extreme and outrageous to sustain an intentional infliction of emotional distress claim under Georgia law." *Id*.

In *Bolden*, the court was persuaded that there was no possibility that a cause of action could have been made under Alabama Code § 27-23-2 because there was a "declaration explaining that the AEA is the 'insured unit,' not an insurer." *Bolden v. Nautilus Ins. Co.,* 2023 WL 4614509, at

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

*2 (11th Cir. July 19, 2023). Here, however, no declaration—or any other evidence—has been identified or introduced by Defendants to justify their theory that Dimon is automatically exempt under Florida Statute § 501.212(4).

*Oliva* is distinguishable because the court concluded—based on sworn testimony from the plaintiff—that "there is no possibility that Plaintiff can establish a viable intentional tort claim against the resident Defendant Rexall that satisfies the stringent requirements of Fla. Stat. § 440.11(b)," and that "Defendant Rexall is statutorily immune from Plaintiff's negligence claim in Count VII of the Third Amended Complaint." *Oliva v. NBTY, Inc.,* 2011 WL 13103994, at *4-5 (S.D. Fla. Sept. 12, 2011). This action is markedly different because the parties have not conducted any discovery. *See Pacheco de Perez v. AT&T Co.,* 139 F.3d 1368, 1380 (11th Cir. 1998) ("The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.").

Defendants' reliance on *Legg* is similarly unavailing. *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) ("When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint.").

Upon closer review, however, *Legg* actually supports Plaintiffs' position. Indeed, *Legg* emphasized that "[t]he proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b).'" *Legg v. Wyeth*, 428 F.3d 1317, 1322–23 (11th Cir. 2005) (quoting *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir. 1997)).

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Standing alone, because none of the cases relied on by Defendants help establish their burden on fraudulent joinder, the Court should grant Plaintiffs' Motion for Remand.

**B.  There is no case interpreting Florida Statute § 501.212(4) that exempts Dimon.**

No court has ever concluded that Florida Statute § 501.212(4) automatically exempts a bank CEO from liability. Defendants attempt to skirt this by relying heavily on general theories that fall short of filling this gaping hole in their arguments. For example, Defendants contend that *KC Leisure* requires a condition precedent: that Plaintiffs first establish corporate liability before a claim can be alleged under FDUTPA. *See* ECF No. 33, p. 7 (quoting *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008): "[A]n individual may be liable for corporate practices … *once corporate liability is established*."). However, Defendants omit from this quote that this statement was specific to the Federal Trade Commission Act—not FDUTPA. Here is the entire quote: "**The case law demonstrates, however, that under the Federal Trade Commission Act** an individual may be liable for corporate practices **in violation of that statute** once corporate liability is established." *KC Leisure*, 972 So.2d at 1073 (emphasis added to highlight omissions). Indeed, *KC Leisure* emphasizes that "it has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *KC Leisure*, 972 So. 2d at 1074 (collecting cases and explaining that the corporate veil need not be pierced).

Defendants' interpretation of *Bankers Tr. Co. v. Basciano*, 960 So. 2d 773 (Fla. 5th DCA 2007) fares no better. As *Basciano* emphasizes:

> When a statute is free from ambiguity, we follow its plain meaning. A clear and unambiguous statute that conveys a clear and definite meaning causes no reason to resort to the rules of statutory interpretation; we must simply give the statute its plain and obvious meaning. *Clines v. State,* 912 So.2d 550, 555–56 (Fla.2005). Here, the statute unambiguously excludes banks.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

*Id.*, at 779.

The plain language of Florida Statute § 501.212(4) does not expressly apply to Dimon, and, therefore, Defendants' interpretation of *Basciano* does not resolve this unsettled question of Florida law either.

Defendants' reliance on the institution-affiliated parties statutes also fails. Defendants once again attempt to rely on these to contend that Dimon's alleged regulation thereunder is equivalent to concluding that he is exempt under Florida Statute § 501.212(4) because he is a "person … regulated by federal agencies." ECF No. 33, p. 9. However, Defendants fail to demonstrate that *the alleged conduct*—publishing the names of President Trump, the other Plaintiffs, the Trump Organization and its affiliated entities, and/or the Trump family's names on a blacklist designed to induce other federally regulated banks in the United States from transacting with them—is regulated by the federal agencies that Defendants identify. *See* D.E. 1-2, ¶ 54.

An examination of the alleged conduct, and not the title or role of the person engaging in such conduct, is the applicable standard, which Defendants do not dispute. *Compare generally* ECF No. 33; *with Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1267–68 (S.D. Fla. 2015) (denying motion for summary judgment and finding that exemption under Fla. Stat. § 501.212 did not apply: "the question under FDUTPA is whether the activity that is the subject of this lawsuit is subject to the regulatory authority" of the agency in question); *see also Martorella v. Deutsche Bank Nat'l Tr. Co.,* 161 F. Supp. 3d 1209, 1216 (S.D. Fla. 2015), *adhered to on reconsideration*, 2015 WL 10857441 (S.D. Fla. Nov. 9, 2015) ("Defendants fail to meet their burden of establishing, as a matter of law, that the activity at issue in this case, the alleged charging of excessive and unreasonable amounts for LPI in exchange for commissions and other remuneration, was regulated by the FLOIR."); *see also W.S. Badcock Corp. v. Myers,* 696 So. 2d 776, 783 (Fla. 1st DCA 1996)

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

(finding that the exemption under Fla. Stat. § 501.212 did not apply because the conduct alleged in the complaint was not a regulated activity).

Instead, Defendants once again attempt to rely on general statutes that fall short of the specific unlawful conduct that Dimon is alleged to have committed. *See generally* ECF No. 1; *see also* ECF No. 33. Consequently, Defendants cannot demonstrate that Florida Statute § 501.212(4) applies to Dimon. *See State, Office of Attorney Gen., Dept. of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) ("There was no evidence in the record, and certainly no allegation within the four corners of the pleading pending before the trial court, that the specific activities here were regulated by any other state or federal agency so as to avoid proscription as a deceptive or unfair trade practice.").

### C.  Plaintiffs have stated a claim under Florida Statute § 501.204(1) against Dimon.

As a final, failed attempt to persuade this Court, Defendants contend that Plaintiffs failed to state a claim under Florida Statute § 501.204. *See* ECF No. 33, §§ III-IV. Each of Defendants' arguments is unavailing and easily defeated.

*First*, Plaintiffs specifically stated that Dimon "has been and remains engaged in the practice of selling, providing, and exchanging goods, commerce, and trade." D.E. 1-2, ¶ 95. Plaintiffs further stated that Dimon's "practice of selling, providing, and exchanging goods, commerce, and trade" was specifically tied to the activity at issue "when he directed, authorized, and instructed JPMC to publish the names of President Trump, the other Plaintiffs, the Trump Organization, and its affiliated entities, and/or the Trump family on the blacklist described in paragraphs 52 through 59." ECF No. 1-2, ¶ 96. These allegations are more than sufficient to allege a claim under Florida Statute § 501.204.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Instead of addressing this head-on, Defendants rely on *AMG Trade & Distrib., LLC v. Nissan N. Am., Inc.*, 813 F. App'x 403 (11th Cir. 2020) for the proposition that "compliance-related information voluntarily reported by a business to non-customer entities … to a third party does not qualify as actionable conduct under FDUTPA, even if they allegedly damage a plaintiff's reputation." ECF No. 33, p. 15. However, the court in *AMG Trade* found that Nissan's obligatory conduct of responding to a government agency inquiry was not an unfair or deceptive trade practice under Florida Statute § 501.204(1), but rather, it was simply "a response to a request for information." *AMG Trade,* 813 Fed. Appx. at 408 ("Voluntarily confirming whether a part is counterfeit when the government asks for such help is just that—a response to a request for information.").

The claim alleged in this action could not be more different. Defendants have not provided any evidence addressing Plaintiffs' allegations that Defendants' conduct was willful, in bad faith, and for the express purpose of discouraging "other federally regulated banks in the United States, all of which can access [the] blacklist, from dealing with President Trump, the other Plaintiffs, the Trump Organization and its affiliated entities, and/or the Trump Family," which proves fatal to Defendants' arguments. ECF No. 1-2, ¶ 97.

*Second*, Defendants' attempt to brush off *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773 (Fla. 2003) should not be countenanced. Plaintiffs did not present *PNR* as a factually analogous case to this action. Instead, Plaintiffs rely on *PNR* for the Florida Supreme Court's interpretation of Florida Statute § 501.204(1). *See* ECF No. 31, p. 16. Indeed, the Court did not limit its holding to the facts at issue in *PNR*; instead, it addressed the specific issue of "whether the FDUTPA may be applied in a private cause of action arising from unfair or deceptive acts involving a single party in a single transaction or directed to a single contract." *PNR*, 842 So. 2d

at 775. Plaintiffs' allegations in the Complaint demonstrate that Defendants' singular decision to publish the names of President Trump, the other Plaintiffs, the Trump Organization and its affiliated entities, and/or the Trump Family on the blacklist is actionable under FDUTPA. *See* ECF No. 1-2, ¶¶ 94-98.

*Third*, Defendants' arguments that Plaintiffs have not sufficiently alleged actual damages do not amount to clear and convincing evidence that there is no possibility that Plaintiffs have stated a claim against Dimon. *See* ECF No. 33, pp. 16-17. In support, Defendants once again wrongly rely on *Smith v. 2001 S. Dixie Highway, Inc.,* 872 So.2d 992, 994 (Fla. 4th DCA 2004) and *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.,* 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017).

However, *Smith* is inapplicable because it concerned an employee who was unlawfully terminated under Florida Statute § 448.03, which is entirely distinct from the conduct alleged by the Plaintiffs in this action. *See Smith*, 872 So.2d at 994 ("Smith alleges that City Mazda violated section 448.03, which proscribes an unfair method of competition or an unfair or unconscionable act or practice."). *Casa Dimitri* is a trademark case, and on that basis alone, it is factually distinguishable from this action. *See Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.,* 270 F. Supp. 3d at 1351. Even if it were applicable, however, which it is not, *Casa Dimitri* emphasizes that damages that "result from the injury complained of" are recoverable under FDUTPA. *See id*., at 1352 (quoting *BPI Sports, LLC v. Labdoor, Inc.*, No. 15-62212-CIV-BLOOM, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016): "Consequential or special damages are those which do not necessarily result from the injury complained of or which the law does not imply as the result of that injury.").

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Here, Plaintiffs allege that it was a natural and foreseeable harm that "publishing the names of President Trump, the other Plaintiffs, the Trump Organization and its affiliated entities, and/or the Trump family on the blacklist would discourage, ***and did discourage***, other federally regulated banks in the United States, all of which can access [the] blacklist, from dealing with President Trump, the other Plaintiffs, the Trump Organization and its affiliated entities, and/or the Trump Family." ECF No. 1-2, ¶ 97 (emphasis added). If the Court is uncertain as to whether Plaintiffs have sufficiently alleged actual damages, the Court must resolve that uncertainty in Plaintiffs' favor. *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332–33 (11th Cir. 2011) ("Stillwell contends that the district court applied an unduly demanding pleading standard when it determined that Edwards was fraudulently joined. The standard the district court should have applied is a lax one.").

*Finally*, Defendants contend that Plaintiffs have not pled "basic facts" to state a claim under FDUTPA. *See* ECF No. 33, pp. 17-19. That is wrong. This argument is directly belied by the well-pleaded allegations of the Complaint. Plaintiffs allege that Dimon engaged in an unfair or deceptive trade practice. *See* ECF No. 1-2, ¶ 96. Plaintiffs allege that Dimon's authorization and instruction for JPMC to publish the names of President Trump, the other Plaintiffs, the Trump Organization, and its affiliated entities, and/or the Trump Family discouraged other federally regulated banks from transacting with them. *See id*., ¶ 97. Finally, Plaintiffs allege that Dimon's conduct caused Plaintiffs to suffer financial and reputational harm. *See id*., ¶ 98. Nothing further is required to state a claim under Florida Statute § 501.204(1), and Plaintiffs' Complaint more than sufficiently alleges the claim.

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

**CONCLUSION**

Because Defendants have not met their burden to demonstrate with clear and convincing evidence that Dimon was fraudulently joined, the Court should remand this action to the Circuit Court for Miami-Dade County, Florida.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter an Order granting their Motion for Remand [ECF No. 31], remanding this action to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and awarding any other relief the Court deems proper.

Dated: April 20, 2026                                     Respectfully submitted,

<div style="margin-left:50%">

**BRITO, PLLC**
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office: 305-614-4071
Fax: 305-440-4385

By: /s/ *Alejandro Brito*
    **ALEJANDRO BRITO**
    Florida Bar No. 098442
    Primary: abrito@britopllc.com
    Secondary: apiriou@britopllc.com
    **IAN MICHAEL CORP**
    Florida Bar No. 1010943
    Primary: icorp@britopllc.com

*Attorneys for Plaintiffs President Donald J. Trump, et. al.*

</div>

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 20, 2026, the foregoing was served via the Court's

CM/ECF System upon:

**JONES DAY**
600 Brickell Avenue
Suite 3300
Miami, FL 33131
Telephone: 305-714-9700
Facsimile: 305-713-9799
**ELIOT PEDROSA**
Florida Bar No. 182443
Email: epedrosa@jonesday.com
**KELLY A. CARRERO**
Florida Bar No. 1072663
Email: kcarrero@jonesday.com

**JONES DAY**
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: 202-879-3939
**NOEL J. FRANCISCO**
*Admitted pro hac vice*
Email: njfrancisco@jonesday.com
**CHARLOTTE H. TAYLOR**
*Admitted pro hac vice*
Email: ctaylor@jonesday.com

**JONES DAY**
250 Vesey Street
New York, NY 10281
Telephone: 212-326-3939
Facsimile: 212-755-7306
**JAYANT W. TAMBE**
*Admitted pro hac vice*
Email: jtambe@jonesday.com
**AMANDA L. DOLLINGER**
*Admitted pro hac vice*
Email: adollinger@jonesday.com

**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Cir, 8th Floor
Miami, FL 33134
Telephone: (305) 740-1975
Facsimile: (305) 351-4059
**DEREK E. LEON**
Florida Bar No. 625507
Email: dleon@leoncosgrove.com

*Attorneys for Defendants*
*JPMorgan Chase Bank, N.A., and James Dimon*

By: /s/ *Alejandro Brito*

**Brito, PLLC**
2121 Ponce de Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071