**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 26-21106-CV-WILLIAMS**

PRESIDENT DONALD J. TRUMP, *et al*.,

Plaintiffs,

v.

JP MORGAN CHASE BANK, N.A., *et al.*,

Defendants.
_______________________________________/

**ORDER**

**THIS MATTER** is before the Court on Defendants' Motion to Transfer Under 28 U.S.C. § 1404(a) (DE 15) ("***Motion to Transfer***")[1] and Plaintiff's Motion for Remand and Incorporated Memorandum of Law (DE 31) ("***Motion for Remand***")[2]. The motions are fully briefed and ripe for review. For the reasons set forth below, Plaintiff's Motion for Remand (DE 31) is **DENIED**; Defendant's Motion to Transfer (DE 15) is **GRANTED**; and this action is **TRANSFERRED** to the United States District Court for the Southern District of New York.

## I. BACKGROUND

On January 22, 2026, Plaintiffs President Donald J. Trump ("President Trump"), Trump Payroll Corp., 401 Mezz Venture, LLC, 401 North Wabash Venture, LLC, THC Miami Restaurant Hospitality, LLC, Trump Briarcliff Manor Development, LLC, Trump

[1] Plaintiffs responded to the Motion to Transfer (DE 32) ("***Transfer Response***") and Defendants filed a Reply (DE 34) ("***Transfer Reply***").

[2] Defendants filed a response (DE 33) ("***Remand Response***") and Plaintiffs filed a Reply (DE 35) ("***Remand Reply***").

Chicago Retail, LLC, Trump Miami Resort Management, LLC, Trump National Golf Club Colts Neck, LLC, and Trump National Golf Club, LLC (collectively, "***Plaintiffs***") filed this suit against JP Morgan Chase Bank, N.A. ("***JP Morgan***") and its chief executive officer, James Dimon ("***Mr. Dimon***," and together with JP Morgan, "***Defendants***"). Plaintiffs allege that Defendants "unilaterally debanked" Plaintiffs without sufficient "advance notice" by closing several of Plaintiffs' bank accounts and that JP Morgan, through Mr. Dimon, "published some or all of their names . . . on a blacklist." (DE 1-2, "***Complaint***").

The four-count Complaint filed in the Eleventh Judicial Circuit in and for Miami-Dade Couty, Florida, asserts one claim against Mr. Dimon for violation of Florida's Unfair and Deceptive Trade Practices Act ("***FDUTPA***") (Count II) and three claims against JP Morgan—trade libel (Count I), declaratory relief (Count III), and breach of implied covenant of good faith and fair dealing (Count IV). Defendants timely removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (DE 1). Subsequent to removal, Defendants filed the Motion to Transfer, seeking to transfer the action to the Southern District of New York, arguing that not only is New York a more convenient forum but also a controlling forum selection clause in the parties' contract for services necessitates transfer. (DE 15). Plaintiffs oppose transfer and seek to remand this action, arguing that the fraudulent joinder doctrine is inapplicable and that Defendants' removal theory misinterprets FDUTPA's safe harbor provision. (DE 31 at 2).

## II. LEGAL STANDARD

### *A. Motion to Remand*

"An action filed in state court may be removed to federal court based upon diversity or federal question jurisdiction." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373

(11th Cir. 1998). "When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Washington Nat. Ins, Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). At that point, the "plaintiff is said to have effectuated a fraudulent joinder," and the district court "may properly assert its removal diversity jurisdiction over the case." *Id*. (quotations omitted).

"To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) (citing *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997)). In making this determination, federal courts must not weigh the merits of the claim "beyond determining whether it is an arguable one under state law." *Id*.

### ***B. Motion to Transfer Under 28 U.S.C. 1404(a)***

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The statute is intended to place discretion in the district courts to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988). "It is the movant's burden to persuade the court that a transfer should be granted." *Perlman v. Delisfort-Theodule*, 451 F. Appx. 846, 848 (11th Cir. 2012).

## III. DISCUSSION

To determine whether this action was properly removed, the Court must first apply the doctrine of fraudulent joinder. If the action was properly removed, then the inquiry becomes whether transfer to the Southern District of New York is warranted under 28 U.S.C. § 1404. The Court addresses each question in turn below.

### *A. Plaintiff's Motion to Remand.*

Plaintiffs contend that removal is improper because Defendants have not provided clear and convincing evidence to establish fraudulent joinder. Defendants, however, oppose remand arguing that this Court has diversity jurisdiction and that Mr. Dimon was fraudulently joined to defeat diversity. Several plaintiffs are citizens of New York, and Mr. Dimon is a New York resident. (DE 1-2 ¶¶ 2, 6, 10–12; DE 33 at 1). Defendants maintain that Plaintiffs cannot establish a FDUTPA cause of action against Mr. Dimon. Therefore, the Court must determine whether Mr. Dimon was fraudulently joined and his presence should be disregarded to exercise its removal jurisdiction. *See Stillwell*, 663 F.3d at 1333.

As is the case here, "[a] defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate that: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Henderson*, 454 F.3d at 1281. A defendant must make such a showing by clear and convincing evidence. *Id*. "If there is even a possibility that a state court would find that the complaint" states a FDUTPA cause of action against Mr. Dimon, the Court "must find that the joinder was proper and remand the case to the state court." *See Stillwell*, 663 F.3d at 1333.

Defendants set forth four bases for denying Plaintiffs' requested remand: (1) FDUTPA's safe harbor for federally regulated banks bars Plaintiffs' claims against Mr. Dimon; (2) FDUTPA's safe harbor bars claims against Mr. Dimon as he is a person regulated under federal banking laws; (3) Plaintiffs' FDUTPA claim cannot succeed because Plaintiffs do not allege conduct or actual damages actionable under FDUTPA; and (4) Plaintiffs cannot plead basic facts to sustain their FDUTPA claim. (DE 33 at 5–19). The Court finds that Plaintiffs' single claim against Mr. Dimon is foreclosed by the statutorily proscribed safe harbor in Florida Statutes section 501.212(4)(c).[3]

"FDUTPA provides a civil remedy to consumers who have been aggrieved by unlawful trade practices." *CMR Constr. & Roofing*, *LLC v. Am. Capital Assurance Corp.*, No. 2:20-cv-00416, 2021 WL 354167, at *2 (M.D. Fla. Feb. 2, 2021). "But the plain language of FDUPTA also excludes certain persons and activities from civil liability." *Id.* Florida Statute section 501.212(4)(c) states, in relevant part, "[t]his part does not apply to . . . any **person or activity** regulated under laws administered by . . . [b]anks, credit unions, and savings and loan associations regulated by federal agencies." Fla. Stat. § 502.212(4)(c) (emphasis added). Plaintiffs argue that "[t]he relevant inquiry here is whether the defendant is regulated under those laws themselves—not merely whether regulators possess authority to bring enforcement actions against [Mr. Dimon]—for the conduct alleged in the Complaint." (DE 31 at 12). Plaintiffs also argue that "Defendants fail to demonstrate that ***the alleged conduct***—publishing the names of [Plaintiffs] . . . is

---

[3] As a threshold matter, because the Court finds that Fla. Stat § 501.212(4)(c) precludes FDUTPA actions against Mr. Dimon in his capacity as CEO of JP Morgan, the Court need not address the merits of the other arguments raised by the Parties.

regulated by the federal agencies that Defendants identify." (DE 35 at 6) (emphasis in original).

The Court finds that Plaintiffs misconstrue the plain language of the statute. Florida Statute section 501.212(4)(c) expressly uses the disjunctive "or" when stating "any person **or** activity," meaning "the two are alternatives and not a linked pair" . . . and should "be treated separately." *See* Fla. Stat. § 502.212(4)(c) (emphasis added); *see also* *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1316 (11th Cir. 2022) ("The use of the disjunctive 'or' indicates alternatives and requires that those alternatives be treated separately.") (citation omitted); *CMR Constr. & Roofing*, *LLC*, 2021 WL 354167, at *2 ("The exemptions enumerated in the statute apply to any 'person <u>or</u> activity,' not any person <u>and</u> activity.") (emphasis in original). Consequently, if Mr. Dimon is a "person" regulated under the statute, then Fla. Stat. § 501.212(4) bars enforcement, regardless of whether the alleged "activity" is regulated.

The gravamen of this dispute then is whether Mr. Dimon is a person "regulated under laws administered by . . . [b]anks, credit unions, and savings and loan associations regulated by federal agencies." Fla. Stat. § 502.212(4)(c). Defendants maintain that Mr. Dimon is a regulated person as his conduct is governed by, and he is subject to, federal banking laws enforced by the Office of the Comptroller of Currency ("***OCC***"). [4] (DE 33 at

---

[4] The OCC is an independent branch of the U.S. Department of the Treasury that issues banking regulations and "imposes corrective measures" . . . on "banks that do not comply with laws and regulations." *See* OFFICE OF THE COMPTROLLER OF THE CURRENCY, https://www.occ.treas.gov/about/index-about.html (last visited September 30, 2026). The OCC was established pursuant to 12 U.S.C. § 1, which provides that the OCC is "charged with assuring the safety and soundness of, and compliance with the laws and regulations, fair access to financial services, and fair treatment of customers by the institutions and other persons subject to its jurisdiction."

9–10). Defendants also assert that Mr. Dimon, through his position as chief executive officer, is subject to various other federal laws such as 31 U.S.C. § 5318, which requires financial institutions and its officers "to maintain an anti-money laundering ('AML') compliance program that conforms to the requirements of the Bank Secrecy Act." (*Id*. at 11). The Court agrees with Defendants and finds that Mr. Dimon is a regulated person under federal law. Indeed, "regulated" is the transitive verb of "regulate," which means "to govern or direct according to rule." *See* MERRIAM-WEBSTERS DICTIONARY*,* https://www.merriam-webster.com/dictionary/regulated (last visited April 28, 2026). As noted by Defendants, several federal laws, adopted by JP Morgan's practices and procedures, govern Mr. Dimon's conduct as Chief Executive Officer for which he may face individual liability through agency enforcement actions. *See* (DE 33 at 9–11; DE 1 ¶¶ 7–10).

For example, the Federal Deposit Insurance Corporation ("***FDIC***") enforces federal banking laws with which JP Morgan and its executives are obligated to administer and implement. The FDIC Board of Directors may remove and prohibit a person from participating in the banking industry upon a showing that: (1) the individual committed misconduct; (2) the bank or its depositors were harmed, or the individual personally benefited, by reason of the individual's misconduct; and (3) the individual's misconduct involved personal dishonesty or demonstrated willful or continuing disregard for the safety or soundness of the bank. *See Calcutt v. Fed. Deposit Ins. Corp.*, 598 U.S. 623, 625 (2023) (cleaned up) (noting that "the FDIC brought an enforcement action" against the petitioner who served as "CEO of Northwestern Bank").

Likewise, under 12 U.S.C. § 1818, the OCC may bring an enforcement action

against a bank's officers and directors for engaging in unsafe and unsound banking practices. *See Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394, 397 (5th Cir. 2025) (denying review of the Comptroller's decision prohibiting former bank officers and directors from working in the banking industry and its assessment of civil penalties for their engagement in unsafe and unsound banking practices, breach of fiduciary duties, and filing of materially inaccurate reports). As the Chief Executive Officer of JP Morgan, Mr. Dimon's conduct is regulated under federal banking laws administered and implemented by JP Morgan. Accordingly, Mr. Dimon is a person regulated within the meaning of section 502.212(4)(c). *See* (DE 33 at 9–11; DE 1 ¶¶ 7–10).

Based on the foregoing, the Court finds that Mr. Dimon is exempt from FDUTPA liability pursuant to Florida Statutes section 501.212, and there is no possibility that Plaintiffs can establish a FDUTPA claim against him. "The logic appears obvious: if a state or federal agency already regulates [Mr. Dimon], there is no need for the Act to interfere. *State, Off. of Att'y Gen, Dept. of Legal Aff. v. Com. Com. Leasing, LLC*, 946 So. 2d 1253, 1257–58 (Fla. Dist. Ct. App. 2007). And "[w]hen statutory text is unambiguous, this Court must apply that language as written." *CMR Constr. & Roofing*, *LLC*, 2021 WL 354167, at *3 (citing *Stansell v. Revolutionary Armed Forces of Colom.*, 704 F.3d 910, 915 (11th Cir. 2013)). "Indeed, a statute's plain language controls unless it is *inescapably* ambiguous." *Stansell,* 704 F.3d at 915. (emphasis in original). Therefore, removal by Defendants was proper because Mr. Dimon was fraudulently joined in this action. As a result, the Motion to Remand is denied.

***B. Motion to Transfer***

Because the Court determines that federal jurisdiction exists, it now considers

Defendants' Motion to Transfer. Defendants seek to transfer this matter to the Southern District of New York. Defendants argue, and the Court agrees, that the Southern District of New York is a more appropriate forum.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tx.*, 571 U.S. 49, 62 (2013). [H]owever, "when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum," the district court is required to adjust their usual § 1404(a) analysis to give "controlling weight" to the forum selection clause. *Id*. at 63. (quotations and citation omitted).

Each of Plaintiffs' accounts were governed by contractual agreements that delegated exclusive jurisdiction to New York. (DE 15-1 ¶ 31 **"*Decl. of Dan Wilkening*"**). Three Plaintiffs agreed to exclusive jurisdiction in New York, New York, while the other seven agreed to exclusive jurisdiction either in the courts of the state in which their account was opened, or in the state in which the branch of the bank holding their account is located. (*Id.*) All of Plaintiffs' accounts were opened in New York and continue to be maintained in New York. (*Id.*) Therefore, the parties are subject to a valid forum selection clause designating New York as an appropriate forum. Plaintiffs do not dispute that their declaratory relief claim (Count III) and breach of implied covenant of good faith and fair

dealing (Count IV) are subject to the parties' agreed upon forum selection clause. (DE 32 at 8). However, Plaintiffs argue that Count I (Trade Libel) and Count II (Violation of FDUTPA) are not subject to the parties' forum selection clauses because they "do not arise out of, relate to, or have direct connection to the account agreements necessary to trigger the clauses." (DE 32 at 5). Defendants counter by arguing that the clauses encompass Counts I and II because "the alleged blacklist relates to [Plaintiffs'] wealth management accounts at JPMorgan and concerns whether Plaintiffs' use of their accounts complied with applicable banking rules and regulations." (DE 34 at 2).

Based on the foregoing, it is clear that the Southern District of New York is an appropriate forum to litigate the merits of Counts III and IV. As it relates to Counts I and II, the Court finds that both claims are sufficiently related to the agreements at issue where both causes implicate Plaintiffs' wealth management accounts and JPMorgan's handling of said accounts. (DE 1-2 ¶¶ 57, 85, 88–89, 96). Indeed, although Plaintiffs initially argue that "Counts I and II arise from different conduct, seek redress for different injuries, and implicate different legal duties," (DE 32 at 6), they later concede, in an effort to avoid piecemeal litigation, that their "claims arise from the same overall course of conduct and will substantially overlap in witness, facts, and proof." (DE 32 at 9). Accordingly, in an effort to give "controlling weight" to the parties' agreed-upon forum selection clause, as the Court must, and in the interest of justice and trial efficiency, transfer to the Southern District of New York is warranted under 28 U.S.C. § 1404(a).

## IV. CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Remand (DE 31) is **DENIED**.

2. Defendant's Motion to Transfer (DE 15) is **GRANTED**.

3. Pursuant to 28 U.S.C. § 1404(a), the above-captioned matter, Case No. 26-21106-KMW, shall be **TRANSFERRED** to the United States District Court for the Southern District of New York for all purposes, including trial.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 30th day of September, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE